LATHAM & WATKINS LLP
    Daniel M. Wall (SBN 102580)
    Christopher S. Yates (SBN 161273)
    Aaron T. Chiu (SBN 287788)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415.391.0600
Facsimile:  415.395.8095
Email:  Dan.Wall@lw.com
        Chris.Yates@lw.com
        Aaron.Chiu@lw.com

Attorneys for Defendant
Fédération Internationale de Natation

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS A SHIELDS, MICHAEL C. ANDREW, and KATINKA HOSSZÚ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FÉDÉRATION INTERNATIONALE DE NATATION,<br><br>Defendant. | CASE NO. 3:18-cv-07393-JSC<br><br>**DEFENDANT FÉDÉRATION INTERNATIONALE DE NATATION'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:     April 11, 2019<br>Time:     9:00 AM<br>Place:    Courtroom F, 15th Floor<br><br>The Honorable Jacqueline Scott Corley |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

1  **NOTICE OF MOTION AND MOTION TO DISMISS**

2      PLEASE TAKE NOTICE that on April 11, 2019, at 9:00 a.m. or at such other date as may

3  be agreed upon or ordered, in Courtroom F of the United States District Court for the Northern

4  District of California, located a 450 Golden Gate Avenue, San Francisco, California, Defendant

5  Fédération Internationale de Natation ("FINA") will and hereby does move this Court to dismiss

6  Plaintiffs Thomas A. Shields, Michael C. Andrew, and Katinka Hosszú's ("Plaintiffs") Complaint

7  (Dkt. 1). This Motion is made pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6),

8  and is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities,

9  the Declaration of Aaron Chiu in support of the Motion, all pleading and papers filed herein, oral

10  argument of counsel, and any other matters that the Court may consider on this Motion.

11  **STATEMENT OF RELIEF SOUGHT**

12      FINA seeks dismissal with prejudice of all claims asserted by Plaintiffs pursuant to Federal

13  Rules of Civil Procedure 12(b)(2) and 12(b)(6), on the grounds that:

14      1.    This Court lacks personal jurisdiction over FINA with respect to all of Plaintiffs'

15  claims;

16      2.    Plaintiffs' antitrust claims are subject to the implied antitrust immunity under the

17  Ted Stevens Olympic Amateur Sports Act, 36 U.S.C. § 220501 *et seq.*;

18      3.    Plaintiffs' claims are barred by the Foreign Trade Antitrust Improvements Act, 15

19  U.S.C. § 6a; and

20      4.    Plaintiffs' Sherman Act § 1 claim fails to plausibly allege an antitrust conspiracy.

21

22

23

24

25

26

27

28

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................ 3

    A.  The Parties ............................................................................................. 3

    B.  The Core Allegations Underlying Plaintiffs' Claims .............................. 4

    C.  Plaintiffs' Jurisdictional Allegations ..................................................... 6

III.  ARGUMENT ................................................................................................... 8

    A.  This Court Lacks Personal Jurisdiction over FINA ................................ 8

        1.  Plaintiffs Have Not Alleged a Basis for General Personal Jurisdiction ................................................................. 8

        2.  Plaintiffs Have Not Alleged and Cannot Allege the Requisite Contacts to Support Specific Personal Jurisdiction ................................................................................ 9

    B.  The Amateur Sports Act Immunizes from Antitrust Scrutiny the Alleged Conduct by FINA that Impacted Swimming in the United States ................................................................................................... 14

        1.  The Amateur Sports Act Grants Each National Governing Body Monolithic Control over Its Respective Sport ................. 15

        2.  Implied Antitrust Immunity Under the ASA .......................... 15

        3.  The ASA's Implied Antitrust Immunity Applies to the Alleged Conduct by FINA that Impacted Swimming in the U.S. ......................................................................................... 16

    C.  Plaintiffs' Claims Are Barred by the Foreign Trade Antitrust Improvements Act .............................................................................. 18

    D.  Plaintiffs' Section 1 Claim Fails Because FINA and its Member Federations Have a Complete Unity of Interest ................................... 20

IV.  CONCLUSION ............................................................................................... 22

i

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*American University System, Inc. v. American University,*
   858 F. Supp. 2d 705 (N.D. Tex. 2012) .................................................. 9

5

*Asashi Metal Industry Co., Ltd. v. Superior Court of California,*
   480 U.S. 102 (1987)............................................................................. 14

6

7

*Behagen v. Amateur Basketball Association,*
   884 F.2d 524 (10th Cir. 1989) ................................................. 15, 16, 17

8

*Browne v. McCain,*
   612 F. Supp. 2d 1118 (C.D. Cal. 2009) .............................................. 14

9

10

*Calder v. Jones,*
   465 U.S. 783 (1984)............................................................................. 10

11

*Copperweld Corp. v. Independent Tube Corp.,*
   467 U.S. 752 (1984)............................................................................. 20

12

13

*Daimler AG v. Bauman,*
   571 U.S. 117 (2014)............................................................................... 9

14

*Doe v. Geller,*
   533 F. Supp. 2d 996 (N.D. Cal. 2008) ................................................ 14

15

16

*F. Hoffman-La Roche Ltd. v. Empagran S.A.,*
   542 U.S. 155 (2004)............................................................................. 18

17

*Fireman's Fund Insurance Co. v. National Bank of Cooperatives,*
   103 F.3d 888 (9th Cir. 1996) ............................................................... 12

18

19

*Freeman v. San Diego Association of Realtors,*
   322 F.3d 1133 (9th Cir. 2003) ............................................................. 20

20

*Gold Medal LLC v. USA Track & Field,*
   899 F.3d 712 (9th Cir. 2018) ................................................... 3, 15, 17

21

22

*Haynish v. Bank of America, N.A.,*
   284 F. Supp. 3d 1037 (N.D. Cal. 2018) ................................................ 6

23

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
   466 U.S. 408 (1984)............................................................................... 9

24

25

*In re Capacitors Antitrust Litigation,*
   No. 14-cv-03264-JD, 2018 WL 4558265 (N.D. Cal. 2018) ................. 19

26

*In re Intel Corp. Microprocessor Antitrust Litigation,*
   476 F. Supp. 2d 452 (D. Del. 2007) .................................................... 19

27

*In re Static Random Access Memory (SRAM) Antitrust Litigation,*
   No. 07-md-01819 CW, 2010 WL 5477313 (N.D. Cal. Dec. 31, 2010).................... 19

28

*In re Western States Wholesale Natural Gas Antitrust Litigation,*
   715 F.3d 716 (9th Cir. 2013) ............................................................... 10

*International Shoe Co. v. Washington,*
   326 U.S. 310 (1945) .............................................................................. 8

*Jack Russell Terrier Network of Northern California v. American Kennel Club, Inc.,*
   407 F.3d 1027 (9th Cir. 2005) ..................................................... 3, 20, 21

*JES Properties, Inc. v. USA Equestrian, Inc.,*
   458 F.3d 1224 (11th Cir. 2006) ..................................................... 15, 16

*Martinez v. Aero Caribbean,*
   764 F.3d 1062 (9th Cir. 2014) ............................................................. 9

*Motorola Mobility LLC v. AU Optronics Corp.,*
   775 F.3d 816 (7th Cir. 2015) ............................................................. 19

*Oldfield v. Athletic Congress,*
   779 F.2d 505 (9th Cir. 1985) ............................................................. 15

*Pebble Beach Co. v. Caddy,*
   453 F.3d 1151 (9th Cir. 2006) ............................................................. 13

*Republic of Kazakhstan v. Ketebaev,*
   No. 17-CV-00246-LHK, 2017 WL 6539897 (N.D. Cal. Dec. 21, 2017) ........................... 14

*Rosen v. Terapeak, Inc.,*
   No. 15-cv-00112-MWF (EX), 2015 WL 12724071 (C.D. Cal. Apr. 28, 2015) ................. 14

*Schwarzenegger v. Fred Martin Motor Co.,*
   374 F.3d 797 (9th Cir. 2004) ....................................................... *passim*

*Standard v. Cameron,*
   No. 1:17-CV-689 AWI BAM, 2017 WL 5466718 (E.D. Cal. Nov. 14, 2017) ..................... 9

*Tanaka v. University of Southern California,*
   252 F.3d 1059 (9th Cir. 2001) ............................................................. 20

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
   551 U.S. 308 (2007) ............................................................................. 6

*United States v. LSL Biotechnologies,*
   379 F.3d 672 (9th Cir. 2004) ............................................................. 18

*Unlimited Prepaid, Inc. v. Airvoice Wireless Express, LLC,*
   No. CV 17-01409 SJO (JPRx), 2017 WL 8230848 (C.D. Cal. May 10, 2017) ..................... 3

*Walden v. Fiore,*
   571 U.S. 277 (2014) ............................................................................. 10

**STATUTES**

15 U.S.C. § 6a ............................................................................. 18

iii

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

28 U.S.C. § 1367(c)(3)....................................................................................................................20

36 U.S.C. § 220505(c)(4)..............................................................................................................15

36 U.S.C. § 220523.......................................................................................................................17

36 U.S.C. § 220523(a)...................................................................................................................15

36 U.S.C. § 220524.......................................................................................................................15

36 U.S.C. § 220527.......................................................................................................................15

36 U.S.C. § 220528.......................................................................................................................15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

1        <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2   **I.    INTRODUCTION**

3            This lawsuit is the class action variant of another case pending before this Court,

4    *International Swimming League, Ltd. v. Fédération Internationale de Natation*, Case No. 3:18-cv-

5    07394 JSC (N.D. Cal) ("*ISL*").  It shares the same lead counsel as the *ISL* action, and is based on

6    the same dispute between International Swimming League ("ISL"), a Swiss corporation, and

7    Swiss-based Defendant Fédération Internationale de Natation ("FINA").  The difference between

8    the two cases is that, here, ISL's complaints are filtered through Plaintiffs Thomas A. Shields,

9    Michael C. Andrew, and Katinka Hosszú ("Plaintiffs") on behalf of a putative class of top-tier

10   international swimmers.

11           Like ISL, Plaintiffs challenge as anticompetitive the monolithic structure implemented by

12   the International Olympic Committee ("IOC") under which FINA governs international swimming

13   competition, and in particular Olympic swimming, claiming that FINA has leveraged its control

14   over Olympic swimming to suppress competition in a global market for top-tier international non-

15   Olympic swimming competitions.  The principal way through which FINA allegedly has leveraged

16   its power is by coercing its 209 national member federations—all of which exist to promote the

17   development of the sport of swimming and the participation of athletes from their home countries

18   in international competition, including in the Olympic Games—to boycott ISL's attempts to create

19   a series of international top-tier swimming events.  As it relates to Plaintiffs, the alleged boycott

20   of ISL supposedly prevented a putative class of swimmers from earning what they otherwise would

21   in a competitive market for international swimming.  On this theory, Plaintiffs advance the same

22   three causes of action that ISL asserts against FINA:  one claim under each Sections 1 and 2 of the

23   Sherman Act, and a state law claim for tortious interference.

24           Because this is a copycat class action that rests on an identical theory of anticompetitive

25   harm, the same underlying alleged conduct, and the same causes of action as ISL's case against

26   FINA, all of the bases underlying FINA's motion to dismiss in the *ISL* case apply here.  Of

27

28

necessity, we reassert and explain all of the bases for dismissal here;[1] however, we focus this Motion on the variations between the two cases, all of which are derived from ISL's choice to recruit certain U.S.-domiciled swimmers to act as plaintiffs in a second case.  The presence of these plaintiffs does not solve the underlying deficiencies that plague ISL's Complaint, and therefore dismissal of this copycat putative class action is warranted as well.

The foundational flaw is jurisdictional:  Plaintiffs' case is premised entirely upon a dispute between two foreign parties (ISL and FINA) that rests on FINA's alleged conduct globally.  As in the *ISL* action, it is an attack on FINA's position as the global arbiter of international and Olympic swimming, and FINA's implementation of rules and decisions that equally affect all of its 209 different national member federations.  The United States and U.S.-based swimmers are implicated because they are part of the international swimming world, not because they play any kind of special role in the underlying dispute.  Indeed, the Complaint explicitly alleges that all top-tier international swimmers, of whatever nationality, are similarly situated.  And in that context, Plaintiffs' "jurisdictional" allegations fail to establish that FINA systematically or continuously operates in the U.S., or that FINA purposefully directed any conduct at the U.S. or American swimmers.

The substantive fallacies underlying ISL's case also pervade this action.  Any alleged conduct by FINA that impacted swimming in the U.S.—and Plaintiffs Shields and Andrews in particular—is protected from antitrust scrutiny under the Ted Stevens Olympic Amateur Sports Act ("ASA"), 36 U.S.C. § 22050, *et seq.*  Indeed, the presence of American swimmer plaintiffs only underscores how any U.S.-based effects of FINA's conduct were, as Plaintiffs allege, the result of the decision of USA Swimming (the FINA-affiliated national governing body for swimming in the U.S.) to withdraw its support for ISL.  The actions of USA Swimming, undertaken in compliance with FINA's rules and affecting the ability of Shields, Andrews, and any other U.S. swimmer to participate in international competition, are precisely the type of

---

[1] There is significant authority disapproving of motions to dismiss that simply incorporate by reference like motions in separate cases.

1    conduct the ASA impliedly immunizes from antitrust scrutiny.  *See Gold Medal LLC v. USA Track*

2    *& Field*, 899 F.3d 712, 718 (9th Cir. 2018).

3        Any effects of FINA's alleged conduct on U.S.-based swimmers also do nothing to lift the

4    bar on Plaintiffs' antitrust claims imposed by the Foreign Trade Antitrust Improvements Act

5    ("FTAIA"), 15 U.S.C. § 6a.  Plaintiffs have not alleged that FINA's conduct exhibited the requisite

6    "direct" effect on U.S. commerce, nor could they.  They plainly advance an *indirect* effect that

7    starts with what FINA did outside the U.S., then flows through the actions of USA Swimming in

8    compliance with FINA's rules, and only then affects U.S.-based swimmers.  Furthermore, any

9    U.S. domestic effects do not "give rise" to a Sherman Act claim, as the FTAIA requires,

10   particularly since the allegedly restrictive conduct in the U.S. (by USA Swimming, not FINA) is

11   impliedly immunized under the ASA.  The Sherman Act does not apply to such disputes, regardless

12   of the fact that ripple effects may extend to plaintiffs who reside in the U.S.

13       Finally, Plaintiffs' Sherman Act § 1 claim, which is premised on identical allegations of

14   "concerted action" between FINA and its member federations to boycott ISL, fails at the threshold

15   because FINA and its members share a unity of economic interest.  As Plaintiffs themselves allege,

16   the Olympics are the "sole reason" for the existence of FINA and its member federations.

17   Accordingly, they are not independent economic actors capable of conspiring to violate Section 1.

18   *See Jack Russell Terrier Network of N. Cal. v. Am. Kennel Club, Inc.*, 407 F.3d 1027, 1036 (9th

19   Cir. 2005).

20       For these reasons, this Court should dismiss Plaintiffs' Complaint with prejudice.[2]

21   **II.    BACKGROUND**

22       **A.    The Parties**

23       Plaintiffs Shields, Andrew, and Hosszú are professional swimmers who represent a

24

---

25   [2] Plaintiffs' claims here are also subject to arbitration, pursuant to various arbitration provisions
     relating to disputes involving FINA and the respective NGBs.  FINA has not moved to compel
26   arbitration because this Court must first decide whether it has jurisdiction.  *See Unlimited Prepaid,*
     *Inc. v. Airvoice Wireless Express, LLC*, No. CV 17-01409 SJO (JPRx), 2017 WL 8230848, *5
27   (C.D. Cal. May 10, 2017) (personal jurisdiction over the defendant is required to compel
     arbitration).  However, FINA fully intends to move to compel arbitration should it become
28   necessary following the Court's resolution of this Rule 12(b)(2) motion.

putative class of swimmers from around the globe who compete at swimming's highest stages or perform at the highest levels of competition.  Compl. ¶ 22–25.  Shields and Andrew are domiciled in California and Hosszú is a resident of Hungary.  *Id.* ¶ 22–24.  Defendant FINA is a non-governmental international organization domiciled in Switzerland, established in the form of an "association" in accordance with and governed by the Swiss Civil Code.  *Id.* ¶ 27.  It is the international federation exclusively recognized by the International Olympic Committee (also based in Switzerland) to "administer [aquatic] sports and establish and organize the types of and rules of competition held at the Olympic Games."  *Id.* ¶ 31.  FINA is comprised of 209 member federations with national groups representing the various aquatic sports including swimming, diving, and water polo.  *Id.* ¶ 30.

## B.    The Core Allegations Underlying Plaintiffs' Claims

The operative facts alleged in Plaintiffs' Complaint are identical, in near verbatim fashion, to those alleged by ISL.  *See generally*, Complaint, *ISL v. FINA*, No. 3:18-cv-07394-JSC, ECF No. 1 (Dec. 7, 2018).[3]  The gravamen of both complaints is that FINA, through "its control over access to competition in the Olympic Games" and "power over the swimming world," (Compl. ¶ 5), has "unlawfully wielded [that] dominant influence" to preclude organizations like ISL from establishing and promoting "top-tier international swimming competitions," (*id.* ¶ 3), which "prevent[s] swimmers from effectively selling their services to entities other than FINA or those that FINA explicitly approves" (*id.* ¶ 7).  Plaintiffs also take square aim at the structure of worldwide Olympic swimming that FINA institutes and administers pursuant to the exclusive authority recognized by the IOC.  Plaintiffs allege that FINA's interpretation and implementation of its own rules governing international competition—and the threat of sanctions for non-compliance—have effectively coerced its 209 member federations into boycotting ISL's attempts to establish a non-Olympic, top-tier international swimming league, resulting in the alleged

---

[3] For the record, Plaintiffs' claims are moot as a result of an interpretation of the disputed "unauthorised relations" rule that FINA issued on January 15, 2019, after this case was filed, which among other things states that swimmers such as Plaintiffs who participate in competitions or events staged by independent organizers such as ISL will not be found to have violated that rule.  Given the Rule 12(b)(6) posture of this motion, we ignore that development and assume the truth of all well-pleaded facts.

4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

"unlawful restraint of the ability of the athletes … to earn what they would command in a market free of FINA's iron grip." *Id.* ¶¶ 3, 7.

On the basis of ISL's theory, Plaintiffs assert three identical causes of action:   (1) a violation of Section 1 of the Sherman Act, on the basis of a "FINA-compelled agreement" between FINA and its member federations to boycott ISL and restrain the "supply of labor from the world's best swimmers" (*id.* ¶¶ 141–142); (2) a violation of Section 2 of the Sherman Act, stemming from an alleged FINA "monopoly in the market for top-tier international swimming competitions" and "monopsony in the market for the supply of services of top-tier swimmers" (*id.* ¶ 150); and (3) a state law claim for tortious interference (*id.* ¶¶ 155–160).   Plaintiffs claim that the relevant geographic markets for its antitrust claims are "the entire world." *Id.* ¶¶ 108, 121.  The claims arise from an alleged course of conduct by FINA to thwart ISL's plans to create an international, club-based swimming league for the world's best swimmers that would provide such swimmers with additional opportunities to "compete against each other and for increased pay for their services." *Id.* ¶¶ 3–5.   The relevant and operative allegations relating to FINA's allegedly anticompetitive conduct are as follows:

Beginning in September 2017, representatives for ISL's predecessor and FINA engaged in negotiations regarding the potential for ISL to "organize international events featuring top-tier swimmers organized by teams that would compete in short course events." *Id.* ¶ 62.  After those negotiations broke down, ISL sought to obtain the support of FINA's member federations to host an international ISL-sponsored swim event to take place in December 2018. *Id.* ¶ 66.  In June 2018, FINA contacted all 209 of its member federations informing them that ISL was neither recognized by nor affiliated with FINA. *Id.* ¶ 67.  FINA also allegedly threatened to "sanction anyone who violated [its] rule on unauthorized relations." *Id.*  Subsequently, certain member federations like USA Swimming and British Swimming indicated to ISL that they could not support ISL's planned December 2018 competition absent FINA authorization. *Id.* ¶¶ 68–69.

After renewed discussions between FINA and ISL regarding this December 2018 event broke down (*id.* ¶ 70–72), ISL subsequently turned to the Italian Swimming Federation for assistance in coordinating the December event, and the Italian federation notified FINA of its

5

intention to host the event in Turin in two months' time.  *Id.* ¶ 74–75.  This notice did not provide sufficient time for FINA approval under its bylaws, and so FINA did not approve the Turin event. *Id.* ¶¶ 76, 78, 82.  FINA thereafter notified its member federations that neither ISL nor the Turin Event were recognized or authorized by FINA, and any participating swimmers or member nations would be subject to the consequences of violating FINA rules for their participation in that competition.[4]  *Id.* ¶¶ 78, 80, 82, 90.  Those members in turn notified their individual swimmers and warned them of the potential consequences for competing in the Turin Event, including possible suspensions by their member federations.  *Id.* ¶¶ 89–92.

On November 15, 2018, the Italian Swimming Federation canceled the Turin Event.  *Id.* ¶ 97.  Shortly thereafter, Plaintiffs filed this action on December 7, 2018.  Identical to ISL, Plaintiffs expressly allege that it is this course of conduct—and particularly FINA's "successful measures to scuttle the Turin Event"—that gives rise to this lawsuit.  Compl. ¶ 26.

### C.    Plaintiffs' Jurisdictional Allegations

While Plaintiffs meticulously allege a course of conduct by FINA aimed at thwarting ISL's efforts to "enter and expand the market for the type of [international swimming] competitions that draw Plaintiffs [] to enter and compete," (*id.* ¶ 26), their Complaint, like ISL's, is conspicuously thin on allegations as to how any of that alleged conduct bears any real connection to the United States.  Plaintiffs' Complaint largely reprises the same "jurisdictional" allegations in an effort to create some connection between FINA's alleged conduct and this forum—none of which relate to conduct by FINA that matters to Plaintiffs' claims.  The first is the allegation that FINA's "contacts with the United States are deep and wide," (*id.* ¶ 19), because FINA apparently "regularly organizes major international aquatics competitions in the United States," (*id.*).  But the four U.S.-based FINA-sanctioned aquatic events identified were only a handful of the 151 total FINA-sanctioned events held worldwide since 2017.  The second batch of allegations are those that

---

[4] FINA hereby attaches the relevant IOC and FINA rules at issue in this case.  *See* Decl. of A. Chiu in Supp. of Mot. to Dismiss ("Chiu Decl."), Exs. A and B.  These rules are incorporated by reference in the Complaint and are therefore subject to judicial notice on this motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Haynish v. Bank of America, N.A.*, 284 F. Supp. 3d 1037, 1044–45 (N.D. Cal. 2018).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

selectively highlight the purported effects of FINA's alleged conduct on USA Swimming—the national governing body for one of the 209 member federations that were alleged to have been on the receiving end of FINA's various communications and "threats" related to ISL.  The Complaint calls out how USA Swimming "pulled out of negotiations" for potentially hosting an ISL event in Las Vegas or at the University of Southern California.  *Id.* ¶ 8.  But the Complaint likewise identifies similar responses by numerous other member federations to FINA's conduct.  *See id.* ¶¶ 9, 68 (alleging FINA interference with ISL's efforts to host event with British Swimming), ¶¶ 10–11, 74–97 (alleging FINA interference caused ISL to cancel top-tier international swimming competition in Turin, Italy), and ¶¶ 90–91 (alleging the Russian Olympic Committee and Swiss Swimming Federation contacted their swimmers to dissuade them from participating in the Turin Event).  Plaintiffs' proposed class further highlights the international nature of this dispute:  the class is not limited to swimmers from the U.S. but encompass "all natural persons who are eligible to compete in swimming world championship and Olympic Game competitions," including "hundreds" of swimmers "residing in multiple countries."  *Id.* ¶ 129–130.  The last batch of "jurisdictional" allegations are made on "information and belief":  FINA has registered U.S. trademarks and allegedly directed an "agent" to submit a DMCA take-down notice to have three ISL promotional videos removed from the YouTube channel belonging to the swimming news website "SwimSwam."  *Id.* ¶¶ 20, 73.

The only differences here are the allegations that FINA "controlled the conduct" of U.S. swimmers who compete in FINA-sanctioned events, and "directly threatened its swimming federation members and swimmers, including those in the United States, with sanctions" if they coordinated with ISL or participated in ISL events.  *Id.* ¶ 19.  But these allegations are not about U.S. or U.S.-directed conduct by FINA; rather, they are about how USA Swimming, the relevant the NGB governing swimming in the U.S., reacted to what FINA did outside the U.S.  *See id.* ¶ 92 (USA Swimming informing swimmers that it would comply with FINA directives and punish swimmers participating in the Turin Event).  And consistent with the common theory of the case, the actual alleged conduct by FINA was similarly directed at all other member federations (and their respective swimmers) looking to participate in ISL events.  *See id.* ¶ 84 (describing alleged

1   conversation in Beijing, China where FINA's executive director warned Hungarian Plaintiff

2   Hosszú against participating in ISL events).

3   **III.    ARGUMENT**

4        All of the jurisdictional and substantive deficiencies that pervade ISL's case doom this case

5   as well.

6        **A.    This Court Lacks Personal Jurisdiction over FINA**

7        The personal jurisdiction analysis is fundamentally identical.  The Court lacks jurisdiction

8   over FINA because (a) FINA inarguably lacks the continuous and systematic general business

9   contacts requires for general jurisdiction, and (b) the theory of this case has nothing to do with any

10  conduct by FINA directed at the United States in particular, and therefore will not support specific

11  jurisdiction.

12       The mere presence of U.S.-based plaintiffs in this action is inconsequential.  The key

13  inquiry is whether there are sufficient contacts between the *defendant* and the forum state to justify

14  an exercise of jurisdiction over that defendant.  *See Schwarzenegger v. Fred Martin Motor Co.*,

15  374 F.3d 797, 800–01 (9th Cir. 2004).  Due process requires that the defendant have "certain

16  minimum contacts [with the forum] such that the maintenance of the suit does not offend

17  'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S.

18  310, 316 (1945) (citations omitted).  The relevant issue, therefore, is the nature of FINA's alleged

19  contacts.

20            **1.    Plaintiffs Have Not Alleged a Basis for General Personal Jurisdiction**

21       General personal jurisdiction requires that a defendant "engage in continuous and

22  systematic general business contacts that approximate physical presence in the forum state."

23  *Schwarzenegger*, 374 F.3d at 801 (citation omitted).  As is the case in with ISL's complaint,

24  Plaintiffs conclude that FINA's contacts with this country "are deep and wide," (Compl. ¶ 19), but

25  the factual allegations regarding FINA's contacts establish otherwise.  The "contacts" are limited

26  to FINA's sanctioning of four (non-swimming) tournaments in the U.S. over the last two years; its

27  registered trademarks with the USPTO; the filing of a DMCA take-down with YouTube, which

28  has servers in California; and its agreements with two American swimwear manufacturers. *Id.*

8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

¶ 19.  None of these amount to the kind of "continuous and systematic general business contacts" needed to invoke general personal jurisdiction.  *Schwarzenegger*, 374 F.3d at 801.

The event-based jurisdiction that Plaintiffs seek to construct from the FINA-sanctioned aquatic events held in this country has been rejected consistently as an insufficient basis to confer general personal jurisdiction.  *See Standard v. Cameron*, No. 1:17-CV-689 AWI BAM, 2017 WL 5466718, at *6 (E.D. Cal. Nov. 14, 2017) (defendant's "regular[] hold[ing]" of teaching clinics in California and attendance at other events in the state were insufficient to establish personal general jurisdiction); *Am. Univ. Sys., Inc. v. Am. Univ.*, 858 F. Supp. 2d 705, 713–14 (N.D. Tex. 2012) (sponsoring 18 events and attendance at 200 events in Texas by an out-of-state university insufficient to "allow [the] exercise [of] general personal jurisdiction.").  Particularly when "apprais[ed] . . . in their entirety, nationwide and worldwide," *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014), the *de minimus* nature of FINA's U.S. contacts becomes clear.  The U.S. is just one of many countries in which FINA sanctions events.  In the first two months of 2019 alone, there were FINA-sanctioned events in 12 other countries.[5]  The four U.S.-based events sanctioned by FINA over the past two years do not constitute the "continuous and systematic" affiliation with the U.S. that makes it fair to conclude that FINA is "at home" here.  *Id.* at 127.  The other alleged "contacts"—FINA's trademarks, the YouTube take-down notice, and FINA's business with California-based swimwear companies—all fail to "approximate [a] physical presence in the forum state."  *Schwarzenegger*, 374 F.3d at 801; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416–17 (1984).  These are not enough to support the "exceptional case" of exercising general jurisdiction outside of a defendant's principal place of business.  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).

### 2.    Plaintiffs Have Not Alleged and Cannot Allege the Requisite Contacts to Support Specific Personal Jurisdiction

Plaintiffs have likewise failed to plead specific jurisdiction, which requires allegations that: (1) FINA "purposefully availed" itself of the privilege conducting activities in the U.S. or "purposefully directed" its activities at the U.S., (2) Plaintiffs' claims arise out of or relate to those

---

[5] *See* FINA Calendar, www.fina.org/calendar (last accessed Feb. 14, 2019 at 12:40 p.m.).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

1   activities, and (3) assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374

2   F.3d at 802–03. For claims grounded in intentional torts like the antitrust claims here, the

3   "purposeful direction" test is used. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715

4   F.3d 716, 743 (9th Cir. 2013) (applying purposeful direction test to antitrust claims).

5
         a.      Plaintiffs Have Not Alleged that FINA Purposefully Directed Conduct at
6                the United States

7        While this case differs from the *ISL* action in that two of the named Plaintiffs are domiciled

8   in the U.S., there are still no allegations that FINA purposefully directed its conduct at the U.S.

9   The question of whether a defendant has purposefully directed its conduct at the forum state is

10  evaluated under the three-part "effects" test set forth in *Calder v. Jones*, 465 U.S. 783 (1984). The

11  defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state,

12  (3) causing harm that the defendant knows is likely to be suffered in the forum state."

13  *Schwarzenegger*, 374 F.3d at 803 (citing *Calder*, 465 U.S. at 789–91). The relevant inquiry

14  underlying the "purposeful direction" test is whether the "defendant's actions connect him to the

15  *forum*," not merely to residents of the forum. *Walden v. Fiore*, 571 U.S. 277, 289 (2014) (emphasis

16  added).

17       Here, the claim is about a *global* restraint of trade that allegedly harms top international

18  swimmers of all nationalities. The Complaint rests on actions undertaken by FINA with respect

19  to *all* 209 of its member federations and their swimmers, by which FINA supposedly monopolized

20  and "lorded" its power over the global "swimming world." *Id.* ¶ 5. The group of injured

21  swimmers—allegedly similar enough to justify a class action—includes American swimmers

22  along with British swimmers, Australian swimmers, Hungarian swimmers, and so forth. That is

23  not a claim about conduct by FINA expressly aimed at the U.S.—the requirement to connect FINA

24  to this forum. *See Schwarzenegger*, 374 F.3d at 802. The actual allegations of conduct *by FINA*

25  make this clear:

26

27

28

LATHAM&WATKINS<sup></sup>
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

| **Conduct:** | **Directed At:** |
|---|---|
| • "[O]n or about June 5, 2018, FINA's Mr. Marculescu circulated a letter to every FINA member designed to cripple ISL's plans." Compl. ¶ 67. | *All FINA members (Global)* |
| • In response to ISL's notification to FINA that it "would work through a federation partner and seek FINA approval for the competition," (*id.* ¶ 70), "FINA responded . . . in a letter . . . [that] insisted that Mr. Khan's direct request was invalid; the host federation was required to seek FINA approval 'for any international event that they intended to organize.'" *Id.* ¶ 71. | *ISL (Switzerland)* |
| • After ISL notified FINA of its plans to host the Turin Event, "FINA insisted at the last minute that its approval was nevertheless necessary, knowing that its last-minute demand would make it impossible for ISL to give six months' notice and would therefore allow FINA to threaten athletes." *Id.* ¶ 78. | *Italy* |
| • "[O]n October 30, . . . FINA's Mr. Marculescu circulated a letter to all FINA members, notifying them that the Turin Event '[was] not recognised by FINA.'" *Id.* ¶ 80. "[H]e warned the dozens of swimmers who had entered contracts to appear in the Turin Event that 'FINA will further assess the development of this matter and will consider consequences.'" *Id.* | *All FINA members (Global)* |
| • During the FINA World Cup series in Beijing in November 2018, Mr. Marculescu "warned" Katinka Hosszú's coach that if she "insisted on participating in ISL's event, she would be banned from competing in the upcoming FINA World Swimming Championships." *Id.* ¶ 84. | *China* |

Like ISL's complaint, the only conduct that Plaintiffs allege that FINA aimed at a particular locale concerns the Turin Event in Italy and the World Cup event in Beijing, China.

The presence of American swimmers in this lawsuit and allegations about the *effect* of FINA's conduct on them are also insufficient to establish that FINA engaged in any forum-related activity giving rise to Plaintiffs' claims. None of these allegations have to do with the conduct by FINA that gives rise to Plaintiffs' claims. They are just selective highlights of the purported U.S.-based *effects* of that conduct. For example:

• After USA Swimming received the letter that FINA "circulated to every FINA member designed to cripple ISL's plans," (*id.* ¶ 67), it "notified ISL . . . that it could not help ISL organize any competition until it received 'assurance . . . that FINA is on board,'" (*id.* ¶ 68). Consequently, "USA Swimming pulled out of negotiations [with ISL] for hosting the December 2018 competition" in either Las Vegas or at the University of Southern California. *Id.* ¶ 8; *see also id.* ¶ 64.

• Following FINA's notification to "all FINA members" that the Turin Event was unauthorized, "USA Swimming representatives held a conference call with national team members." *Id.* ¶ 92. "Reluctantly, [USA Swimming] informed the swimmers that it would

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

1    have no choice but to comply with any FINA directive to punish swimmers who
2    participated in the . . . Turin Event." *Id.*

3    These U.S. portions of allegedly worldwide effects are not enough to establish purposeful direction

4    to this forum.   Indeed, Plaintiffs similarly allege that numerous *other* member federations

5    throughout world reacted similarly to FINA's conduct.  *See id.* ¶ 9 ("British Swimming [likewise]

6    folded under pressure from FINA to stop coordinating with ISL"); ¶¶ 90–91 (describing Russian

7    and Swiss efforts to reach out and warn their swimmers about possible sanctions stemming from

8    participation in ISL events).   Absent a connection to conduct by FINA expressly aimed at this

9    forum, Plaintiffs' selective allegations of U.S.-based *effects* fail to establish that FINA

10   purposefully directed its conduct at this forum.  *See Schwarzenegger*, 374 F.3d at 807 (while the

11   plaintiff made out a "prima facie case that [the defendant] committed intentional acts that may

12   have caused harm to [him] in California," he failed the *Calder* effects test absent a prima facie

13   showing that the defendant "expressly aimed its acts at California").[6]

14              b.    Plaintiffs' Claims Do Not Arise from FINA's Contacts with the
                      Forum

15

16   Specific jurisdiction also requires that Plaintiffs adequately plead that their claims arise out

17   of FINA's U.S.-directed activity.  "[A] lawsuit arises out of a defendant's contacts with the forum

18   state if a direct nexus exists between those contacts and the cause of action."  *Fireman's Fund Ins.*

19   *Co. v. Nat'l Bank of Cooperatives*, 103 F.3d 888, 894 (9th Cir. 1996).  This second prong of the

20   analysis is effectively a "but for" test; there must be pleaded facts tending to show that Plaintiffs

21   would not have suffered their alleged injuries "but for" FINA's forum-related activity.  *Id.* at 895.

22   Plaintiffs' claims, identical to ISL's, involve an alleged *global* restraint of trade, and they

23   stem immediately from "[FINA]'s successful measures to scuttle the Turin Event"—*in Italy*—and

24   "FINA's ongoing effort to prevent ISL from organizing and promoting its 2019 competitions."

25   ───────────────

26   [6] Plaintiffs' proposed class concedes that FINA's conduct was not expressly aimed at the United
     States, as it includes "[a]ll natural persons who are eligible to compete in swimming world
27   championship and Olympic Game competitions," which could include "hundreds of members"
     who "reside[] in multiple countries."  Compl. ¶¶ 129–130.  This confirms the indiscriminate,
28   worldwide, effect of FINA's alleged actions and that FINA's alleged harmful conduct was not
     expressly directed at the United States.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

Compl. ¶ 26.  None of that depends on the minimal U.S. conduct actually alleged in the Complaint, or the fact that some U.S.-based swimmers (and not a Swiss corporation like ISL) are the plaintiffs asserting the claims here.

c.   <u>Exercising Jurisdiction Over FINA Would Be Unreasonable</u>

Because Plaintiffs have failed to meet their prima facie burden of alleging the requisite purposeful direction and direct nexus between FINA's forum-related activity and the causes of action, this Court need not wade into a multi-factor analysis to conclude that the exercise of personal jurisdiction would be unreasonable.  *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (where plaintiffs' failed its burden of establishing purposeful direction, the court "need not address whether the claim arose out of . . . [the defendant's] forum related activities or whether an exercise of jurisdiction is reasonable"); *Schwarzenegger*, 374 F.3d at 807 n.1 (concluding that there was no need to reach the [reasonableness inquiry] when the plaintiff failed the second part of the specific jurisdiction test). In any event, the requisite factors would weigh heavily against jurisdiction.  Forcing foreign defendants to "defend [itself] in a foreign legal system" is enough of a burden to decline jurisdiction as unreasonable, not to mention inefficient and wholly impractical.  *Harris Ritsky*, 328 F.3d at 1133.  Because FINA is domiciled in Switzerland, having to defend this action in a forum 5,000 miles away where FINA has no physical presence would be a significant burden.

Further, and more importantly, exercising personal jurisdiction over an entity organized under the laws of a foreign country—here, Switzerland—raises substantial sovereignty concerns. *See id.* at 1133 ("Litigation against an alien defendant creates a higher jurisdictional barrier than litigation against a citizen from a sister state because important sovereignty concerns exist." (citations omitted)).  As the Supreme Court has explained, "great care and reserve should be exercised when extending . . . notions of personal jurisdiction into the international field." *Asashi*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 115 (1987) (citation omitted).  Comity

weighs against doing so here.[7]  *See Schwarzenegger*, 374 F.3d at 801–02.

*      *      *

Like ISL's complaint against FINA, Plaintiffs cannot and have not pled the prerequisites

for this Court to exercise jurisdiction over FINA.  This copycat class action also must be dismissed

with prejudice for lack of personal jurisdiction.

### B.    The Amateur Sports Act Immunizes from Antitrust Scrutiny the Alleged Conduct by FINA that Impacted Swimming in the United States

Notwithstanding Plaintiffs' inability to plead the necessary jurisdictional prerequisites, the

alleged conduct of FINA exhibiting any U.S.-based effects on U.S. swimmers would be

immunized from antitrust scrutiny under the Ted Stevens Olympic Amateur Sports Act ("the

ASA").  This is because U.S. swimmers are necessarily interacting with USA Swimming—the

NGB for swimming in the United States—and they are complaining about USA Swimming's

compliance with rules mandated by FINA as the international federation governing Olympic

aquatic sports.  *See* Compl. ¶¶ 8, 9, 63, 67, 91, 95; *see also* Ex B, FINA Rule GR 4.1.  Doing so

runs Plaintiffs headlong into the ASA.  The ASA obligates NGBs such as USA Swimming to

follow the "applicable international rules" and "requirements" set forth by the international

federations governing their respective sport, *see* 36 U.S.C. §§ 220523(a)(7), 220524, and when

antitrust claims implicitly challenge the Congressionally-mandated monolithic control over a sport

by a NGB (here, USA Swimming), courts universally recognize that the conduct is immune from

---

[7] Plaintiffs will invariably attempt to invoke personal jurisdiction from the alleged "takedown notice" FINA purportedly sent to YouTube regarding ISL's promotional videos.  Compl. ¶¶ 20, 73.  But that fails at the threshold, as courts have universally rejected as unreasonable efforts to confer personal jurisdiction on the basis of the "fortuitous presence of a server." *Rosen v. Terapeak, Inc.*, No. 15-cv-00112-MWF (EX), 2015 WL 12724071, at *9 (C.D. Cal. Apr. 28, 2015) (citation omitted).  *See, e.g.*, *Doe v. Geller*, 533 F. Supp. 2d 996, 1007, 1011 (N.D. Cal. 2008) (holding personal jurisdiction in this District based on a "takedown notice sent to YouTube" would be unreasonable); *see also Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2017 WL 6539897, at *7 (N.D. Cal. Dec. 21, 2017) (location of Google's servers insufficient to confer personal jurisdiction under *Calder*'s effects test); *Browne v. McCain*, 612 F. Supp. 2d 1118, 1124 (C.D. Cal. 2009) (location of Youtube's servers insufficient to confer personal jurisdiction under *Calder*'s effects test ).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

antitrust scrutiny.  *See, e.g.*, *Gold Medal LLC*, 899 F.3d at 715; *JES Props., Inc. v. USA Equestrian, Inc.*, 458 F.3d 1224, 1231–32 (11th Cir. 2006); *Behagen v. Amateur Basketball Ass'n*, 884 F.2d 524, 527 (10th Cir. 1989).

### 1.    The Amateur Sports Act Grants Each National Governing Body Monolithic Control over Its Respective Sport

Congress enacted the Amateur Sports Act (later renamed the Ted Stevens Olympic and Amateur Sports Act) to "rectify the factional nature" of multiple organizations fighting for control over Olympic sports in the United States.  *Behagen*, 884 F.2d at 527; *Oldfield v. Athletic Congress*, 779 F.3d 505, 506 (9th Cir. 1985).  The ASA codified the exclusive authority that the U.S. Olympic Committee ("USOC") has over U.S. representation at the Olympic Games and other IOC-sanctioned events as well as the USOC's supervisory authority over the various U.S. national governing bodies for each respective sport.  *Behagen*, 884 F.2d at 527–28; 36 U.S.C. §§ 220505(c)(4), 220527–28.  The ASA grants to USA Swimming "monolithic control" over the sport of swimming, pursuant to which USA Swimming, among other things, must: (i) represent the U.S. in the appropriate international sports federation, i.e., FINA; (ii) follow the "applicable international rules" and "requirements" set forth by the international federation, i.e., FINA; (iii) serve as the coordinating body for swimming in the U.S.; (iv) conduct amateur athletic competition and international athletic competition in the U.S.; (v) recommend individuals and teams to represent the U.S. at both the Olympic Games and non-Olympic international competitions; and (vi) establish eligibility standards for participation in competition in accordance with applicable international (FINA) rules.  36 U.S.C. §§ 220523(a)(1)–(7); 220524.

### 2.    Implied Antitrust Immunity Under the ASA

Because the ASA directs "the monolithic control of an amateur sport by the NGB for that sport and by the appropriate international sports federation of which the NGB is a member," *Behagen*, 844 F. 2d at 529, it is a Congressionally-mandated regulatory system that stands directly at odds with the antitrust laws.  Given this "clear repugnancy," courts have recognized that an implied antitrust immunity attaches to conduct if subjecting it to antitrust scrutiny would unduly interfere with the operation of the ASA.  *See, e.g.*, *Gold Medal LLC,* 899 F.3d at 717–18 (holding

15

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

that that the implied antitrust immunity applied to USA Track & Field's rule restricting uniform advertisements, as "permit[ting] any would-be advertiser to sponsor individual athletes without [NGB] approval would unduly interfere with the operation of the ASA" and its grant to NGBs complete control over representation of the U.S. in the Olympics); *Behagen*, 884 F.2d at 529–30 (amateur eligibility requirements imposed by the American Basketball Association pursuant to the rules of its international federation were immune from antitrust scrutiny because the rule fell squarely within the "monolithic control [of the ABA] over its particular amateur sport"); *JES Props.*, 458 F.3d at 1232 (rule implemented by the U.S. Equestrian Foundation imposing time and proximity restrictions on competitions was immune from a Sherman Act § 1 challenge because the rule fell under the ASA's grant of control to "minimize conflicts in the scheduling of competitions and to 'develop interest and participation throughout the United States' in their particular sport.").

### 3. The ASA's Implied Antitrust Immunity Applies to the Alleged Conduct by FINA that Impacted Swimming in the U.S.

At its core, Plaintiffs' challenge is to the IOC-mandated monolithic control that FINA has over international swimming. *See* Ex A, IOC Rules 25, 26. The fact that some of the named plaintiffs are American swimmers who claim injury from the effects of FINA's conduct on swimming in the U.S. only underscores how the conduct at issue here falls squarely within the ASA's implied antitrust immunity. The U.S.-based effects of FINA's alleged conduct, and particularly the effects felt by Plaintiffs Shields and Andrews as U.S. swimmers, were allegedly carried out by USA Swimming (as the relevant NGB for swimming in the United States) at the behest of FINA. *See* Compl. ¶¶ 8, 9, 19, 68, 92, 96. It was USA Swimming—in response to FINA's letter that ISL was neither recognized nor affiliated with FINA—that ceased further discussion with ISL regarding ISL's plans to host a swim competition in the U.S. Compl. ¶¶ 67; 68. And it was USA Swimming that informed its swimmers "that in light of FINA's power over the sport—and particularly access to the Olympic Games—that [it] was in a difficult position" and "that it would have no choice but to comply with any FINA directive to punish swimmers who participated in the . . . Turin Event." *Id.* ¶ 92.

16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

1    As Plaintiffs acknowledge, USA Swimming reacted in this way because as the relevant

2   NGB, it "exist[s] primarily, if not exclusively, to prepare and present swimmers for competition

3   in the Olympic Games," (*id.* ¶ 88), is "bound by FINA rules," (*id.* ¶ 96), and wanted to ensure it

4   would not be putting "U.S. swimmers [like Plaintiff Shields and Andrew] 'at risk,'" (*id.* ¶ 68).  All

5   of this conduct categorically falls within the ASA's grant of monolithic control to USA Swimming

6   over swimming in the U.S., and particularly, the unilateral authority to establish rules governing

7   the eligibility of its athletes and the express requirement that it follow FINA's rules.  *See* 36 U.S.C.

8   § 220523.  It is precisely what the ASA places off limits from antitrust scrutiny.  Applying the

9   antitrust laws here would unquestionably and "unduly interfere with the operation of the ASA."

10  *Gold Medal LLC*, 899 F.3d at 717; *see also Behagen*, 844 F.2d at 529.

11    As we explained in FINA's motion to dismiss ISL's complaint, the ASA's implied antitrust

12  immunity is no less applicable because the defendant here is FINA and not USA Swimming.  The

13  implied antitrust immunity does not just cover conduct by NGBs; it attaches to conduct that, if

14  scrutinized under the antitrust laws, would *interfere* with the operation of the ASA.  *Gold Medal*

15  *LLC*, 899 F.3d at 717; *Behagen*, 844 F.2d at 529.  Plaintiffs' complaint alleges a theory of harm

16  stemming from actions taken by USA Swimming—namely, that USA Swimming followed FINA

17  directives and told its swimmers to refrain from participating in ISL-sponsored events, such as the

18  Turin Event, or risk sanctions.  This is precisely the type of conduct that the Ninth Circuit and

19  other circuit courts have repeatedly held is impliedly immune from antitrust liability under the

20  ASA.  Like ISL, Plaintiffs cannot bypass that immunity by deliberating asserting claims against

21  only FINA and not the relevant NGB.  The presence of U.S. swimmers in this action only

22  crystallizes the fact that any alleged conduct by FINA bearing effects on swimming (and

23  swimmers) in the U.S. falls squarely within the monolithic control that the international federations

24  and the relevant NGBs have over their respective sport.  FINA's alleged conduct is therefore

25  exempt from the antitrust laws under the ASA.

26

27

28

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

**C.    Plaintiffs' Claims Are Barred by the Foreign Trade Antitrust Improvements Act**

For the same reasons underlying the ISL case, the Foreign Trade Antitrust Improvements Act ("FTAIA"), 15 U.S.C. § 6a, presents an identical hurdle to Plaintiffs' claims.  This Complaint (like ISL's) expressly challenges foreign conduct undertaken by a foreign entity with little, if any, resultant effect on U.S. commerce.  It is the kind of foreign conduct that the FTAIA places beyond the reach of the Sherman Act.

Under the FTAIA, to bring challenged conduct within the purview of the Sherman Act, a plaintiff must allege that an overseas defendant's conduct involved "import trade or commerce" (and thus is subject to the "import commerce exclusion") or otherwise bore a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce (in which case it is subject to the "domestic effects exception").  *United States v. Hsiung*, 778 F.3d 738, 755 (9th Cir. 2015); *see also F. Hoffman-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004).

The inclusion of U.S.-based plaintiffs in this case does nothing to change the underlying failure of the Complaint to plead an adequate basis to lift the FTAIA's bar on an extraterritorial application of the Sherman Act.  Indeed, the presence of some U.S. plaintiffs here just makes this case like the many others in which a U.S. plaintiff seeks, through the exceptions of the FTAIA, to apply the U.S. antitrust laws to the conduct of a foreign defendant.  That some or all of the plaintiffs are domiciled in the U.S. does not matter; they must nevertheless plead the requisite elements of the FTAIA for the extraterritorial application of the Sherman Act to be proper.

Because Plaintiffs' theory of the case admittedly has nothing to do with "import trade or commerce," the only relevant inquiry is whether they have adequately alleged conduct by FINA satisfying the domestic effects exception.  That requires FINA's alleged conduct to have both a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce *and also* give rise to a claim under the Sherman Act.  15 U.S.C. § 6a.  Here, the U.S.-based effects affecting Plaintiffs are indirect at best.  Any effects of FINA's conduct upon U.S.-based swimmers are entirely derivative of either (i) the actions of USA Swimming in response to FINA's rules regarding relations with ISL or (ii) any alleged harm to ISL resulting from FINA's boycott of ISL's attempts

18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT FÉDÉRATION INTERNATIONALE DE
NATATION'S MOTION TO DISMISS
CASE NO. 3:18-CV-07393-JSC

1   to sponsor a U.S.-based top-tier international swimming competition.  Any domestic effects felt

2   by American swimmers are thus several degrees removed from FINA's alleged conduct, and

3   depend on the kind of "uncertain intervening developments" that preclude such effects from being

4   sufficiently "direct" to satisfy the FTAIA's domestic effects exception.  *United States v. LSL*

5   *Biotechnologies*, 379 F.3d 672, 681 (9th Cir. 2004).

6          Again, like ISL's claims, the alleged conduct by FINA underlying Plaintiffs claims was

7   not directed in any way at the U.S., but rather involved the implementation and enforcement of

8   certain FINA rules governing the relations of all 209 of its member federations, *see* Ex. B, which

9   resulted in the alleged boycott of ISL-sponsored international swimming competitions that may be

10  held *anywhere* in the world.  The presence of some U.S.-based plaintiffs who allegedly felt the

11  "ripple effects" of FINA's alleged foreign conduct does not render those effects sufficiently

12  "direct" to permit an extraterritorial application of the Sherman Act.  *See Hsiung*, 778 F.3d at 759–

13  60.

14         Separately, Plaintiffs cannot satisfy the second requirement of the FTAIA's domestic

15  effects requirement—that the alleged conduct "give rise" to a claim under the Sherman Act.  *See*

16  15 U.S.C. § 6a.  Because any alleged effect on U.S. swimmers stemming from FINA's alleged

17  conduct was either (i) effectuated through USA Swimming and immunized from antitrust scrutiny

18  pursuant to the ASA or (ii) otherwise derivative of the alleged injury to ISL, FINA's conduct does

19  not "give rise" to a Sherman Act claim.  *See Motorola Mobility LLC v. AU Optronics Corp.*, 775

20  F.3d 816, 818 (7th Cir. 2015) (the "gives rise" requirement "determines who may bring suit based

21  on [the effect]"); *see also In re Capacitors Antitrust Litig.*, No. 14-cv-03264-JD, 2018 WL

22  4558265, at *6 (N.D. Cal. 2018) (under the "gives rise" requirement of the FTAIA's domestic

23  effects exception, the impact of the defendant's conduct in the U.S. must be one that would allow

24  the plaintiff to sue under the Sherman Act).

25         Like ISL, Plaintiffs' Complaint is about foreign conduct by a Swiss entity that exhibited at

26  most, indirect domestic effects.  The fact that those effects were allegedly felt by some U.S.-based

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  swimmers does not render them any more direct, and is therefore insufficient to circumvent the

2  FTAIA's bar on an exterritorial application of the Sherman Act to FINA's conduct.[8]

3  **D.    Plaintiffs' Section 1 Claim Fails Because FINA and its Member Federations**
       **Have a Complete Unity of Interest**

4

5  Finally, Plaintiffs' Sherman Act § 1 claim shares the same fatal flaw underlying the

6  identical claim asserted by ISL:  FINA and its member national federations share a complete unity

7  of economic interest and are legally incapable of conspiring for the purposes of Section 1.

8  Under the Supreme Court's decision in *Copperweld Corp. v. Independent Tube Corp.*, 467

9  U.S. 752, 771 (1984), courts have held that separate entities that share a common economic interest

10 and non-divergent interests are legally incapable of conspiring to violation Section 1.  *See Jack*

11 *Russell Terrier Network of N. Cal.*, 407 F.3d at 1034 (summarizing authorities).  The inquiry of

12 whether separate entities have the sort of unified interests that legally preclude them from

13 conspiring under Section 1 is a "functional" one.  *Id.*  "The crucial question is whether the entities

14 alleged to have conspired maintain 'economic unity,' and whether the entities were either actual

15 or potential competitors."  *Id.* (citing *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133,

16 1148–49 (9th Cir. 2003)).

17 Here, Plaintiffs' Section 1 claim, which is premised on the allegation that FINA and its

18 member federations entered into illegal "horizontal agreement[s]," fails because FINA and its

19 member federations are not distinct entities pursuing different economic goals.  As Plaintiffs

20 themselves allege, (i) the Olympics is the "sole reason" for the existence of FINA or its member

21 federations, (*id.* ¶ 41); (ii) FINA "governs Olympic swimming," (*id.* ¶ 32); and (iii) that the

---

22 [8] Plaintiffs' ambiguous state law claim for tortious interference also fails.  Because the FTAIA is
23 an expression of Congress's power to regulate foreign commerce, giving a state common law claim
   broader extraterritorial effect would run afoul the foreign affairs doctrine and principles of
24 international comity. *See In re Intel Corp. Microprocessor Antitrust Litig.*, 476 F. Supp. 2d 452,
   457 (D. Del. 2007) (California law cannot apply "beyond the boundaries set by the FTAIA," as
25 "'[f]oreign commerce is pre-eminently a matter of national concern,' and therefore, it is important
   for the Federal Government to speak with a single, unified voice."); *In re Static Random Access*
26 *Memory (SRAM) Antitrust Litig.*, No. 07-md-01819 CW, 2010 WL 5477313, at *4 (N.D. Cal. Dec.
   31, 2010) (same).  Moreover, since all Federal claims should be dismissed, this Court should
27 exercise its discretion and dismiss the state law claim.  *See Tanaka v. Univ. of S. Cal.*, 252 F.3d
   1059, 1065 (9th Cir. 2001) (affirming dismissal of pendent state law claims upon dismissal of
28 federal antitrust claims); 28 U.S.C. § 1367(c)(3).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

member federations "exist primarily, if not exclusively, to prepare and present swimmers for competition in the Olympic Games," (*id.* ¶ 88).  In other words, Plaintiffs allege that without the Olympic Games, there would be no FINA, and no member federations.  By their very own allegations, Plaintiffs repeatedly and expressly recognize a unity of interest between FINA and its member federations—one related to the promotion and organization of top-tier international and Olympic swimming competition.

Indeed, it is this very monolithic structure that Plaintiffs complain of:  FINA has allegedly "leveraged its overwhelming and absolute power," divined from its control over Olympic swimming and through its member federations to boycott ISL's attempts to establish a competing top-tier international non-Olympic swimming league, (Compl. ¶ 15), and "prevent swimmers from effectively selling their services to entities other than FINA." *Id.* ¶ 7.  The anticompetitive theory that Plaintiffs advance is one that rests on the IOC-mandated structure between FINA and its member federations—a structure and relationship inimical to FINA and its members being "economically independent."  Plaintiffs' own theory of the case therefore dooms their ability to allege a claim under Section 1.  *See Jack Russell Terrier Network of N. Cal.*, 407 F.3d at 1035 (allegations about a conspiracy between a national dog breed club and its regional affiliates to boycott a competing organization failed under Section 1 because the national club and its regional affiliates shared a unity of economic interest, which were "the current and future value of the . . . breed, as determined by the [club's] breed standards").[9]

---

[9] Even if, arguendo, FINA and its members are independent economic actors, Plaintiffs plead no facts beyond the actions of a sports association "monitor[ing] the everyday administration of [its] sport." Compl. ¶ 31.  It cannot be true that FINA and its member organizations enter a "horizontal agreement" simply by abiding by the regulations set by FINA, as the conduct of an association does not automatically constitute a "joint action of the association's members."  *AD/SAT, Div. of Skylight, Inc. v. Associated Press*, 181 F.3d 216, 233 (2d Cir. 1999).  Plaintiffs must plead that "association members, in their individual capacities, consciously committed themselves to a common scheme designed to achieve an unlawful objective," *id.* at 243, as sports associations, like trade associations, are not by their nature "walking conspirac[ies]." *Consol. Metal Prods., Inc. v. Am. Petroleum Inst.*, 846 F.2d 284, 293–94 (5th Cir. 1988).  Beyond conclusory labels, the Complaint contains no such factual allegations.

IV.     CONCLUSION

For the foregoing reasons, FINA respectfully requests that the Court dismiss Plaintiffs' Complaint in full.

Dated:  March 1, 2019                    Respectfully submitted,

                                         LATHAM & WATKINS LLP
                                         Daniel M. Wall
                                         Christopher S. Yates
                                         Aaron T. Chiu


                                         By  ____/s/ Daniel M. Wall_____
                                             Daniel M. Wall

                                         Attorneys for Defendant
                                         Fédération Internationale de Natation

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO