UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. SHIELDS, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>FEDERATION INTERNATIONALE DE NATATION,<br><br>    Defendant.<br><br>INTERNATIONAL SWIMMING LEAGUE, LTD.,<br><br>    Plaintiff,<br><br>  v.<br><br>FEDERATION INTERNATIONALE DE NATATION,<br><br>    Defendant. | Case Nos.  18-cv-07393-JSC<br>          18-cv-07394-JSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR REVIEW OF THE CLERKS' TAXATION OF COSTS AND DENYING FINA'S ADMINISTRATIVE MOTION TO SEAL**<br><br>Re: Case No. 18-cv-07393-JSC, Dkt. Nos. 378, 381; Case No. 18-cv-07394-JSC, Dkt. Nos. 436, 439 |

Following summary judgment in its favor, Defendant Fédération Internationale De Natation ("FINA")[1] sought to recover $151,976.06 in taxable costs. (Dkt. No. 373.)[2] Plaintiffs Thomas A. Shields, Michael C. Andrew, Katinka Hosszú and International Swimming League, LTD ("ISL") timely objected to $85,181.05 of those costs. (Dkt. No. 374.) After considering the objections pursuant to Civil Local Rule 54-4(b), the Clerk taxed Plaintiffs $151,976.06. (Dkt. No. 376.) Pending before the Court is Plaintiffs' motion for review of the Clerk's taxation of costs. The Court GRANTS IN PART and DENIES IN PART the motion as set forth below.

---

[1] FINA changed its name to World Aquatics in January of 2023.
[2] Record citations are to material in the Electronic Case File ("ECF") in Case No. 18-cv-07393-JSC, unless otherwise noted; pinpoint citations are to the ECF-generated page numbers at the top of the documents. This case is related to Case No. 18-cv-07394-JSC.

**BACKGROUND**

**A. Complaint Allegations**

Plaintiffs reallege their objections to $85,181.05 in deposition and document reproduction costs. (Dkt. No. 436.)  The costs consist of charges for deposition video recordings ($28,482.50), video service fees ($7,717.50), remote deposition exhibits ($9,394.80), other transcript costs ($3,230.00) and e-discovery costs ($36,536.25).

**B. Procedural Background**

Thomas A. Shields, Michael C. Andrew and Katinka Hosszú brought claims against FINA under Sherman Act Sections 1 and 2 and a state law claim for tortious interference with contractual relations related to ISL's December 2018 Turin event. (Dkt. No. 83 ¶¶ 156–79.)  ISL brought claims under Sherman Act Sections 1 and 2 and a state law claim for tortious interference with prospective economic relations related to the same Turin event. (Case No. 18-cv-07394-JSC, Dkt. No. 100 ¶¶ 147–69.)  Plaintiffs jointly moved for summary judgment on FINA's liability under Section 1 of the Sherman Act and FINA's mootness defense to injunctive relief. (Dkt. No. 325.)  FINA moved for summary judgment against Plaintiffs on all claims. (Dkt. No. 321.)  On January 6, 2023, the Court granted FINA's motion for summary judgment and denied Plaintiffs' joint motion for summary judgment. (Dkt. No. 363.)

**LEGAL STANDARD**

Under Rule 54(d) of the Federal Rules of Civil Procedure, "costs–other than attorney's fees–should be allowed to the prevailing party" "[u]nless a federal statute, these rules, or a court order provides otherwise." Fed. R. Civ. P. 54(d)(1).  The types of costs that may be awarded under Rule 54(d) are limited to those enumerated in 28 U.S.C. § 1920. *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 572-573 (2012).  Civil Local Rule 54 provides standards for interpreting the categories of costs set forth in 28 U.S.C. § 1920.

"[Rule 54(d)] creates a presumption of awarding costs to a prevailing party, but vests in the district court discretion to refuse to award costs." *Ass'n of Mexican-Am. Educators v. State of California*, 231 F.3d 572, 591 (9th Cir. 2000).  To overcome this presumption, the losing party must establish a reason to deny costs and the district court must give specific reasons for refusing to award

1  costs. *Shum v. Intel Corp.*, 629 F.3d 1360, 1370 (Fed. Cir. 2010) (applying Ninth Circuit law in
2  affirming an award of costs); *Champion Produce, Inc. v. Ruby Robinson Co.*, 342 F.3d 1016, 1022
3  (9th Cir. 2003); *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1970 (9th Cir. 1999). "A district court
4  need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for
5  denying costs are not sufficiently persuasive to overcome the presumption in favor of an award."
6  *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th Cir. 2003).

7      Here, FINA is the prevailing party because the Court entered judgment in its favor. (Dkt.
8  No. 364). *See San Diego Police Officers' Ass'n v. San Diego City Emps.' Ret. Sys.*, 568 F.3d 725,
9  741 (9th Cir. 2009) (A "party in whose favor judgment is rendered is generally the prevailing party
10 for purposes of awarding costs under Rule 54(d).") (quoting *d'Hedouville v. Pioneer Hotel Co.*, 552
11 F.2d 886, 896 (9th Cir. 1977) ).

**DISCUSSION**

13     Plaintiffs contend the Clerk's taxation of the following costs are not allowable because
14 they were not "necessarily obtained for use in the case" as required in 28 U.S.C. §1920: (1)
15 deposition video recordings, (2) video service fees, (3) other transcript costs, (4) remote deposition
16 exhibits, and (5) production related fees.

17     The Court addresses each argument in turn. For each argument, the Court reviews de novo
18 whether the challenged expense is taxable under 28 U.S.C. §1920, and then evaluates whether
19 Plaintiffs have demonstrated a sufficiently persuasive reason to overcome the presumption of
20 awarding costs to the prevailing party, FINA. *See In re Ricoh Co., Ltd. Patent Litigation*, 661
21 F.3d 1361, 1364 (Fed. Cir. 2011) (applying Ninth Circuit law to a district court's taxation of costs
22 under 28 U.S.C. §1920) ("Whether a particular expense falls within the purview of section 1920,
23 and thus may be taxed in the first place, is an issue of statutory construction, subject to de novo
24 review.").

25     **1. Deposition Video Recordings**

26     Plaintiffs object to $28,242.50 in costs for deposition video recordings because FINA also
27 ordered written transcripts of those depositions. They contend written transcripts were sufficient
28 to resolve the case at summary judgment.

**A. Deposition Video Recordings Are Taxable Under 28 U.S.C. § 1920(2)**

28 U.S.C. §1920(2) allows recovery for "fees for printed or electronically recorded transcripts necessarily obtained for use in the case." Under Civil Local Rule 54-3(c)(1), a prevailing party may recover "[t]he cost of an original and one copy of any deposition (including videotaped depositions) taken for any purpose in connection with the case." Civ. L.R. 54-3(c)(1); *see also In re Ricoh*, 661 F.3d at 1370 (affirming a decision by a court in the Northern District of California to tax costs for both videotaping and transcribing a deposition). Rule 34(b)(3)(A) of the Federal Rules of Civil Procedure specifically allows depositions to be "recorded by audio, audiovisual, or stenographic means." In interpreting Civil Local Rule 54-3(c)(1), courts in this district have allowed costs for deposition video recordings "where the circumstances of the case warrant duplicate costs of both a videotape and written transcript of a deposition." *Total Recall Technologies v. Luckey,* No. C 15-02881 WHA, 2017 WL 2118297, at *1 (N.D. Cal. May 16, 2017).

FINA contends videotape recordings were necessary because 19 of 29 deponents reside outside the subpoena power of the Court and would not have testified in person. (Dkt. No. 382-1 ¶¶ 2-3.) *See Total Recall*, 2017 WL 2118297, at *1 (holding costs for both a written transcript and video were warranted for a witness who "resides outside subpoena range and would be unlikely to testify"). 12 of these deponents lived outside the United States when they were deposed. (*Id.*) FINA adequately explains the case primarily involved foreign witnesses and conduct located outside the United States, and many of those witnesses were non-parties who could not have been compelled to testify at trial. (Dkt. No. 382 at 9.) Thus, the Court finds deposition video recordings were "necessarily obtained for use in the case" and taxable under 28 U.S.C. §1920(2).

Plaintiffs do not dispute videotape recordings were necessarily obtained for use in this case. Instead, they argue videotape recordings were not necessary for adjudicating discovery disputes and the summary judgment motion. (Dkt. No. 385 at 4.) As evidence, they note most videotape recordings were not actually submitted to the court. However, 28 U.S.C. §1920(2) does not specifically require a deposition transcript to be introduced into the record to be an allowable cost. Moreover, "Ninth Circuit precedent is clear that a document need not be offered as evidence

4

to have been necessarily obtained for use in the case." *In re Ricoh*, 661 F.3d at 1370; *see Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*, 920 F.2d 587, 588 (9th Cir. 1990) ("[A] document may be 'necessarily obtained for use in the case' though it is not offered in evidence at a hearing or trial."). That videotaped depositions were not introduced into the record does not render them unallowable. Accordingly, FINA may recover for both written transcripts and videotape recordings of depositions.

### B. Plaintiffs Have Sufficiently Shown Written Transcript Costs Should Be Reduced by $6,970.60

In the alternative, Plaintiffs object to $21,532.50 in costs for 20 deposition videotape recordings because they would constitute a third copy. (Dkt. No. 378 at 5.) They take issue with 20 charges for "Original with 1 Certified Transcript," arguing this charge is for two written copies–one original and one certified. A videotape recording would be an additional copy to these two. As evidence, they point to 17 charges for "Certified Transcript" billed a rate much lower than the rate for "Original with 1 Certified Transcript" by the same vendor.

Under the Local Rules, a prevailing party may recover "[t]he cost of an original and one copy of any deposition (including videotaped depositions) taken for any purpose in connection with the case." Civ. L.R. 54-3(c)(1). To the extent there is a third copy, it is not taxable. As the prevailing party, FINA must establish the charges for "Original with 1 Certified Transcript" is not a charge for two transcripts. Under Civil Local Rule 54-1(a), a prevailing party must serve a bill of costs stating separately and specifically each item of taxable costs claimed. The bill must be supported by an affidavit that costs are "correctly stated, were necessarily incurred, and are allowable by law." *Id.*; *see In re Ricoh*, 661 F.3d at 1368 (applying Ninth Circuit law in denying costs to a prevailing party that "did not meets its burden" to itemize costs with specificity). "Once a prevailing party establishes that the expense is taxable under section 1920, the presumption [in favor of awarding costs to a prevailing party] applies." *Plantronics, Inc. v. Aliph, Inc.*, No. c 09-cv-1714 WHA, 2012 WL 6761576, at *3 (N.D. Cal. Oct. 23, 2012).

FINA provides sufficient documentation demonstrating "Original with 1 Certified Transcript" is a charge for one, not two transcripts. (Dkt. No. 430.) In the affidavit supporting

5

their bill of costs, FINA explains it seeks costs for one written transcript and one video recording per deposition pursuant to Civil Local Rule 54-3(c)(1). (Dkt. No. 374 at 5, 6.) FINA's itemized invoices indicate one transcript charge and one video recording charge per deposition. (Dkt. Nos. 374-5, 374-6.) In response to Plaintiffs' objections to the "Original with 1 Certified Transcript" item, FINA proffers an email from the vendor, Veritext, explaining they were "only charged for and only paid for one transcript, not two" transcripts. (Dkt. No. 376-2 at 9.) Accordingly, FINA has met its burden to establish charges for "Original with 1 Certified Transcript" are taxable.

Plaintiffs do not present any evidence showing this is a charge for two transcripts. That the unit price for "Certified Transcripts," $3.85/page, is lower than that for "Original with 1 Certified Transcript," $5.25/page, does not necessarily prove "Original with 1 Certified Transcript" is a charge for two transcripts. However, it does show the charge was unreasonably large. "A district court may reduce costs which are unreasonably large or which are not supported by adequate documentation" and retains "discretion to award partial costs or to require the parties to pay their own costs." *Shum v. Intel Corp.*, 682 F.Supp.2d 992, 998 (N.D. Cal. 2009), *aff'd*, 629 F.3d 1360 (Fed. Cir. 2010); *see also K-S-H Plastics, Inc. v. Carolite, Inc.*, 408 F.2d 54, 60 (9th Cir. 1969), *cert. denied*, 396 U.S. 825 (1969) ("a trial court has wide discretion in awarding costs").

Plaintiffs have established the charge for "Original with 1 Certified Transcript" is unreasonably large. Of the 37 stenographic transcripts provided by Veritext, 20 were ordered by FINA and 17 were ordered by Plaintiffs. When FINA scheduled a deposition, Veritext charged $5.25/page for an "Original with 1 Certified Transcript." When Plaintiffs scheduled a deposition, Veritext charged $3.85/page for a "Certified Transcript." FINA provides no explanation for this difference in price. In the rare instance when a vendor other than Veritext was used, the charge for a transcript was closer to $3.85/page. TSG Court Reporting charged $3.65/page and Pelton Reporting Service charged $2.25 per page. This suggests the normal price for Veritext transcripts is $3.85/page, not $5.25/page. The $1.40/page difference represents an unjustified surcharge.

Because Plaintiffs have demonstrated the charge for 20 transcripts is unreasonably large, the Court, in its discretion, reduces deposition costs by $6,790.60 to reflect the regular price of transcripts as follows:

| Deponent | # of Pages | Price | Requested | Adjustment | Final Amount |
|---|---|---|---|---|---|
| Husain Al-Musallam | 153 | $ 3.85 | $ 589.05 | - | $ 589.05 |
| Michael Andrew | 341 | $ 5.25 | $ 1,790.25 | Transcript, $1.40/page surcharge denied | $ 1,312.85 |
| Paolo Barelli | 228 | $ 3.85 | $ 877.80 | - | $ 877.80 |
| Jack Buckner | 320 | $ 3.85 | $ 1,232.00 | - | $ 1,232.00 |
| Dragomir Ciorosian | 272 | $ 3.85 | $ 1,047.20 | - | $ 1,047.20 |
| Patrick Crakes | 299 | $ 5.25 | $ 1,569.75 | Transcript, $1.40/page surcharge denied | $ 1,151.15 |
| Andrea de Nino (Day 1) | 235 | $ 5.25 | $ 1,233.75 | Transcript, $1.40/page surcharge denied | $ 904.75 |
| Andrea de Nino (Day 2) | 225 | $ 5.25 | $ 1,181.25 | Transcript, $1.40/page surcharge denied | $ 866.25 |
| Andrea de Nino (Day 3) | 197 | $ 5.25 | $ 1,034.25 | Transcript, $1.40/page surcharge denied | $ 758.45 |
| Konstantin Grigorishin | 255 | $ 5.25 | $ 1,338.75 | Transcript, $1.40/page surcharge denied | $ 981.75 |
| Konstantin Grigorishin (30b6) | 224 | $ 5.25 | $ 1,176.00 | Transcript, $1.40/page surcharge denied | $ 862.40 |
| John Hansen | 191 | $ 3.85 | $ 735.35 | - | $ 735.35 |
| Christopher Holmes (30b6) | 497 | $ 3.85 | $ 1,913.45 | - | $ 1,913.45 |
| Katinka Hosszu (Day 1) | 283 | $ 5.25 | $ 1,485.75 | Transcript, $1.40/page surcharge denied | $ 1,089.55 |
| Katinka Hosszu (Day 2) | 97 | $ 5.25 | $ 509.25 | Transcript, $1.40/page surcharge denied | $ 373.45 |
| Thomas Hubbard | 192 | $ 3.85 | $ 739.20 | | $ 739.20 |
| Jonathan Jensen | 315 | $ 5.25 | $ 1,653.75 | Transcript, $1.40/page surcharge denied | $ 1,212.75 |
| Ali Khan (Day 1) | 329 | $ 5.25 | $ 1,727.25 | Transcript, $1.40/page surcharge denied | $ 1,266.65 |
| Ali Khan (Day 2) | 275 | $ 5.25 | $ 1,443.75 | Transcript, $1.40/page surcharge denied | $ 1,058.75 |
| John Kosner | 203 | $ 3.65 | $ 740.95 | - | $ 740.95 |
| Julio Gaglione (Day 1) | 106 | $ 3.85 | $ 408.10 | - | $ 408.10 |
| Julio Gaglione (Day 2) | 125 | $ 3.85 | $ 481.25 | - | $ 481.25 |
| Julio Gaglione (Day 3) | 90 | $ 3.85 | $ 346.50 | - | $ 346.50 |
| Cornelio Marculescu (Day 1) | 288 | $ 3.85 | $ 1,108.80 | - | $ 1,108.80 |
| Cornelio Marculescu (Day 2) | 166 | $ 3.85 | $ 639.10 | - | $ 639.10 |
| Cornelio Marculescu (Day 3) | 173 | $ 3.85 | $ 666.05 | - | $ 666.05 |
| Paul Meyer | 378 | $ 3.65 | $ 1,379.70 | - | $ 1,379.70 |
| Cody Miller | 212 | $ 5.25 | $ 1,113.00 | Transcript, $1.40/page surcharge denied | $ 816.20 |
| Dale Neuburger (Day 1) | 251 | $ 3.85 | $ 966.35 | - | $ 966.35 |
| Dale Neuburger (Day 2) | 382 | $ 3.85 | $ 1,470.70 | - | $ 1,470.70 |
| Artem Nitz (30b6) | 142 | $ 5.25 | $ 745.50 | Transcript, $1.40/page surcharge denied | $ 546.70 |
| Jacob Pebley | 273 | $ 5.25 | $ 1,433.25 | Transcript, $1.40/page surcharge denied | $ 1,051.05 |
| Sam Ramsamy | 171 | $ 3.85 | $ 658.35 | - | $ 658.35 |
| Daniel Rascher (Day 1) | 281 | $ 5.25 | $ 1,475.25 | Transcript, $1.40/page surcharge denied | $ 1,081.85 |
| Daniel Rascher (Day 2) | 281 | $ 5.25 | $ 1,475.25 | Transcript, $1.40/page surcharge denied | $ 1,081.85 |
| Thomas Shields | 291 | $ 5.25 | $ 1,527.75 | Transcript, $1.40/page surcharge denied | $ 1,120.35 |
| Apostolos Tsagkarakis | 249 | $ 5.25 | $ 1,307.25 | Transcript, $1.40/page surcharge denied | $ 958.65 |
| Mike Unger (Day 1) | 268 | $ 2.25 | $ 603.00 | - | $ 603.00 |
| Mike Unger (Day 2) | 433 | $ 3.85 | $ 1,667.05 | - | $ 1,667.05 |
| Michael Wagner | 175 | $ 5.25 | $ 918.75 | | $ 673.75 |
| Casey Wasserman | 152 | $ 3.85 | $ 585.20 | - | $ 585.20 |
| | Total Requested: | | $ 44,994.90 | Final Amount: | $ 38,024.30 |
| | | | | Difference: | $ 6,970.60 |

### 2. "Video – Initial Service" Costs Are Taxable Under 28 U.S.C. § 1920(2)

Plaintiffs object to $7,717.50 in costs for "Video – Initial Service" on the grounds it is a surcharge constituting either a service fee associated with videotaping or a third copy of the video deposition. They also contend these fees are unreasonably high for the alleged purpose of "setting up a deposition" rather than providing the video recording itself.

7

Under 28 U.S.C. §1920(2), "fees for printed or electronically recorded transcripts necessarily obtained for use in the case" are allowable. A prevailing party may recover "[t]he cost of an original and one copy of any deposition (including videotaped depositions) taken for any purpose in connection with the case." Civ. L.R. 54-3(c)(1). Taken together, fees for setting up a deposition are allowable if they are part of the cost for deposition video recordings.

Plaintiffs contend service fees associated with videotaping are not taxable under *Slaight v. Tata Consultancy Servs, Ltd.* No. 15-cv-01696-YGR, 2019 WL 3934934, at *6 (N.D. Cal. Aug. 20, 2019) (disallowing costs associated with a video transcript surcharge where such charge constituted either a service fee or a third copy of the deposition). This argument is unpersuasive. In *Slaight*, the district court disallowed transcript video surcharge costs because it constituted a service charge for "deposition editing and synchronizing [] not authorized by § 1920 or alternatively, a third copy." *Slaight*, 2019 WL 3934934, at *6 (quoting *Kalitta Air L.L.C. v. Central Texas Airborne System Inc.*, 741 F.3d 955, 958 (9th Cir. 2013)). Here, FINA adequately explains "Video-Initial Service" costs do not constitute optional fees for the vendor to synchronize a deposition video after a deposition. (Dkt. No. 382 at 11). In the affidavit supporting their bill of costs, FINA explicitly states, "World Aquatics does not seek to recover the cost for synchronizing video for any of the depositions" and submits invoices indicating they removed any costs associated with video synchronization from their bill. (Dkt. No. 374 ¶ 12.) Moreover, FINA adequately explains "Video-Initial Service" costs are "a base fee from Veritext for setting up a video deposition." (Dkt. No. 376-2 at 3.) There is no basis to conclude this cost is associated with an additional copy of the videotaped deposition.

FINA adequately provides details from which the Court can conclude "Video-Initial Service" costs are inextricable from the cost of producing videotape recordings of depositions. FINA explains this cost was "necessarily incurred as part of the virtual depositions where recording devices were used." (Dkt. No. 382 at 11.) They are "mandatory fees charged by Veritext associated with setting up a video deposition." (*Id.*) FINA also provides emails from the vendor explaining the cost applies to "the multiple steps required to the setup process of duplicative recording devices, testing the sound quality and educating the witness around what is

8

needed to capture an accurate record." (Dkt. No. 376-2 at 9.) As established in Section 1A, the cost of videotape depositions is allowable because in this case, videotape recordings were necessary. Accordingly, costs for "Video-Initial Services" are recoverable under 28 U.S.C. §1920(2) and Civil Local Rule 54-3(c)(1).

While Plaintiffs contest the reasonableness of the cost for setting up a deposition, they do not provide any basis for their challenge. Plaintiffs have the burden to show costs should not be awarded despite the presumption of awarding costs to a prevailing party. However, they allege no facts to demonstrate $350 to $442.50 per deposition is an unreasonably high price for setting up a virtual deposition for video recording. Accordingly, the Court denies Plaintiffs' challenge to $7,717.50 in "Video – Initial Service" costs.

### 3. $1,400 in Other Transcript Costs Are Not Taxable Under 28 U.S.C. § 1920(2)

Plaintiffs object to $3,230 in costs labeled "Other Transcript Costs" because FINA did not provide details to establish what this amount represents or whether the cost was necessary for obtaining transcripts. "Fees for printed or electronically recorded transcripts necessarily obtained for use in the case" are allowable under 28 U.S.C. §1920(2). Pursuant to Civil Local Rule 54-1(a), a prevailing party must state separately and specifically each item of taxable costs claimed. They must also submit an affidavit that costs are "correctly stated, were *necessarily incurred*, and are allowable by law." Civil L.R. 54-1(a); *see In re Ricoh*, 661 F.3d at 1368 (emphasis added). Only when the prevailing party establishes an expense is taxable under section 1920 does the presumption in favor of awarding costs to a prevailing party apply. *Plantronics*, 2012 WL 6761576, at *3.

FINA seeks $85 in "Other Transcript Costs" for every deposition transcript but does not provide any explanation for them in the affidavit supporting their bill. In their reply to Plaintiffs' motion, FINA claims these are "necessary costs associated with the preparation of and receipt of deposition transcripts and are therefore recoverable" as a deposition cost. (Dkt. No. 382 at 11, 12.) While shipping and handling costs are not per se unallowable, the prevailing party must show they are part of and necessary for obtaining transcripts to be taxable under 28 U.S.C. §1920(2) and Civil Local Rule 54-3(c)(1). *See Slaight*, 2019 WL 3934934, at *5 (requiring parties to provide

authority for taxing specific shipping costs even though costs of shipping and handling are allowable.) Moreover, FINA never explains which charge in their invoice corresponds to "Other Transcript Costs." There is no such charge in any invoice.

FINA explains why some, but not all, of this cost is inextricably linked with obtaining deposition transcripts. Plaintiffs contend that at their meet and confer, FINA confirmed that "Other Transcript Cost" consists of two items in the invoice: $50 in "Production and Processing" costs and $35 in "Electronic Delivery and Handling" costs. In their opposition to this motion, FINA explains "Electronic Delivery and Handling" costs are standard electronic delivery fees charged for preparing and sending deposition transcripts akin to "shipping and handling fees" for physical transcripts. (Dkt. No. 382 at 11, 12.) FINA also submits an email from the vendor stating they provide electronic copies, not hard copies, of transcripts. (Dkt. No. 376-2 at 9.) Thus, FINA sufficiently explains how "Electronic Delivery and Handling" costs are necessary for obtaining deposition transcripts and therefore allowable under 28 U.S.C. §1920(2) and Civil Local Rule 54-3(c)(1). Although Plaintiffs argue $35 in electronic delivery and handling costs are excessive, they do not provide a justification for claiming so. That "the normal practice in the Northern District is to disallow any postage and handling charges that exceed the rate of regular first-class mail plus handling" is inapposite. Not only do Plaintiffs fail to identify what constitutes a non-excessive charge, they cite to cases involving physical delivery rather than electronic delivery of transcripts. Plaintiffs have not met their burden to show why the Court should not tax "Electronic Delivery and Handling" fees under section 1920(2).

On the other hand, FINA fails to explain why "Production and Processing" costs are inextricably linked to obtaining deposition transcripts. FINA simply points to two cases where district courts taxed deposition-related costs if the party demonstrated processing fees were inextricable from the cost of obtaining depositions and denied them if the party failed to do so. (Dkt. No. 382 at 12.) *See Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 13-CV-00159-CW (MEJ), 2014 WL 5494906, at *4 (N.D. Cal. Oct. 30, 2014), *adopted*, No. 13-159 CW, 2014 WL 6482602 (N.D. Cal. Nov. 18, 2014); *see also Kranson v. Fed. Express Corp.*, No. 11-CV-05826-YGR, 2013 WL 6503308, at *13 (N.D. Cal. Dec. 11, 2013). Because the Court cannot determine

1  whether, and if so, how much, of the $50 per deposition charge was necessary for obtaining
2  deposition transcripts, and no alternative explanation is provided, the Court reduces "Other
3  Transcript Costs" by $50 per deposition, amounting to a reduction of $1,900.

### 4. "Exhibit Costs" for Remote Deposition Exhibits Are Taxable

Plaintiffs object to $9,394.80[3] in costs for "Exhibit Costs" because they constitute a service charge relating to electronic exhibits and FINA's counsel represented these fees are not tied to the reproduction of exhibits for use at the deposition.

The "cost of reproducing exhibits to depositions is allowable if the cost of the deposition is allowable." Civil L.R. 54-3(c)(3). As established above, the cost of depositions is allowable. In the affidavit supporting their bill of costs, FINA cites Civil Local Rule 54-3(c)(3) to show exhibit costs were necessarily incurred and allowable by law. FINA also provides an email from their vendor explaining exhibit charges are about quality control and "apply to the manual labor required to make sure exhibits are properly marked and matched up accurately with the index pages." (Dkt. No. 376-2 at 9.) Thus, FINA has provided sufficient documentation for the Court to conclude "Exhibit Costs" represent a necessary cost of electronically reproducing exhibits at depositions. Accordingly, the Court sustains this charge.

### 5. Reproduction and Exemplification Costs

Plaintiffs object to $48,253.43 in document reproduction and exemplification costs consisting of $36,356.25[4] in production fees and $11,897.18 in metadata extraction fees. Under 28 U.S.C. §1920(4), "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are taxable. To be taxable under Section 1920(4), the costs must be for "copying" documents and must be "necessarily

//

---

[3] Plaintiffs and ISL object to $9,394.80 out of $10,291.20 taxed in Exhibit Costs, but do not provide a basis for $9,394.80.
[4] There is a discrepancy in Plaintiffs' motion regarding the amount of e-discovery costs in dispute. At times, they object to $36,536.25 (Dkt. No. 378 at 10:24; Dkt. No. 385 at 10:19), but at other times, they object to $36,356.25 (Dkt. No. 378 at 10:11; Dkt. No. 385 at 10:8). The Court assumes they meant to object to $36,356.25 because this amount is consistent with FINA's bill of costs and the amount taxed by the Clerk.

11

obtained for use in the case." *See In re Online DVD-Rental Antitrust Litigation*, 779 F.3d, 914, 929 (9th Cir. 2015).

### A. Production Fees and Metadata Extraction Fees Are Taxable Under 28 U.S.C. § 1920(4)

FINA claims production fees and metadata extraction fees qualify as costs for "copying" documents taxable under 28 U.S.C. §1920(4)[5] because they were incurred for "document reproduction in conjunction with formal discovery." (Dkt. No. 374 ¶ 16.) Civil Local Rule 43-3(d)(2) allows parties to tax the "cost of reproducing disclosure or formal discovery documents when used for any purpose in the case." (*Id.*) Under Ninth Circuit precedent, costs to make duplicates in a specified electronic format can constitute costs for making copies under Section 1920(4). *See In re Online-DVD*, 779 F.3d at 928 ("To the extent that a party is obligated to produce (or obligated to accept) electronic documents in a particular format or with particular characteristics intact (such as metadata, color, motion, or manipulability), the costs to make duplicates in such a format or with such characteristics preserved are recoverable as 'the cost of making copies . . . necessarily obtained for use in the case.'") In the affidavit supporting their bill, FINA cites these rules and explains it only seeks costs identified by their vendor as attributable to taxable production tasks listed in the CAND Form 133. (Dkt. No. 374 ¶ 18.) CAND Form 133 lists the kinds of document production costs generally considered taxable such as conversion of native files to different formats for production, electronic label/bates numbering, image indorsing, load file creation, optical character recognition (OCR), slip sheets, and TIFF conversion.

FINA further explains production costs were "necessarily obtained for use in this case" by showing they were incurred in response to Plaintiffs' request for documents pursuant to Rule 34. (Dkt. No. 382-4 at 3.) Rule 34(b) permits a requesting party to "specify the form or forms in which it wants electronically stored information produced" and directs the responding party to "organize and label documents to correspond with the categories in the [document production]

---

[5] FINA also cites 28 U.S.C. §1920(3), which allows recovery for "fees and disbursements for printing," but never follows up with any explanation. Therefore, the Court focuses its analysis on whether FINA has shown e-discovery costs to be taxable under 28 U.S.C. §1920(4).

12

request." Fed. R. Civ. P. 34(b). FINA claims they incurred these costs "producing and receiving documents that were produced in this litigation." (Dkt. No. 374 ¶ 16.) As evidence, FINA proffers Plaintiffs' request for documents specifying the format electronically stored information is to be produced. (Dkt. No. 382-4 ¶ 6.) The request includes TIFF formatting, unique IDs, and 24 metadata fields to be produced. (*Id.*)

FINA provides sufficient documentation for the Court to conclude production costs and metadata extraction costs constitute "copying costs necessarily incurred for use in the case" allowable under 28 U.S.C. §1920(4). Therefore, these costs are taxable.

### B. Plaintiffs Have Not Shown Why the Court Should Deny Production Fees

Nonetheless, Plaintiffs contend the Court should deny e-discovery costs because "Technical PM" fees include costs for intellectual efforts other than physical preparation or duplication of documents. FINA's production costs correspond to "Technical PM/Production/Imports/Exports" charges in invoices. In the affidavit in support of their bill, FINA labels these charges "production-related fees including: conversion of native files to different format for production; electronic label/bates numbering or image endorsing; load file creation; OCR'ing; slip-sheets, and TIFF conversion." (Dkt. No. 374-11 at 2.) Plaintiffs speculate "Technical PM" costs include intellectual efforts because the vendor charged hourly for them and because of FINA's broad categorization as "production-related fees."

"The proper application of a narrowly construed §1920(4) requires that the tasks and services for which an award of costs is being considered must be described and established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies." *In re Online DVD*, 779 F.3d at 928. While the costs of creating duplicates are recoverable as costs for "making copies," ancillary costs commonly incurred leading up to, in conjunction with, or after duplication are not recoverable. *Id.*

FINA adequately demonstrates "Technical PM" costs only relate to labor involved in making copies of electronically stored information for production as requested by Plaintiffs. As evidence, FINA proffers an email from their vendor confirming the "Technical PM" tasks in the invoices pertain only to the "conversion of native files to a different format for production,

13

electronic label/bates numbering or image endorsing, load file creation, OCR'ing, slip-sheets, and TIFF conversion." (Dkt. No. 382-3 at 2.) The vendor distinguishes Technical PM tasks from Project Management, which involves running searches, for example to filter down to review, quality control to identify conflicts, releasing documents to Relativity for review, and setting user and group permissions. (*Id.*) The vendor also distinguishes Technical PM tasks from Data Technician time, which involves downloading data, importing received productions, and promoting documents from the repository workspace to the review workspace. (*Id.*) FINA taxed only costs for "Technical PM/Production/Import/Exports" and not costs for "Project Management" and "Data Technician Services" even though the latter two constitute a large share of the bill. For example, in one charge, Control Risks, the vendor charged FINA $3,368.75 for Project Management, $700 for Data Technician Services, and $962.50 for Technical PM/Production/Import/Exports. (Dkt. No. 374-12 at 2.) This distinction supports FINA's claim Technical PM costs relate to the electronic production of documents in a specified format and not to the intellectual efforts in assembling, collecting, or processing data leading up to or after duplication.

Plaintiffs allege, but fail to demonstrate, how FINA "lumped together" services akin to the intellectual effort incurred in assembling, collecting, or processing documents in Technical PM costs. (Dkt. No. 382 at 9.) That Technical PM costs were billed at an hourly rate and FINA used a broad label—"production related fees"—to categorize taxable reproduction costs in the affidavit supporting their bill[6] does not establish Technical PM costs include such intellectual efforts. By contrast, FINA provides sufficient evidence showing Technical PM costs involved only the cost of

//

---

[6] In determining whether FINA has provided sufficient detail to establish production costs as taxable under § 1920, the Court considers both FINA's affidavit in support of their bill and also affidavits and documentation submitted thereafter. While Plaintiffs do not expressly argue the Court should consider only the affidavit in support of FINA's bill of costs, they object to production costs based only on the affidavit. In their reply to FINA's opposition brief, Plaintiffs ignore FINA's additional documents establishing costs as taxable under § 1920. For example, Plaintiffs do not address vendor emails proffered by FINA to justify Technical PM costs. (Dkt. No. 385 at 8.) Local Rule 54-4(a) allows the Clerk to "consider future affidavits and documentation as necessary to determine allowable costs." Accordingly, the Court may consider them too.

duplicating electronic records for production. FINA did not tax "Project Management" and "Data Technician Services" which did involve intellectual efforts.

Plaintiffs' other arguments fare no better. *In re Online DVD* did not, as Plaintiffs suggest, instruct courts to categorically disallow production costs exceeding OCR and conversion to TIFF. 779 F.3d at 930. There, the Ninth Circuit disallowed costs for "native review processing" because the charge encompassed tasks unrelated to the making of "copies" such as exporting documents, populating custom fields, and preparing for further processing. *Id.* Plaintiffs make no such showing here. Moreover, *eBay Inc. v. Kelora Systems, LLC* did not, as Plaintiffs suggest, require prevailing parties to establish costs "have a nexus to specific productions" or show documents were "actually produced." No. C 10-4947 CW (LB), 2013 WL 1402736, at *9 (N.D. Cal. Apr. 5, 2013). There, the district court taxed only "costs that have a nexus to specific productions" not because the prevailing party did not actually produce them, but because the prevailing party failed to itemize costs with enough detail to establish the other costs were taxable as costs for making copies necessarily obtained for use in the case under 28 U.S.C. § 1920(4). *Id.*

Because Plaintiffs have not met their burden to establish why the Court should deny Technical PM costs allowable under 28 U.S.C. § 1920(4), the Court sustains these costs.

### C. Plaintiffs Have Not Shown Why the Court Should Reduce Metadata Extraction Fees

Finally, Plaintiffs contend the Court should reduce e-discovery costs because metadata extraction fees, which correspond to $11,897.18[7] in "ECA Data Filtering & Processing" charges in invoices, were not incurred for duplication of electronically stored documents in the format specified by Plaintiffs. (Dkt. Nos. 374-11, 374-12.) They speculate these costs relate to data not actually produced to Plaintiffs because "ECA Data Filtering and Processing" fees are for amounts of data approaching or exceeding the amounts of data the vendor charged as "Database Hosting" fees.

---

[7] Plaintiffs object to an unspecified amount of metadata extraction fees. They allege metadata extraction fees are not taxable and the Clerk should have "reduced [FINA's] e-discovery costs by a pro rata share based on the percentage of data or documents actually produced to Plaintiffs." (Dkt. No. 385 at 10.)

As laid out in Section 5A, costs to produce documents in a specified electronic format can qualify as costs for "making copies" "necessarily obtained for use in the case" and taxable under Section 1920(4). *See In re Online-DVD*, 779 F.3d at 928. FINA identifies "ECA Data Filtering & Processing" fees as costs incurred for making copies of electronically stored data requested by Plaintiffs. (Dkt. No. 382 at 15.) FINA demonstrates these copies were necessarily obtained for discovery by submitting Plaintiffs' request for documents which specified 24 metadata fields to be extracted pursuant to Rule 34. (Dkt. Nos. 382 at 15, 382-4 at 3.)

Plaintiffs allege, but do not explain why, metadata extraction fees for amounts of data greater than the amounts under "Database Hosting" fees demonstrates metadata extraction fees are unreasonably large or "include collection and processing costs." (Dkt. No. 385 at 10.) FINA does not, and is not obligated to, provide an explanation for "Database Hosting" fees as they did not tax them. Moreover, Plaintiffs misrepresent the amounts of data stated on FINA's invoices. While it is true data applicable to "ECA Data Filtering and Processing" costs in FINA's first invoice exceed data applicable to "Database Hosting" fees (Dkt. No. 385 at 10), the opposite is true for all other invoices. (Dkt. No. 374-12.) The amounts of data corresponding to "ECA Data Filtering and Processing" and "Database Hosting Fee" for all four invoices where FINA billed metadata extraction costs are listed in the table below:

| Invoice # | ECA Data Filtering and Processing Fee | Comparison | Database Hosting Fee |
|---|---|---|---|
| IUS01031295 | 71.64570 GB | > | 34.39022 GB |
| IUS01031874 | 53.01741 GB | < | 56.60525 GB |
| IUS01035989 | 124.67000 GB | < | 131.31928 GB |
| IUS01038031 | 0.31000 GB | < | 146.08741 GB |

Plaintiffs have not met their burden overcome the presumption of awarding costs to the prevailing party, FINA. Because metadata extraction costs are taxable under 28 U.S.C. § 1920(4) the Court sustains these costs.

## CONCLUSION

For the reasons stated above, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for review of the clerk's taxation of costs as summarized in the table below. The Court allows FINA to recover $143,605.46 in costs.

16

|  | Costs Taxed by Clerk | Objection | Adjustment | Final Amount |
|---|---|---|---|---|
| Deposition Costs | $ 94,716.10 |  |  | $ 86,345.50 |
|     Deposition Video Recordings | $ 28,482.50 | $ 28,482.50 | 0.00 | $ 28,482.50 |
|     Stenographic Written Transcripts | $ 44,994.90 | $ 21,532.50 | $ (6,970.60) | $ 38,024.30 |
|     Other Transcript Costs | $ 3,230.00 | $ 3,230.00 | $ (1,400.00) | $ 1,830.00 |
|     Video-Initial Service Fees | $ 7,717.50 | $ 7,717.50 | 0.00 | $ 7,717.50 |
|     Remote Deposition Exhibits | $ 10,291.20 | $ 9,394.80 | 0.00 | $ 10,291.20 |
| Reproduction and Exemplification | $ 48,253.43 |  |  | $ 48,253.43 |
|     Production Fees | $ 36,356.25 | $ 36,356.25 | 0.00 | $ 36,356.25 |
|     Metadata Extraction Fees | $ 11,897.18 | Unclear | 0.00 | $ 11,897.18 |
| Filing and Docket Fees | $ 1,474.50 | None | 0.00 | $ 1,474.50 |
| Reporter's Transcripts | $ 378.10 | None | 0.00 | $ 378.10 |
| Witness Fees and Expense | $ 3,388.94 | None | 0.00 | $ 3,388.94 |
| Deposition Interpreters | $ 3,764.99 | None | 0.00 | $ 3,764.99 |
| **Total** | $ 151,976.06 | $ 85,181.05 | $ (8,370.60) | $ 143,605.46 |

Relatedly, FINA moves to seal documents submitted in support of its opposition to Plaintiffs' motion for review taxation of costs that ISL had designated as confidential under the parties' stipulated Protective Order. (Dkt. No. 135.) Under the Local Rules, where a party seeks to file under seal any material designated as confidential by another party, the submitting party must file a motion for a sealing order. *See* Civil L.R. 79-5(f). "Within 7 days of the motion's filing, the Designating Party must file a statement and/or declaration" specifically stating the applicable legal standard and reasons for keeping the confidential documents under seal. *Id.* at 79-5(f)(3). "A failure to file a statement or declaration may result in the unsealing of the provisionally sealed document without further notice to the Designating Party." *Id.*

To date, ISL, the designating party, has not filed a responsive declaration to the above-referenced motion. Having considered the submission of the parties and for the reasons stated above, the Court DENIES FINA's administrative motion to consider whether another party's material should be sealed.

This Order disposes of Docket. Nos. 378 and 381 in Case No. 18-cv-07393-JSC, as well as Docket Nos. 436 and 439 in Case No. 18-cv-07394-JSC.

**IT IS SO ORDERED.**

Dated: November 16, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge