Jeffrey L. Kessler (*pro hac vice*)
Johanna Rae Hudgens (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
jkessler@winston.com
jhudgens@winston.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
jparsigian@winston.com

*Class Counsel and Counsel for Plaintiffs Thomas A.*
*Shields and Katinka Hosszú*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS A. SHIELDS AND KATINKA HOSSZÚ, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>FÉDÉRATION INTERNATIONALE DE NATATION,<br><br>                    Defendant. | Case No. 3:18-cv-07393-JSC (N.D. Cal.)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY SETTLEMENT APPROVAL**<br><br>Hearing Date:   October 16, 2025<br>Time:            10:00 a.m.<br>Judge:           Hon. Jacqueline Scott Corley<br>Courtroom:       8, 19th Floor |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Plaintiffs respectfully request that this Court hear Plaintiffs' Motion for Preliminary Settlement Approval, at 10:00 a.m., on October 16, 2025, to grant an order pursuant to Federal Rule of Civil Procedure 23:

1. Preliminarily approving a proposed class action settlement with World Aquatics ("Defendant");

2. Provisionally certifying the proposed Settlement Classes;

3. Appointing Winston & Strawn LLP as Settlement Class Counsel;

4. Directing notice to the Settlement Classes and approving the manner and form of Notice and the proposed Distribution Plan to Settlement Class Members;

5. Appointing Thomas A. Shields and Katinka Hosszú (the "Class Representatives") as representatives for the Settlement Classes the purpose of disseminating Notice and monitoring the future implementation of the Settlement Agreement;

6. Authorizing retention of Verita Global, LLC ("Verita") as Settlement Administrator; and

7. Scheduling a final hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2).

This motion is based on this Notice of Motion and Motion for Preliminary Approval of Settlement with Defendant, the following memorandum of points and authorities, the Settlement Agreement filed herewith, the Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Motion for Preliminary Settlement Approval, the Declaration of Zach Cooley Regarding Settlement Notice Program, the pleadings and papers on file in this action, and such other matters as the Court may consider. Plaintiffs believe that the Court can decide this motion on the papers but, to the extent a hearing is needed, Plaintiffs request a hearing date for October 16, 2025.

Dated: September 5, 2025

Respectfully submitted,

WINSTON & STRAWN LLP


By   _/s/ Jeffrey L. Kessler_
    Jeffrey L. Kessler (*pro hac vice*)
    Johanna Rae Hudgens (*pro hac vice*)
    WINSTON & STRAWN LLP
    200 Park Avenue
    New York, NY 10166-4193
    Telephone: (212) 294-6700
    Facsimile: (212) 294-4700
    jkessler@winston.com
    jhudgens@winston.com

    Jeanifer E. Parsigian (SBN 289001)
    WINSTON & STRAWN LLP
    101 California Street, 34th Floor
    San Francisco, CA 94111
    Telephone: (415) 591-1000
    Facsimile: (415) 591-1400
    jparsigian@winston.com

    *Class Counsel for Plaintiffs*

# TABLE OF CONTENTS

**Page**

I.      **INTRODUCTION** ...................................................................................... 1

II.    **BACKGROUND AND PROCEDURAL HISTORY** ........................................ 3

III.   **THE SETTLEMENT** ................................................................................. 5

    A.     The Settlement Negotiations ..................................................... 5

    B.     The Settlement Classes .............................................................. 6

    C.     Settlement Consideration and Release of Claims ..................... 6

        1.     Monetary Relief. ........................................................... 7

        2.     Injunctive Relief. .......................................................... 7

        3.     Settlement Release. ....................................................... 8

    D.     Distribution Plan ....................................................................... 9

    E.     Notice Plan ............................................................................. 10

        1.     Notice to Settlement Classes Prior to Final Approval and Distribution of Settlement Funds. ........................ 10

IV.    **LEGAL STANDARD** .............................................................................. 12

V.     **THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL** ........................ 13

    A.     The Settlement Is Fair, Reasonable, and Adequate .................. 13

        1.     The Classes have been zealously represented. ............ 13

        2.     The Settlement Agreement resulted from arm's-length negotiations. .......................................... 15

        3.     The Settlement provides adequate relief for the Classes. .... 16

            a.     The costs, risks, and delay of a jury trial and appeal. ........... 18

            b.     The effectiveness of the Distribution Plan. ............................. 19

            c.     The proposed attorneys' fees are reasonable. ........................ 20

        4.     The Settlement treats Class Members equitably. .......... 21

        5.     The Settlement also satisfies the factors set forth in the Northern District of California's Procedural Guidance. ........ 22

            a.     The difference between the certified injunctive class and the Injunctive Relief Settlement Class properly reflects the contours of the Settlement. ........ 22

|   |   |   |   | b. | The settlement releases are appropriate for this settlement. | 23 |

b. The settlement releases are appropriate for this settlement. ...........................23

c. No other cases will be affected by the Settlement. .................24

d. Verita was selected as Settlement Administrator through a fair process. ...........................................25

6. Counsel will request reasonable class representative service awards. .....................................................................25

B. The Proposed Notice Program Satisfies Rule 23 ........................................27

1. The Settlement Notice Plan is consistent with what was previously ordered for class notice and is reasonable. ........................27

2. The Court should exercise its discretion to approve the settlement without a second opt-out period in light of the comprehensive class notice already provided. ..............................28

C. Certification of the Settlement Classes Is Warranted ......................................30

1. The Proposed Settlement Classes satisfy the requirements of Rule 23(a). ...........................................................31

a. Numerosity. ................................................................31

b. Commonality. ..............................................................31

c. Typicality. ..................................................................32

d. Adequacy of Representation. ......................................32

2. The Proposed Injunctive Relief Settlement Class satisfies the requirements of Rule 23(b)(2). .............................................32

3. The Proposed Damages Settlement Classes Satisfy Rule 23(b)(3). ...................................................................33

D. The Court Should Appoint Winston as Settlement Class Counsel ................33

E. Proposed Schedule for Notice and Final Approval ........................................34

VI. CONCLUSION ...........................................................................................................34

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Anthem, Inc. Data Breach Litig.,*
327 F.R.D. 299 (N.D. Cal. 2018) ...............................................................15, 19, 20

*Brown v. Hain Celestial Grp., Inc.,*
2014 WL 6483216 (N.D. Cal. Nov. 18, 2014) ...........................................22, 23

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
2015 WL 9266493 (N.D. Cal. Dec. 17, 2015) .....................................................21

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
2016 WL 3648478 (N.D. Cal. July 7, 2016) .......................................................17

*In re Coll. Athlete NIL Litig.,*
2025 WL 1675820 (N.D. Cal. June 6, 2025) ....................................13, 17, 18, 32

*In re College Athlete NIL Litigation,*
No. 4:20-cv-03919-CW (N.D. Cal.) ............................................................17, 25

*In re Super. Beverage/Glass Container Consol. Pretrial,*
133 F.R.D. 119, 127 (N.D. Ill. 1990) ...................................................................19

*Edwards v. Costco Wholesale Corp.,*
2023 WL 6966055 (C.D. Cal. Oct. 20, 2023) ......................................................26

*Evon v. Law Offs. of Sidney Mickell,*
688 F.3d 1015 (9th Cir. 2012) ...............................................................................32

*Garner v. State Farm Mut. Auto Ins. Co.,*
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) .....................................................15

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc.*
*v. Dukes*, 564 U.S. 338 (2011) ...........................................................................21

*Hesse v. Sprint Corp.,*
598 F.3d 581 (9th Cir. 2010) .................................................................................24

*In re HIV Antitrust Litig.,*
2023 WL 11897610 (N.D. Cal. Sept. 25, 2023) ............................................28, 30

*In re Illumina, Inc. Sec. Litig.,*
2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ......................................................15

*International Swimming League, Ltd. v. Fédération Internationale de Natation*,
   No. 3:18-cv-07394-JSC (N.D. Cal.) ..................................................................24

*In re Lithium Ion Batteries Antitrust Litig.*,
   2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) .............................................17, 18

*Low v. Trump Univ., LLC*,
   881 F.3d 1111 (9th Cir. 2018) ................................................................28, 29

*In re MacBook Keyboard Litig.*,
   2022 WL 17409738 (N.D. Cal. Dec. 2, 2022) .....................................................13

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .....................................................19

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale
   Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ......................31

*McClellan v. SFN Grp., Inc.*,
   2012 WL 2367905 (N.D. Cal. June 21, 2012) .....................................................27

*Meijer, Inc. v. Warner Chilcott Holdings Co. Ill., Ltd.*,
   565 F. Supp. 2d 49 (D.D.C. 2008) ................................................................19

*Miguel-Sanchez v. Mesa Packing, LLC*,
   2021 WL 1736807 (N.D. Cal. May 3, 2021) .......................................................20

*In re NCAA Grant-in-Aid Cap Antitrust Litig.*,
   No. 4:14-md-02541-cw (N.D. Cal.) .............................................................17, 25

*Nitsch v. DreamWorks Animation SKG Inc.*,
   2017 WL 399221 (N.D. Cal. Jan. 19, 2017) ......................................................12

*O'Bannon v. National Collegiate Athletic Ass'n*,
   No. 4:09-cv-03329-CW (N.D. Cal.) ...............................................................25

*Officers for Just. v. Civ. Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ...................................................................29

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC* ,
   31 F.4th 651 (9th Cir. 2022)...................................................................31

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ...........................................................20, 21, 25

*In re Resistors Antitrust Litig.*,
   2020 WL 2791922 (N.D. Cal. Mar. 24, 2020) .....................................................21

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ..................................................................25

*Sandoval Ortega v. Aho Enters., Inc.*,
  2021 WL 5584761 (N.D. Cal. Nov. 30, 2021) ........................................15

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*,
  2016 WL 7743407 (N.D. Cal. Dec. 7, 2016) ..........................................12

*In re Stable Road Acquisition Corp.*,
  2024 WL 3643393 (C.D. Cal. Apr. 23, 2024) .........................................19

*In re Super. Beverage/Glass Container Consol. Pretrial*,
  133 F.R.D. 119, 127 (N.D. Ill. 1990) ....................................................19

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) .......................................................21, 25, 26

*Stephens v. US Airways Grp., Inc.*,
  102 F. Supp. 3d 222 (D.D.C. 2015) .......................................................19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab.*
  *Litig.*,
  2013 WL 12327929 (C.D. Cal. July 24, 2013) ...........................16, 18, 21

*Trombley v. Nat'l City Bank*,
  826 F. Supp. 2d 179 (D.D.C. 2011) .......................................................19

*Vasquez v. USM Inc.*,
  2015 WL 12857082 (N.D. Cal. Apr. 13, 2015) ......................................12

*In re Vitamin C Antitrust Litig.*,
  2012 WL 5289514 (E.D.N.Y. Oct. 23, 2012) .........................................19

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ...............................................................21

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  229 F. Supp. 3d 1052 (N.D. Cal. 2017) .................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)............................................................................21, 31

*Zamora v. Lyft, Inc.*,
  2018 WL 4657308 (N.D. Cal. Sept. 26, 2018) ......................................26

**Statutes**

15 U.S.C. § 1 et seq...............................................................4, 14, 23, 24 31

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................ *passim*

Fed. R. Civ. P. 23, 2003 advisory committee notes............................................28

*Procedural Guidance for Class Action Settlements*, UNITED STATES DISTRICT COURT
    NORTHERN DISTRICT OF CALIFORNIA,
    https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-
    settlements (last visited Sept. 5, 2025)......................................................22

James Sutherland, *ISL, Shields & Other Pros set to go to trial with World Aquatics in
    January 2026* (July 2, 2025), https://swimswam.com/isl-shields-other-pros-set-to-go-
    to-trial-with-world-aquatics-in-january-2026 ...........................................29

*Jeffrey A. Mishkin*, PHILLIPS ADR ENTERS., https://phillipsadr.com/our-team/jeffrey-a-
    mishkin (last visited July 21, 2025) ............................................................5

Press Release, *Winston & Strawn LLP, Professional Swimmers May Be Eligible for
    Money Damages From a Class Action Lawsuit Going to Trial in January 2026*,
    WINSTON & STRAWN LLP (June 9, 2025), https://www.winston.com/en/insights-
    news/professional-swimmers-may-be-eligible-for-money-damages-from-a-class-
    action-lawsuit-going-to-trial-in-january-2026 ...........................................29

# GLOSSARY OF DEFINED TERMS

| TERM | DEFINITION |
|---|---|
| Complaint | First Amended Class Action Complaint filed in this litigation on January 17, 2020 |
| ECF No. | Unless otherwise indicated, docket references are to the docket in No. 3:18-cv-07393-JSC (N.D. Cal.) |
| Kessler Decl. | Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Motion for Preliminary Settlement Approval, concurrently filed herewith |
| Plaintiffs | Unless otherwise indicated, all references to Plaintiffs are to the *Shields* Plaintiffs Classes previously certified by the Court |
| Settlement Class Members | Collectively, all members of the 2018 Damages Settlement Class, 2019 Damages Settlement Class, and Injunctive Relief Settlement Class |
| Motion | Plaintiffs' Notice of Motion and Motion for Preliminary Settlement Approval |
| Settlement Agreement or Settlement | Stipulation and Settlement Agreement, Ex. 1 to Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Motion for Preliminary Settlement Approval, concurrently filed herewith |

## I.    INTRODUCTION

Plaintiffs have secured an important settlement agreement with World Aquatics that will have a positive impact on virtually every competitive swimmer in the world who seeks to participate in professional (paid) swimming events.  This settlement comes after more than six years of litigation, where Plaintiffs worked tirelessly to create a robust evidentiary record, defeated a motion to dismiss, engaged in extensive discovery, successfully appealed and overturned a summary judgment ruling, and certified an injunctive relief class and two damages classes, after overcoming a denial of damages class certification through an appeal.  Now, after negotiating a settlement at arm's length before one of the nation's preeminent mediators in the business of sports (Jeffrey A. Mishkin), Plaintiffs have secured $4,627,084.00 in damages for 263[1] top-tier swimmers who were allegedly prevented from earning appearance fees and prize money through a swimming competition hosted by the International Swimming League ("ISL") in December 2018 and additional events in 2019. The Settlement Agreement fully resolves the claims against Defendant World Aquatics in this action, while providing for significant monetary contributions at double the estimated damages for the 2018 Damages Settlement Class and 1.3 times the fiercely disputed estimated damages for the 2019 Damages Settlement Class.[2]  In addition, the Settlement Agreement provides for injunctive relief to permanently bar the conduct that Plaintiffs challenged as antitrust violations, freeing the market for future competitive entry.

The Settlement Agreement was achieved after extensive litigation, during which Plaintiffs and Defendant (together, the "Parties") completed discovery, class certification, summary judgment motions, and appeal of summary judgment and class certification decisions, ensuring the Parties were thoroughly informed about the relevant facts and applicable law.  Additionally, the settlement uses the same material definitions of the classes this Court has already certified for this litigation, with the Ninth Circuit having already considered and ruled on the key issues pertaining to the damages classes as certified, and there are no changes to the claims or definitions that warrant revision of that decision.  After the extensive

---

[1]   Dr. Rascher's report in support of class certification (ECF No. 191-61) identified 266 swimmers as members of the damages class.  Former named plaintiff Michael C. Andrew dismissed his claims against World Aquatics individually in 2023. ECF No. 384. Two swimmers requested by email to be excluded from the damages classes.  Declaration of Zach Cooley ("Cooley Decl.") ¶ 12.

[2]   Unless otherwise stated, all capitalized terms throughout are terms defined in the Settlement Agreement, attached as Exhibit 1 to the Kessler Declaration (cited as "Settlement").

notice program for the certified classes was completed, and the opt-out period expired, only two class members of the approximately 265 swimmers in the damages classes sent exclusion requests.

The settlement represents an exceptional outcome for the swimmers that appropriately weighs the potential rewards of further litigation against World Aquatics with the risks and costs of taking the case to trial. In addition to the monetary payment of damages, the settlement will reshape the economic landscape of professional swimming by permanently enjoining Defendant from enforcing the rules or engaging in similar conduct that blocked the competitive entry of independent swimming leagues and competitions that benefit members of the Injunctive Class. Professional swimmers will be granted the freedom and right to earn income through independent swimming competitions and capitalize on their lifelong dedication to their sport in the labor market without fear of being suspended by Defendant or losing the ability to compete in the Olympics.

Plaintiffs also propose a notice program designed by experienced settlement administrator Verita (the "Settlement Administrator" or "Administrator") that benefits from the prior research and notice performed by the same Administrator after the Damages Classes were certified. *See* Cooley Decl. The proposed notice program includes direct email or postcard notice for as many potential Settlement Class Members as possible, as well as direct notice via social media messaging. The Administrator will deliver a state-of-the-art media notice program, including notice via digital media. The Administrator will maintain a case-specific website, SwimmerSettlement.com (the "Settlement Website"), to provide Settlement Class Members with access to information about the Settlement, and to provide a secure online mechanism for Settlement Class Members to review their estimated settlement payments and, where required, submit information to effectuate payment.

If approved, the Settlement will represent a significant payout result in an antitrust settlement and lead to pro-competitive changes benefiting professional swimmers. For these reasons, Plaintiffs respectfully request an order (1) preliminarily approving the Settlement; (2) provisionally certifying the proposed Settlement Classes; (3) appointing Winston & Strawn LLP ("Winston") as Settlement Class Counsel; (4) directing notice to the Settlement Classes pursuant to the proposed manner and form of notice; (5) appointing Thomas A. Shields and Katinka Hosszú ("Class Representatives") as

representatives for the Settlement Classes; (6) authorizing retention of Verita as the Settlement Administrator; and (7) scheduling a final hearing to determine whether the Settlement is fair, reasonable, and adequate under Rule 23(e)(2).

## II.   BACKGROUND AND PROCEDURAL HISTORY

Thomas Shields and Katinka Hosszú (and another swimmer who has since dismissed his claims) filed this case on December 7, 2018, bringing antitrust and tortious interference claims against World Aquatics,[3] challenging its rules that threatened swimmers with sanctions for participating in a rival upstart swimming league, the International Swimming League ("ISL"), and preventing ISL and other potential competitors from hosting competitions that would have paid top-tier swimmers millions in appearance fees and prize money.  Plaintiffs defeated Defendant's motion to dismiss in December 2019.  ECF No. 72.  Plaintiffs filed an Amended Class Action Complaint on January 17, 2020.  ECF No. 83.

Plaintiffs have litigated extensively to develop facts, economic theories, and models for class-wide damages.  In the discovery period alone, Plaintiffs negotiated discovery protocols, participated in over two dozen depositions, and reviewed thousands of documents, constituting over two hundred thousand pages.

On April 6, 2021, Plaintiffs filed a motion for class certification, requesting certification for an injunctive relief class under Rule 23(b)(2) and damages classes under Rule 23(b)(3).  ECF No. 191.  Plaintiffs' motion was supported by detailed reports from their economic expert, Dr. Daniel Rascher.  ECF No. 191-61.  On June 29, 2021, Defendant filed its opposition to class certification along with two supporting expert reports.  ECF No. 220.  Plaintiffs filed their reply in support of class certification on October 11, 2021 (ECF No. 247), and Defendant filed a sur-reply in support of its opposition on November 23, 2021 (ECF No. 263).  On December 30, 2021, Plaintiffs additionally filed a motion to appoint Winston as Class Counsel for the proposed classes.  ECF No. 284.  This Court held a hearing on Plaintiff's motion for class certification on February 3, 2022.  ECF No. 295.

On February 11, 2022, this Court granted Plaintiffs' motion to certify the Rule 23(b)(2) injunctive

---

[3]   Defendant was formerly known as Fédération Internationale de Natation, or FINA.  FINA provided notice on February 17, 2023, that it changed its legal name to World Aquatics.  ECF No. 372.  We accordingly refer to the Defendant as World Aquatics.

relief class, but denied Plaintiffs' motion with respect to the Rule 23(b)(3) damages classes. ECF No. 299. Following that decision, World Aquatics filed a motion to exclude Plaintiffs' expert Dr. Rascher. ECF No. 316. On June 27, 2022, World Aquatics filed a motion for summary judgment on all claims asserted by the Plaintiffs. ECF No. 321. The same day, Plaintiffs moved for partial summary judgment as to Defendant's liability under Section 1 of the Sherman Act and Plaintiffs' entitlement to injunctive relief. ECF No. 325. On January 6, 2023, this Court granted Defendant's motion for summary judgment and denied Plaintiffs' motion for summary judgment. ECF No. 363. On January 19, 2023, Plaintiffs issued their notice of appeal to the United States Court of Appeals for the Ninth Circuit regarding this Court's orders deciding summary judgment, the exclusion of merits expert reports, and denying damages class certification. ECF No. 366.

On September 17, 2024, the Ninth Circuit reversed this Court's orders granting World Aquatics' summary judgment motion and denying certification of the swimmer Plaintiffs' proposed damages classes. ECF No. 393. Although the Ninth Circuit affirmed this Court's decision to decline to extend the deadline for Plaintiffs to file a merits expert report, it held that Plaintiffs could pursue their Section 1 claim under per se, quick look, and direct evidence of anticompetitive effects standards at trial. *Id.* Pursuant to the Ninth Circuit's order, World Aquatics and Plaintiffs submitted a joint stipulated motion to certify two damages classes on April 23, 2025. ECF No. 410. This Court granted the joint stipulation and certified the Plaintiffs' proposed damages classes on April 25, 2025. ECF No. 413.

Also on April 23, 2025, Plaintiffs submitted a motion to approve the manner and form of a class notice plan for the certified litigation classes. ECF No. 411. After a brief hearing, the Court approved the class notice plan for the certified damages classes on April 30, 2025 (the "Litigation Class Notice Plan"), appointed Verita as notice administrator, and ordered Verita to begin implementing direct notice in accordance with the notice plan by May 28, 2025. ECF No. 416. Verita began notice administration on May 28, 2025, pursuant to this Court's order, and the exclusion period expired July 12, 2025. Cooley Decl. ¶ 9.

As the case history above attests, the Parties devoted significant resources to developing the discovery record, their legal arguments, and the Litigation Class Notice Plan, and they aggressively

litigated their claims and defenses until reaching the proposed settlement agreement.

## III.    THE SETTLEMENT

### A.    The Settlement Negotiations

Current counsel for Plaintiffs was retained in December 2021. To counsel's knowledge, based on a review of the case record, there were four settlement conference sessions involving Plaintiffs and Defendant that terminated sometime after the fourth mediation session in November 2021. Kessler Decl. ¶ 5. At that time, no classes had been certified, and the Parties were in the midst of discovery, including regarding damages. Although the mediation sessions occurred after more than two years of litigation in this matter, the Parties could not reach agreement. After Winston was retained, counsel moved to certify the injunctive relief class, was appointed Class Counsel for the injunctive relief class, and litigated the case through the remainder of expert discovery and summary judgment, appeal, and the certification of two damages classes.

Following the Ninth Circuit mandate, the Court ordered the parties to retain a private mediator and settlement discussions began again in June 2025. The Parties retained nationally prominent sports business mediator Jeffrey Mishkin, who has extensive experience in complex sports-related disputes, including those involving antitrust and international sports-related legal issues.[4]

The Parties participated in a focused, in-person mediation session on June 9, 2025. Kessler Decl. ¶ 7. The discussions of injunctive relief and damages claims were purposefully segregated. The Parties first focused on settlement negotiations regarding the injunctive relief claims. *Id.* ¶ 9. Only after agreeing to the principal terms of the injunctive relief settlement did the Parties turn to discussions of damages. *See id.* Plaintiffs then made separate demands for the claims that were the subject of the 2018 Damages Class and the claims that were the subject of the 2019 Damages Class. *See id.* The demands, subsequent negotiations, and ultimate agreed-upon settlement amounts took into account the different damages estimates, procedural postures, and risks and strengths of the different claims of the two Damage Classes, each of which was separately negotiated. *Id.* It was only after a tentative agreement was reached on first the injunctive settlement terms, and then each of the damages settlement terms, that

---

[4]    *Jeffrey A. Mishkin*, PHILLIPS ADR ENTERS., https://phillipsadr.com/our-team/jeffrey-a-mishkin (last visited July 21, 2025).

Plaintiffs then turned to negotiating counsel fees for the Injunctive Class settlement that would be paid directly by Defendant. *See id.* Mediator Mishkin facilitated and monitored each of these settlement talks in turn. The mediation discussions on June 9 were very productive and reached a tentative agreement on all settlement terms except for the amount of the requested Injunctive Settlement fee payment to be made by Defendant. Mr. Mishkin continued to participate in discussions between the Parties, and a settlement of all the terms was agreed to in principle on June 26, 2025. *Id.* The full agreement was then memorialized in the formal Settlement Agreement, signed on August 29, 2025.

### B. The Settlement Classes

Plaintiffs ask this Court to find that three Settlement Classes, which contain the same class members as the previously certified litigation classes, will likely be able to be certified for the purposes of settlement pursuant to Rule 23(e)(B): one Injunctive Relief Settlement Class pursuant to Rule 23(b)(2) and two Damages Settlement Classes pursuant to Rule 23(b)(3) (collectively referred to herein as the "Settlement Classes"). They are defined as follows:

The "Injunctive Relief Settlement Class" (represented by Plaintiffs Thomas A. Shields and Katinka Hosszú):

> All swimmers who signed contracts to participate in the International Swimming League from January 1, 2018, through the date of the Settlement Agreement (August 29. 2025).

The "2018 Damages Settlement Class" (represented by Plaintiffs Thomas A. Shields and Katinka Hosszú):

> All swimmers who signed contracts to participate in the International Swimming League's December 2018 event set to take place in Turin, Italy.

The "2019 Damages Settlement Class" (represented by Plaintiffs Thomas A. Shields and Katinka Hosszú):

> All swimmers who signed contracts to participate in the International Swimming League's 2019 season.

### C. Settlement Consideration and Release of Claims

In exchange for a release of claims, the Settlement provides for millions of dollars' worth of

monetary relief, as well as injunctive relief that will fundamentally alter the landscape of competitive swimming, ensuring that swimmers can compete for compensation at independent or private swimming events without fear of penalty or retaliation from World Aquatics or its member federations, whose certification is necessary for participation in, among other things, Olympics competition.

### 1. Monetary Relief.

Defendant will pay a total of USD $4,627,084.00 in settlement damages, consisting of USD $1,127,084.00 to a fund for the 2018 Damages Settlement Class and USD $3,500,000.00 to a fund for the 2019 Damages Settlement Class (together, the "Damages Classes Settlement Funds"). Settlement ¶¶ 1(h), (j). The 2018 Damages Settlement Fund is 200% of the damages Plaintiffs' expert estimated that 2018 damages class members suffered as a result of the alleged World Aquatics–led boycott of the 2018 ISL event. The 2019 Damages Settlement Fund is 127.9% of the damages Plaintiffs' expert estimated that 2019 damages class members suffered as a result of ISL hosting ten fewer events in 2019 than it would have but-for Defendant's unlawful conduct. *See* Section V.A.3 *infra*.

### 2. Injunctive Relief.

In addition to requiring the payment of $4.6 million in damages, the settlement provides for groundbreaking injunctive relief. First, under the Agreement, a "Swimmer's participation in any Sanctioned Event shall not be subject to any restriction." Settlement App. A ¶ 3. Additionally, World Aquatics has agreed that it "will not maintain or enforce any rule, policy, or practice that restricts the organization of" independent swimming events. *Id.* ¶ 4. Likewise, World Aquatics "will not maintain or enforce any rule, policy, or practice that restricts or penalizes any Swimmer's, [World Aquatics] National Federation's or [World Aquatics] Continental Organization's participation in any" independent events. *Id.* ¶ 5. Furthermore, participation in any independent swimming event will not give rise to any penalties imposed by World Aquatics on the Swimmer, World Aquatics National Federation, or World Aquatics Continental Organization.[5] *Id.*

Moreover, the Injunctive Relief Settlement ensures that results achieved by a Swimmer at any

---

[5] Notwithstanding participation in any Private Events, a Swimmer must still satisfy World Aquatics' qualification criteria and rules for participation in World Aquatics World Championship and Olympic Games events. Settlement App. A ¶ 5.

independent swimming events shall be recognized by World Aquatics and will be part of World Aquatics' official results, guaranteeing the same treatment for results achieved at such events so long as they comply with certain World Aquatics competition regulations that World Aquatics applies to its own events. *Id.* ¶ 6(b). Specifically, under the Settlement Agreement, Defendant has agreed that if a World Aquatics National Federation or a World Aquatics Continental Organization applies to World Aquatics seeking approval of a swimming competition organized, sponsored, or otherwise hosted by ISL or any other Independent Organization, World Aquatics shall approve and register the swimming competition in the World Aquatics Calendar, provided that, as a minimum, the conditions set forth in Parts 1 and 2 of the World Aquatics Competition Regulations and Section 26 of the World Aquatics Constitution governing eligibility criteria for participants are satisfied, there is an avoidance of conflicting dates with the Olympic Games, World Aquatics World Championships, and World Aquatics Swimming World Cups, and anti-doping rules apply. *Id.* ¶ 2. This injunctive relief will provide significant value to top-tier swimmers, giving the athletes autonomy over their careers, and providing them with additional opportunities and choices over when and where they choose to compete. As part of the Settlement, World Aquatics will inform its member federations of the terms of the Injunctive Relief Settlement and post the terms of the Injunctive Relief Settlement publicly on its website. Settlement ¶ 2.

### 3.     Settlement Release.

The Settlement Agreement has separate provisions for the release of damages claims and injunctive relief claims. In exchange for the consideration provided by the settlement, members of the Damages Classes release all claims that were or could have been raised in this action "prior to filing for preliminary approval of the Settlement Agreement on account of, arising out of, resulting from, or in any way relating to the facts, circumstances, and events alleged in the Action, including  using certain of [World Aquatics] Rules to organize a group boycott against ISL and preventing top-tier swimmers from participating in professional swimming competitions and earning appearances fees and prize money from those competitions." *Id.* ¶ 1(gg).

The Settlement Agreement also releases "all declaratory and injunctive relief" claims that were or could have been raised in this action "prior to Final Approval or during the Injunctive Relief

Settlement on account of, arising out of, resulting from, or in any way relating to the facts, circumstances, and events alleged in the Action, including the using certain of its Rules to organize a group boycott against ISL and preventing top-tier swimmers from participating in professional swimming competitions and earning appearances fees and prize money from those competitions." *Id.* ¶ 1(hh).

### D. Distribution Plan

The USD $4.6 million Damages Classes Settlement Funds have been divided between the two Damages Settlement Classes to reflect the different risks and potential rewards that each Damages Settlement Class's damages claims would have faced at trial. The 2018 Damages Settlement Amount of USD $1,127,084.00 will be distributed to the Settlement Class Members of the 2018 Damages Settlement Class and the 2019 Damages Settlement Amount of USD $3,500,000.00 will be distributed to the class members of the 2019 Damages Settlement Class, after the deduction of any award by this Court of attorneys' fees and costs to Class Counsel. *Id.* ¶ 1(j).

Based on the damages allocation methodology presented in Dr. Rascher's class certification reports, the 2018 Damages Settlement Amount will be allocated pro rata to the members of the 2018 Damages Settlement Class in accordance with Dr. Rascher's calculation of the amounts each individual swimmer would have earned in prize money and appearance fees for competing in the canceled ISL event scheduled to be held in December 2018 in Turin, Italy that Plaintiffs alleged would have taken place in the absence of World Aquatics' allegedly unlawful conduct. ECF No. 246-7 ¶¶ 139–141, App. C. Dr. Rascher calculated what each swimmer would have earned in appearance fees for competing in the canceled 2018 event by taking the appearance fees specified in ISL contracts signed by swimmers and subtracting amounts that ISL had already paid to swimmers. *Id.* ¶ 139. To estimate foregone prize money for the canceled 2018 event, Dr. Rascher used each swimmer's performance in the 2019 ISL season as a benchmark. *Id.* ¶ 140. To estimate lost prize money for swimmers who were contracted to participate in the canceled 2018 event but who did not compete in the 2019 ISL season, Dr. Rascher developed a regression analysis comparing appearance fees and prize money earned by swimmers in the 2019 ISL season. *Id.* ¶ 141.

The 2019 Damages Settlement amount will similarly be distributed based on the damages

allocation methodology presented in Dr. Rascher's class certification reports. The 2019 Damages Settlement Amount will be allocated pro rata to members of the 2019 Damages Settlement Class based on Dr. Rascher's calculation of what each individual swimmer would have earned in prize money and appearance fees for competing in the additional ISL events that Plaintiffs allege would have taken place in 2019 but for Defendant's allegedly unlawful conduct. ECF No. 246-7 ¶¶ 142–145. Dr. Rascher concluded that the 2019 Damages Settlement Class suffered an estimated $2,754,372 in total damages if 10 additional swimming events would have been held absent Defendant's anticompetitive conduct. *Id.* ¶ 145. To calculate this amount, Dr. Rascher estimated that ISL would have paid $275,437 per event in prize money and appearance based on the actual amounts paid by ISL to swimmers for competing in events held in 2019. *Id.* ¶ 144. Dr. Rascher then assumed—in part based on ISL's business planning documents for the 2019 season, and subject to a fact-finder's conclusion of the same—that ISL would have held ten additional events in 2019 but for Defendant's allegedly unlawful conduct. *Id.* ¶ 145.

Dr. Rascher estimated each individual swimmer's share of these total damages on a pro rata basis. *See id.* ¶¶ 143–144, App. D; Expert Report of Daniel A. Rascher, ECF No. 191-61 ¶¶ 57–59. Specifically, Dr. Rascher calculated each individual swimmer's share of the forgone appearance fees as the pro rata amount of the actual appearance fees by ISL in 2019. ECF No. 191-61 ¶ 58; ECF No. 246-7 ¶¶ 143–144, App. D. And similarly, Dr. Rascher calculated each swimmer's share of the forgone prize money as the pro rata amount of the actual prize money ISL paid to swimmers in 2019. ECF No. 191-61 ¶ 58; ECF No. 246-7 ¶¶ 143–144, App. D.

For both Damages Settlement Classes, the final distribution amounts will be net of any Court-approved fees, costs, and service awards for named Plaintiffs, which will also be shared across the Damages Settlement Classes pro rata.

### E.    Notice Plan

#### 1.    Notice to Settlement Classes Prior to Final Approval and Distribution of Settlement Funds.

Plaintiffs have attached to this motion a declaration from the Settlement Administrator, Verita,

that proposes a comprehensive notice program and includes proposed class notices.[6]  Cooley Decl. ¶¶ 13–30, Exs. 1–3.  This Court has already approved a substantially similar notice plan (the Litigation Class Notice Plan), which Verita successfully administered.  *See infra,* Section V.B.  The proposed notice program provides individual direct notice to all identified members of the Damages Settlement Classes via email or postcard notice, along with a robust social media outreach program and dedicated website where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement.  *See* Cooley Decl. ¶¶ 13–30.

For direct notice, Verita will send individual notice by email or postcard to members of the proposed Damages Settlement Classes whose contact information can be obtained.  *Id.* ¶ 19.  Verita will also utilize the additional methods employed in the Litigation Class Notice Plan to help ensure that as many Settlement Class Members as possible receive notice via email, postcard, and publication notice. For example, prior to distributing email notice, Verita will engage in an email cleansing and validation process to help ensure the quality of recipient email addresses.  *See id.* ¶ 20.  Additionally, Verita will employ direct outreach via social media messaging, which proved to be a successful method of outreach during litigation class notice.  *Id.* ¶ 23.  Verita will also expend resources to provide digital notice, including on a popular website dedicated to competitive swimming, "SwimSwam."  *See id.*  Furthermore, Winston & Strawn LLP will issue a press release announcing the proposed settlement and notifying individuals whose rights may be affected by it.  *See* Kessler Decl., Ex. 2.

The content of the direct notice emails will be the Email Notice attached to the Cooley Declaration.  *See* Cooley Decl., Ex. 1.  The proposed Postcard Notice is attached to the Cooley Declaration as Exhibit 2.  These notice documents will, *inter alia*, inform Settlement Class Members about the total settlement fund and additional details about allocation and settlement administration.  *See id.*

Furthermore, pursuant to the Settlement, World Aquatics will take all reasonable steps and make best efforts to ensure that all member federations, including all national governing bodies for swimming

---

[6] The proposed notice documents currently contain bolded placeholders ("60 days after notice date") for the various deadlines and final approval hearing date. *E.g.*, Cooley Decl., Ex. 1 at 3. If the Court grants this Motion, Plaintiffs' will adhere to the Court's ordered dates.

that are members of Defendant, provide notice to all Injunctive Relief Settlement Class Members and Damages Settlement Class Members of the Injunctive Relief Settlement and the Damages Settlement. Settlement ¶ 14. Defendant will also publicly post the terms of the Injunctive Relief Settlement on its website. *Id.* ¶ 14.

Verita will establish a case-specific website with the domain reserved as SwimmerSettlement.com. Cooley Decl. ¶¶ 26–27. On the Settlement Website, Settlement Class Members will be able to view general information about this class action, read relevant Court documents, and review important dates and deadlines pertinent to the Settlement. For example, the detailed long-form notice will be available for download on the website ("Class Notice"). *See id.* ¶ 26, Ex. 1. The Settlement Website will be designed to be user-friendly and make it easy for Settlement Class Members to find information about the settlement, and it will also feature a dedicated address that Settlement Class Members with additional questions can contact for further updates and information. *See id.* ¶¶ 26–27.

Approximately 14 days after Notice is sent, swimmers will be provided with their estimated settlement awards in a notice on the Settlement Website, to the extent necessary information has been provided by the claimant. *See id.* ¶ 31. Settlement Class Members will have the ability to electronically submit their preferred method of payment and the necessary information to effect payment. *Id.*

## IV.    LEGAL STANDARD

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class action claims. Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement; rather, preliminary approval assesses whether the proposed settlement falls within the "range of possible approval." *Vasquez v. USM Inc.*, 2015 WL 12857082, at *2 (N.D. Cal. Apr. 13, 2015); *accord Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 2016 WL 7743407, at *2 (N.D. Cal. Dec. 7, 2016). Preliminary approval establishes an "initial presumption of fairness, such that notice may be given to the class and the class may have a full and fair opportunity to consider the proposed [settlement] and develop a response." *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 399221, at *1 (N.D. Cal. Jan. 19, 2017) (internal quotations omitted). A settlement may preliminarily be approved upon a "showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and

(ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).  Factors that courts consider under Rule 23(e)(2) include whether:

> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account:
>
> > (i)   the costs, risks, and delay of trial and appeal;
> >
> > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)   the terms of any proposed award of attorneys' fees, including timing of payment;
> >
> > (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other.

All of the preliminary approval requirements are met here.

## V.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A.   The Settlement Is Fair, Reasonable, and Adequate

#### 1.   The Classes have been zealously represented.

Under Rule 23(a)(4), courts find class counsel "adequate to represent the Settlement Class" where they "have demonstrated that they are experienced in representing plaintiffs and classes in complex class action litigation, [and] have vigorously prosecuted the case."  *In re MacBook Keyboard Litig.*, 2022 WL 17409738, at *3 (N.D. Cal. Dec. 2, 2022).

Class Counsel are well suited to represent the Settlement Classes, given that they focus their practice on antitrust and other complex litigation and have decades of experience litigating sports disputes across the country, including class actions.  Kessler Decl. ¶ 14; ECF No. 299 at 21.  The Northern District of California is "very familiar" with Class Counsel's work "in complex antitrust actions" and "finds that their work and experience in representing [] athletes has been excellent."  *In re Coll. Athlete NIL Litig.*, 2025 WL 1675820, at *14 (N.D. Cal. June 6, 2025).  And in its February 11, 2022 order, this Court noted that "Winston counsel are experienced in sports-related antitrust class

actions and competent to vigorously prosecute this case." ECF No. 299 at 21.

Furthermore, Class Counsel have vigorously prosecuted this case. Plaintiffs hired Class Counsel in December 2021, when prior counsel for Plaintiffs withdrew. In the nearly four years since Class Counsel have taken over the representation, they have undertaken significant efforts for the class that required extraordinary efforts and expense. At the time Class Counsel was retained, it had to quickly analyze the large existing discovery record and previously filed class certification motions, and then immediately prepare supplemented briefing in support of class certification for its representation of Plaintiffs at the hearing held on class certification on February 3, 2022. At that hearing, Class Counsel successfully achieved certification of the Rule 23(b)(2) injunctive relief class in a subsequent order. ECF Nos. 295, 299. Class Counsel then worked with Plaintiffs' economic expert, Dr. Daniel Rascher, on the 210 pages of analysis contained in his April 6, 2021 declaration in support of Plaintiffs' motion for damages class certification (ECF 191-61) and October 11, 2021 reply report (ECF 246-7), as well as his June 28, 2021 damages report for trial and April 7, 2022 reply report.

Later that year, Class Counsel defended Dr. Rascher's reports against Defendant's motion to exclude them (ECF No. 316), and filed Plaintiffs' own motion for partial summary judgment (ECF No. 325), in addition to opposing Defendant's summary judgement motion (ECF No. 321). Class Counsel again prepared to appear in the district court to argue these motions. After this Court awarded summary judgment to the Defendant on January 6, 2023, and denied certification of a damages class, Class Counsel devoted substantial efforts in support of a successful appeal to the Ninth Circuit. *See* ECF No. 366, Notice of Appeal. Class Counsel's appeal resulted in a reversal of summary judgment awarded to Defendant (ECF No. 363), as well as a reversal of the Court's decision denying certification of the damages classes. (ECF Nos. 299). ECF No. 393. In the course of the appeal, Class Counsel secured a Ninth Circuit ruling that the Classes could pursue their Section 1 claim under *per se* and quick look standards of review at trial or, alternatively, by providing direct evidence of anticompetitive effects. *Id.* Following this success in the Ninth Circuit, Class Counsel secured certification of two damages classes and worked with Verita to develop a comprehensive class notice plan. Class Counsel's extraordinary efforts have proven that it will more than adequately represent the Settlement Classes. *See Sandoval*

*Ortega v. Aho Enters., Inc.*, 2021 WL 5584761, at \*8–9 (N.D. Cal. Nov. 30, 2021) (finding this factor satisfied when "Class Counsel are experienced and competent" and "have carried out all required tasks" to pursue the action). Class Counsel's zealous representation of the Classes further supports preliminary approval. *See* Fed. R. Civ. P. 23(e)(2)(A).

### 2. The Settlement Agreement resulted from arm's-length negotiations.

As advised by Rule 23(e)(2)(B), the Settlement Agreement is the product of sustained negotiations between experienced counsel with a track record of success in antitrust and class-action matters. Negotiations occurred at arm's length, including an in-person mediation session spanning over nine hours, before one of the nation's leading sports dispute mediators, Jeffrey Mishkin. Following the mediation session, the parties engaged in further negotiations before ultimately reaching an agreement in principle on all material settlement terms. *See* Section III.A, *supra*; *see also In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at \*3 (S.D. Cal. Mar. 17, 2021) ("Following a full day of negotiation, the parties tentatively agreed to a settlement with the mediator's assistance. As such, the Court finds that this settlement was the product of arm's-length negotiation.").

Having worked on this case for almost four years and through an appeal, Class Counsel understands both the risks and potential recovery from further litigation. Likewise, Counsel for World Aquatics is highly experienced in antitrust litigation and, as the case record reflects, has represented Defendant in this matter for over six years. Counsel's determination that the settlement is fair and reasonable should thus be afforded "great weight" in the settlement approval analysis. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 229 F. Supp. 3d 1052, 1067 (N.D. Cal. 2017) (observing that "competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation"). Particularly when the settlement is the product of hard bargaining by experienced counsel with the active involvement of a skilled mediator, parties are afforded a "presumption that the settlement is fair and reasonable." *Garner v. State Farm Mut. Auto Ins. Co.*, 2010 WL 1687832, at \*13 (N.D. Cal. Apr. 22, 2010); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (remarking "[c]ourts in this district have recognized that the assistance of an experienced mediator in the settlement process confirms that the settlement is non-

collusive") (internal quotations omitted).  All aspects of the settlement suggest that it was the resolution of an informed, non-collusive negotiation process satisfying Rule 23(e)(2)(B).

### 3.    The Settlement provides adequate relief for the Classes.

Preliminary approval requires consideration of whether the "relief provided for the class is adequate."  Fed. R. Civ. P. 23(e)(2)(C).  The extraordinary relief provided here easily meets that test.  Moreover, Settlement Class Members will receive notice and an opportunity to object to the settlement, and this Court will be able to consider objections before final approval.

Defendant has committed to paying into non-reversionary settlement funds USD $4.627 million to the two Damages Settlement Classes, comprising 263 current and former professional swimmers for the settlement of these claims.  Section III.C.1, *supra.*  That includes USD $1.127 million for settlement of the 2018 damages claims and USD $3.5 million for settlement of the 2019 damages claims.  Plaintiffs described the transformative injunctive relief achieved in Section III.C.2, *supra*, which should also be considered alongside the monetary settlement amounts when determining the adequacy of the settlement.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig*., 2013 WL 12327929, at *29 & n.7 (C.D. Cal. July 24, 2013) (in valuing a settlement, "Plaintiffs' experts appropriately have included the non-monetary benefits").

The percentage of actual damages paid in the Settlement are not just adequate; they are extraordinary.  The estimated damages for the 2018 Damages Settlement Class during the settlement class period is $563,542.  *See* Rascher Reply Report, ECF No. 246-7 ¶ 139.  The $1,127,084.00 settlement recovery is thus a remarkable 200% of total estimated damages for the claims relating to the cancelled December 2018 ISL event.  In Section III.D, *supra*, Plaintiffs explained that the $1.127 million in payments for 2018 Damages Settlement Class will be allocated proportionately to their estimated individual damages.

Additionally, the estimated damages for the claims asserted by the 2019 Damages Settlement Class during the settlement class period is $2,754,372.  *See* ECF No. 246-7 ¶ 145.  Therefore, the $3.5 million settlement recovery represents 127% of total estimated damages for the claims relating to events that did not occur during the ISL season due to World Aquatics blocking ISL from entering the market

in 2018. Collectively, the $4,627,084 total sum Damages Settlement Amount is 139.5% of Dr. Rascher's estimated damages for the Damages Settlement Classes if the jury were to find that ISL would have held 10 additional events in 2019 absent World Aquatics' alleged conduct. *Id.* ¶¶ 139, 145, App. C, App. D. This result is far more than adequate under Rule 23(e)(2)(C), particularly given the risks that the 2019 damages class claim faced at trial. *See* Section V.A.3(a), *infra*. Defendant has zealously defended against Dr. Rascher's damages opinion and even after the Ninth Circuit's opinion, has continued to argue that Dr. Rascher's damages opinions should be excluded. ECF No. 407. If Dr. Rascher were permitted to present his methodology at trial, Defendant would nevertheless advocate that the number of events in the but-for world would have been lower, which would have resulted in lower damages figures for the 2019 Damages Class.

A recovery of over 100% for each class of damages claims is extraordinary. *See NIL Litig.*, 2025 WL 1675820, at *18 (finding settlement representing "67.4% of the estimated damages" to be an "outstanding result[], particularly given that lesser recoveries in other antitrust actions have been hailed as excellent"); *see also NCAA Grant-in-Aid Cap Litig.*, No. 4:14-md-02541-cw (N.D. Cal.), ECF No. 746 at 7, Final Approval Order (finding "settlement fund [of] approximately 66% of total single damages [was] a tremendous result in comparison to most antitrust settlements"). A court in this district, while approving settlements equaling 20% of single damages, cited a survey of seventy-one settled cartel cases that showed that the weighted mean—weighting settlements according to their sales—was 19% of possible single damages recovery. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *7 n.19 (N.D. Cal. July 7, 2016). As referenced in *NIL Litigation*, another court in this district described a recovery of "11.7 percent of the single damages" as an "excellent" result for an antitrust class action. *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *20 (N.D. Cal. Dec. 10, 2020). The settlement achieved here far exceeds these benchmarks.

In addition to monetary damages, the settlement includes injunctive relief measures that will provide permanent protections for swimmers to have competitive choice over where they compete, with their times recognized even if the event is not sanctioned by World Aquatics. *See* Settlement App. A ¶ 6(b). Additionally, Defendant will be enjoined from restricting either swimmers or National

Federations from participating in independent swimming events, which will make a competitive market possible to provide new opportunities for swimmers and benefit the sport as a whole. *See id.* ¶ 5. This broad injunctive relief further demonstrates the adequacy of the settlement. *See Toyota Motor Corp.*, 2013 WL 12327929, at *29 & n.7.

In addition to the relief itself, "the Court accounts for: (i) the costs, risks, and delay of a jury trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)" in its adequacy analysis. *NIL Litig.*, 2025 WL 1675820, at *18. There are no such agreements under Rule 23(e)(3) to be disclosed here. Kessler Decl. ¶ 10.

### a. The costs, risks, and delay of a jury trial and appeal.

Plaintiffs achieved this exceptional percentage of damages, and broad injunctive relief, in the settlement despite the remaining litigation risks, including likely renewed *Daubert* challenges to Plaintiffs' damages expert and a jury trial, where Plaintiffs would bear the burden of proof. Defendant has experienced counsel who would vigorously defend against both liability and damages at trial. There is no guarantee that Plaintiffs would prevail in a trial, or that they would recover all of the damages estimated by Dr. Rascher. Based on Defendant's previous *Daubert* motion, a renewed *Daubert* motion would likely repeat Defendant's contentions that Dr. Rascher's estimated damages are insufficiently supported and unreliable. Defendant could also be expected to vigorously contest liability and to renew its argument that Plaintiffs' injunctive relief claims are moot. The settlement avoids all of these risks.

Further, even if plaintiffs obtained a complete trial victory, they would face an appeal where Defendant would likely reassert these arguments and raise broader challenges. At a minimum, continuing litigation would cause significant delay in obtaining any relief for any of the class members. As courts have recognized: "Antitrust cases are particularly risky, challenging, and widely acknowledge[d] to be among the most complex actions to prosecute." *Batteries*, 2020 WL 7264559, at *15. "The 'best' case can be lost and the worst case can be won, and juries may find liability but no damages. None of these risks should be underestimated." *In re Super. Beverage/Glass Container*

*Consol. Pretrial*, 133 F.R.D. 119, 127 (N.D. Ill. 1990). "Complex antitrust litigation is rife with uncertainties, risks, and delays." *See Meijer, Inc. v. Warner Chilcott Holdings Co. Ill., Ltd.*, 565 F. Supp. 2d 49, 55 (D.D.C. 2008); *In re Vitamin C Antitrust Litig.*, 2012 WL 5289514, at *4 (E.D.N.Y. Oct. 23, 2012) ("[F]ederal antitrust cases are complicated, lengthy, and bitterly fought, as well as costly.") (internal quotation marks omitted).

Given the challenges inherent in litigating antitrust class actions, obtaining a payment of damages without waiting for years of litigation weighs in favor of approving this Settlement. *See, e.g.*, *Stephens v. US Airways Grp., Inc.*, 102 F. Supp. 3d 222, 227 (D.D.C. 2015) ("[T]he delay in providing relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties.") (quotation omitted); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 195 (D.D.C. 2011) (same). Equally important, the injunctive relief provided to the swimmers can be enacted immediately upon approval, starkly contrasting the possible years-long delay any appeal after a trial would engender. As previously discussed, the broad injunctive relief provided will give swimmers the opportunity to earn income from independent swimming events and create a competitive market for the swimming services of class members without delay. These factors all weigh substantially in favor of finding the settlement to be far more than adequate for the Classes.

### b. The effectiveness of the Distribution Plan.

Rule 23(e)(2)(A)(ii) provides that the Court should consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims[,]" to make a finding the proposal is fair, reasonable, and adequate. "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *Anthem*, 327 F.R.D. at 332 (citations omitted). For this reason, "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* (citations omitted); *see also In re Stable Road Acquisition Corp.*, 2024 WL 3643393, at *10 (C.D. Cal. Apr. 23, 2024) (when "determining whether a plan of allocation is fair, courts look largely to the opinion of counsel") (quoting *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *13 (S.D.N.Y. Dec. 23, 2009)).

The Distribution Plan recommended by Class Counsel, fully detailed in Section III.D, *supra*,

passes muster under these standards. The allocation formula for damages has been developed by Plaintiffs' economic damages expert, Dr. Rascher. Verita, an experienced class action administrator, will handle the distribution of funds. Additionally, under the Settlement Agreement, in "no event shall any portion of the Damages Classes Settlement Fund revert to Defendant." Settlement ¶ 10. Such a distribution plan "favor[s] preliminary approval." *See Miguel-Sanchez v. Mesa Packing, LLC*, 2021 WL 1736807, at *12 (N.D. Cal. May 3, 2021) (approval of plan where "settlement administrator shall distribute funds among class members who do not opt out on a pro rata basis" and "[a]ny remaining funds shall be divided equally between" class members); *see also Anthem*, 327 F.R.D. at 332–33 (finding the fact that the "remaining amount will not revert or be repaid to Defendants" to be a "feature[]" rounding out an effective distribution plan).

### c. The proposed attorneys' fees are reasonable.

The court also considers "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(A)(iii). As explained in the Settlement Agreement, with regard to the damages portion of the settlement, Settlement Class Counsel "may submit an application or applications for distributions from the Damages Classes Settlement Fund for: (a) an award of attorneys' fees; plus (b) reimbursement of expenses incurred in connection with prosecuting the Action; plus (c) any interest on such attorneys' fees and expenses (until paid), as appropriate, and as may be awarded by the Court." Settlement ¶ 28. In a class action, it is common that attorneys' fees and costs are awarded from the damages settlement funds. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949, 955 (9th Cir. 2015) (also explaining that when a percentage-of-the fund method is used to award fees, the Ninth Circuit has established a benchmark percentage of 25% to be used as the starting point for analysis). Plaintiffs' counsel will seek 25% of the Damages Class Settlement Fund, which is the presumptive benchmark in this Circuit. Additionally, Defendant is not precluded from challenging the amount requested. Settlement ¶ 28. Any fee award requested for the damages classes will be subject to the Court's approval. Class Counsel's fee and expense requests are unquestionably reasonable given the excellent results achieved—and the scope of this litigation, which has progressed through class certification, summary judgment, a successful appeal, and every other stage before trial.

With regard to the injunctive settlement, the Settlement Agreement provides that World Aquatics shall pay $3,000,000 "directly to Class Counsel in connection with the settlement of the injunctive relief claims of the Injunctive Relief Settlement Class." Settlement ¶ 1(t); *see also id.* ¶ 27. This payment shall not reduce the damages recovery in any way, as it is being separately paid by Defendant. In the Ninth Circuit, attorneys' fees may be based on injunctive relief obtained, particularly where, as here, that relief can be reasonably ascertained and valued. *See Toyota Motor Corp.*, 2013 WL 12327929, at *29; *see also Staton v. Boeing Co.*, 327 F.3d 938*,* 973–74 (9th Cir. 2003); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *cf. Online DVD*, 779 F.3d at 954–55; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1049 (9th Cir. 2002). This $3,000,000 payment represents a sum much less than the amount spent on legal services and expenses by Winston to establish liability and injunctive relief in this case, representing less than half of the actual fees and expenses incurred by Winston to date.

Indeed, the total lodestar for Winston to date, before any multipliers, is over $6,700,000.00 as of August 31, 2025, with hours totaling over 5,500. Kessler Decl. ¶ 13. Over $230,000.00 in expert and non-expert expenses have been billed by Winston & Strawn LLP to the litigation fund established for this case. *Id.* This information will be updated in Class Counsel's motion for reimbursement of fees and costs, which will be filed in accordance with the rules of this Court.

### 4. The Settlement treats Class Members equitably.

In addition to evaluating the adequacy of the Settlement overall, the Court should consider whether the "proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). To reiterate, a plan of allocation is "governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable and adequate." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2015 WL 9266493, at *7 (N.D. Cal. Dec. 17, 2015) (citations omitted). Courts routinely uphold allocation plans that divide settlement funds on a pro rata basis. *See id.* at * 8 (collecting cases); *see also In re Resistors Antitrust Litig.*, 2020 WL 2791922, at *2 (N.D. Cal. Mar. 24, 2020) (finding plan to allocate "on a pro rata basis based on the dollar value of approved purchases . . . [to be] fair, reasonable, and adequate").

As outlined in Section III.D, *supra*, the allocation plan here provides payments to members of the Damages Settlement Classes proportionate to Dr. Rascher's estimated damages for their individual claims. Those who have higher estimated damages will have the opportunity to recover more than Settlement Class Members with lower estimated damages. This is an equitable methodology of allocation because it ties payments to each Settlement Class Member's estimated damages pro rata and graduates payments based on Plaintiffs' theory of injury and damages.

5. **The Settlement also satisfies the factors set forth in the Northern District of California's Procedural Guidance.**

This district's Procedural Guidance for Class Action Settlements ("Procedural Guidance") instructs parties to address certain factors at preliminary approval.[7] Many of these factors have been discussed already in this Motion and are not repeated here. The remaining factors are addressed below.

a. **The difference between the certified injunctive class and the Injunctive Relief Settlement Class properly reflects the contours of the Settlement.**

The Procedural Guidance explains that in the preliminary approval motion, the movant should discuss "[a]ny differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate." Procedural Guidance § 1(a). Plaintiffs note a minor difference between the certified injunctive relief class and the proposed Injunctive Relief Settlement Class. Courts in this district have explained that "[c]lass definitions are often revised, for example, to reflect the contours of the settlement." *Brown v. Hain Celestial Grp., Inc.*, 2014 WL 6483216, at *6 (N.D. Cal. Nov. 18, 2014). Here, the Injunctive Relief Settlement Class, like in *Brown*, has been modified to "reflect the contours of the settlement," but is nearly identical to the injunctive relief class previously certified, and makes sense in the context of the claims alleged in the operative complaint.

The class previously certified includes "[a]ll swimmers who signed contracts to participate in the International Swimming League from January 1, 2018 through the date *of trial*." ECF No. 299 at 5

---

[7] *See Procedural Guidance for Class Action Settlements*, UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF CALIFORNIA, https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements (last visited Sept. 5, 2025).

(emphasis added). The proposed Injunctive Relief Settlement Class provides for "[a]ll swimmers who signed contracts to participate in the International Swimming League from January 1, 2018 through the date of the Settlement Agreement (August 29, 2025)." *See* Settlement ¶ 1(u). This change was made to reflect the development that if the Settlement Agreement is approved, there will not be a trial in this case. Keeping "trial" as the end date for those who qualify as members of the Injunctive Relief Settlement Class would thereby make the eligibility duration indefinite. This change is immaterial, reflecting the "unremarkable feature of class actions that class definitions are refined to reflect the developing realities of a given suit." *Brown*, 2014 WL 6483216, at *6. Revising the class definition through the date of the Settlement Agreement provides a clearer description of the class for notice purposes.

### b. The settlement releases are appropriate for this settlement.

The Procedural Guidance also asks for identification of "[a]ny differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate." Procedural Guidance § 1(b).

The damages release extends beyond the specific claims in the operative complaint, but only to encompass potential claims against Defendant "that were raised or could have been raised in the Action prior to filing for preliminary approval of the Settlement Agreement on account of, arising out of, resulting from, or in any way relating to the facts, circumstances, and events alleged in the Action, including using certain of its Rules to organize a group boycott against ISL and preventing top-tier swimmers from participating in professional swimming competitions and earning appearances fees and prize money from those competitions, including but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*" Settlement ¶ 1(gg). The injunctive release extends similarly, releasing potential claims "that were raised or could have been raised in the Action prior to Final Approval or during the Injunctive Relief Settlement on account of, arising out of, resulting from, or in any way relating to the facts, circumstances, and events alleged in the Action, including the using certain of its Rules to organize a group boycott against ISL and

preventing top-tier swimmers from participating in professional swimming competitions and earning appearances fees and prize money from those competitions, including, but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 *et seq.*" Settlement ¶ 1(hh). Here, the claims in the complaint are based on an extensive and broad set of facts that, Plaintiffs allege, show that Defendant's rules regarding unauthorized relations with independent event organizers, including potential penalties for participating in swimming competitions not sanctioned by World Aquatics, violate the antitrust laws. Thus, in substance, the release complies with the Ninth Circuit's test of "claims depend[ing] on the same set of facts." *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). And if a plaintiff believes the release extended unlawfully to their claims, they can argue that to the court where the claims are being made.

### c. No other cases will be affected by the Settlement.

Procedural Guidance Section 1(d) requests information regarding any "other cases that will be affected by the settlement." The Court previously administratively consolidated this litigation with *International Swimming League, Ltd. v. Fédération Internationale de Natation*, No. 3:18-cv-07394-JSC (N.D. Cal.), and plaintiffs in both cases have jointly participated in discovery and certain court filings. However, under the Settlement Agreement, no claims will be released in case No. 3:18-cv-07394-JSC if the Settlement is approved. Class Counsel for Plaintiffs did not coordinate with counsel for Plaintiff ISL during the settlement negotiations, nor was Plaintiff ISL present for negotiations between Plaintiffs and Defendant except to provide feedback on Defendant's injunctive relief offer when it was provided to both Plaintiffs and Plaintiff ISL with the proposal that such relief would settle both cases' injunctive relief claims. Neither Plaintiff ISL nor its counsel was present for any further settlement discussions between Plaintiffs and Defendant. Therefore, Case No. 3:18-cv-07394-JSC is unaffected by the Settlement here.

### d. Verita was selected as Settlement Administrator through a fair process.

Class Counsel has retained Verita to serve as the Settlement Administrator. Verita was previously

retained to administer more than 10,000 class actions and has distributed settlement payments totaling well over a trillion dollars in assets. *See* Cooley Decl. ¶ 4. Verita offers competitive pricing, with the advantage of having served as the administrator for the sports litigation settlements achieved in *In re NCAA Grant-in-Aid Cap Antitrust Litigation*, No. 4:14-md-02541-CW (N.D. Cal.); *O'Bannon v. National Collegiate Athletic Ass'n*, No. 4:09-cv-03329-CW (N.D. Cal.); and *NIL Litig.*, No. 4:20-cv-03919-CW (N.D. Cal.). Verita has the capability to securely handle class member data, as well as mitigate potential external and internal fraud. Cooley Decl. ¶ 34. Verita also previously handled the litigation notice in this case and is well positioned with institutional knowledge of the process of providing notice to these Settlement Class Members. Kessler Decl. ¶ 11.

After a competitive bidding process, Class Counsel reasonably concluded that Verita would provide the best value for the Settlement Classes. In the last two years, Verita has worked with Class Counsel on four other cases. Verita estimates the costs of notice and settlement administration through the initial distribution to eligible Damages Settlement Class Members to be $48,500.00—a small fraction of the overall Settlement Fund. Cooley Decl. ¶ 32. This is an estimate, given that the administration has not yet commenced, but Verita's prior experience with the litigation notice plan in this case adds efficiencies and will ultimately temper the final notice and administration costs.

### 6. Counsel will request reasonable class representative service awards.

Pursuant to Procedural Guidance Section 7, Class Counsel represents it intends to seek reasonable service awards for each of the two Class Representatives.

The Ninth Circuit has recognized that named plaintiffs are eligible for reasonable service awards. *Staton*, 327 F.3d at 977. Indeed, "incentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *Online DVD*, 779 F.3d at 943 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). Such awards are intended to compensate class representatives in recognition of their efforts on behalf of the class, the financial or reputational risks undertaken in bringing the action, and the degree to which the class has benefited from their actions. *Staton*, 327 F.3d at 977. There is no bright-line minimum or maximum for service awards, but courts have awarded payments akin to those sought here. For example, in *Zamora*

*v. Lyft, Inc.*, the court authorized a service award of $10,000 to each of the two class representatives, deeming the awards "fair and reasonable," from a $1.95 million settlement fund. 2018 WL 4657308, at *3 (N.D. Cal. Sept. 26, 2018).[8] Here, Class Counsel similarly proposes two service awards of $10,000 each, to be paid out of a larger settlement fund than the fund in *Zamora*. *See* 2018 WL 4657308, at *3.

Importantly, the two Class Representatives have been actively involved in this case from inception. This has included meeting with counsel, preparing the complaint, reviewing drafts of documents, responding to discovery requests, gathering and producing documents, preparing for and attending lengthy depositions, assisting with class notice, and otherwise devoting many hours to consulting with Class Counsel regarding fact development and litigation strategy. The Class Representatives also conferred with counsel regarding trial, and assisted counsel in providing notice to members of the Damages Classes.

Additionally, the Class Representatives also assumed additional risk because this is an antitrust case. By definition, antitrust cases are brought against defendants who have power in the markets in which plaintiffs were injured. The Class Representatives incurred substantial risks and costs in taking on leadership roles in this high-profile litigation against World Aquatics, the international governing body for their sport. Class Representatives Katinka Hosszú and Tom Shields were both still swimming at the time of filing the operative complaint and throughout this litigation—with Ms. Hosszú competing as recently as Spring 2024—facing the possibility that they would face retaliation for bringing the lawsuit, and be ostracized for their involvement in this case. Hosszú and Shields both put their personal reputation and ability to pursue future opportunities as a professional athlete at risk in order to pursue the injunctive relief and damages sought in this litigation for all class members.

Finally, the requested service awards are appropriate in light of the substantial recovery achieved. The Class Representatives' efforts and sacrifices have paid off in an exceptional settlement that provides Settlement Class Members with a settlement fund above their estimated damages, alongside substantial injunctive relief.

---

[8]    *See also Edwards v. Costco Wholesale Corp.*, 2023 WL 6966055, at *2 (C.D. Cal. Oct. 20, 2023) (finding "that a Service Award of $10,000 is fair and reasonable" in an $8 million settlement).

### B. The Proposed Notice Program Satisfies Rule 23

#### 1. The Settlement Notice Plan is consistent with what was previously ordered for class notice and is reasonable.

Rule 23(e)(1)(B) requires that a court approving a class action settlement "direct notice in a reasonable manner to all class members who would be bound by the proposal." For a Rule 23(b)(3) class, the Rule requires the court to "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). For the notice to be "reasonable," "the settlement notice must fairly inform the members of the class of the terms of the proposed settlement and of the options that are available to them in connection with the proceedings." *McClellan v. SFN Grp., Inc.*, 2012 WL 2367905, at *5 (N.D. Cal. June 21, 2012). In addition, "the notice must [] be capable of being understood by the average class member." *Id.* Notice by publication and mail has been found to be "clearly adequate." *Id.* (citation omitted). Due process considerations in this Court are generally satisfied when the notice is reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.*

Class Counsel, together with the Administrator, has devised a settlement notice program ("Settlement Notice Plan") and prepared mail and electronic notices that fully satisfy these requirements. The Settlement Notice Plan proposed here is the best practicable under the circumstances and, given the success of the previous class notice program, should reach a substantial segment of the Settlement Class Members. Indeed, notice to the class has already been approved once, following the certification of the damages classes. ECF No. 416. The same notice program should be approved here, where Plaintiffs' Settlement Notice Plan is built on the same foundation and includes all the same features. Cooley Decl. ¶¶ 8, 15–28. As set forth in the accompanying declaration of Zach Cooley, the Administrator will use the previously obtained contact information to direct both email and postcard notice to large segments of members of the Settlement Classes. Verita will employ email verification tools to facilitate delivery, and further notice will be provided directly through social media outreach and through digital notice published by the Parties. *See id.* ¶¶ 18–23.

Notice will be provided in plain terms and easy-to-understand language. To encourage

engagement, Verita's initial email and mailed notices will be in short-form versions of the long-form notice, which will be accessible on the Settlement Website that Verita will create and maintain. *See* Cooley Decl. ¶¶ 26–27; Exs. 1–3. All forms of notice will contain the information required by Rule 23(c)(2)(B). *See id.* Exs. 1 (Long-Form Class Notice), 2 (Email Notice), 3 (Postcard Notice). All forms of notice will identify the total settlement fund, important deadlines, and direct Settlement Class Members to a website to learn about their approximate share of certain settlement funds (fourteen days after notice begins) and related data. *Id.*

As part of the distribution plan, class members will receive a proportional distribution from the corresponding Settlement Funds. Upon Final Approval of the Settlement, and upon completion of the claims process, swimmers who are eligible and have provided the necessary information will receive payment. *See* Cooley Decl., ¶ 31.

These notice provisions satisfy Rule 23 and will provide the Settlement Class with a fair opportunity to review and respond to the proposed Settlement.

### 2. The Court should exercise its discretion to approve the settlement without a second opt-out period in light of the comprehensive class notice already provided.

It is up to the Court to determine whether an additional opt-out period is needed for a class action settlement after a litigation damages class has already been certified. *See In re HIV Antitrust Litig.*, 2023 WL 11897610, at *2 (N.D. Cal. Sept. 25, 2023) ("The decision whether to approve a settlement that does not allow a new opportunity to elect exclusion is confided to the court's discretion." (quoting Fed. R. Civ. P. 23, 2003 advisory committee notes)). There is "no authority of any kind suggesting that due process requires that members of a Rule 23(b)(3) class be given a second chance to opt out." *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018) (citation omitted). Here, approval of the settlement without a second opportunity for the Class to opt out is appropriate given that the recent class notice fairly apprised the Settlement Class Members of what would happen if they chose not to opt out.

On May 28, 2025, Verita began an extensive notice campaign to potential class members to inform them of the pendency of this action as a class action as well as their right to request to opt out of the damages classes and the procedures for doing so. *See* ECF Nos. 411, 416; *see also* Cooley Decl.

¶¶ 9–12.  Verita sent 116 Postcard Notices via mail, 89 email notices, and 122 direct messages via Instagram or LinkedIn to potential class members through the direct notice portion of the approved class notice plan.  Cooley Decl. ¶ 10.  Through the direct notice program, and through the help of Class Representative Hosszú, the Administrator was able to reach all of the 265 members of the Damages Settlement Classes.  *Id.*  Therefore, all members of the Damages Settlement Classes received notice.  A comprehensive media plan featuring a press release published by Winston[9] and a news article published by popular competitive swimming website *SwimSwam*[10] further supplemented the Class Notice Plan. *Id.* ¶ 11.

The Ninth Circuit has rejected the argument that due process requires that members of a Rule 23(b)(3) class be given a second opportunity to opt out of a class when such class members already received extensive notice and ample opportunity to do so—as they did here.  *See Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 634–35 (9th Cir. 1982) (holding that requirements of due process and Rule 23 were satisfied because all class members received notices stating they would be "included in the plaintiff class,"  unless they requested to be excluded, and a class member who did not opt-out was not given a second opportunity to do so because there is "no authority of any kind suggesting that due process requires that members of . . . a class be given a second change to opt out"); *see also Low*, 881 F.3d at 1121 (same).  Furthermore, class action settlements that allow a second opt-out opportunity are "unusual," and a blanket rule requiring so "would impede the settlement process so favored in the law." *Low*, 881 F.3d at 1121 (quoting *Officers for Just.*, 688 F.2d at 635).

Here, the Class Notice made clear the consequences of not opting out, even if it did not explicitly state that a second opportunity to opt out would not be provided.  The long form notice read: "What happens if I do nothing? . . . If you do nothing . . . you will give up your right to start another lawsuit, continue another lawsuit, or be part of any other lawsuit against the Defendant about the legal issues

---

[9]   Press Release, *Winston & Strawn LLP, Professional Swimmers May Be Eligible for Money Damages From a Class Action Lawsuit Going to Trial in January 2026*, WINSTON & STRAWN LLP (June 9, 2025), https://www.winston.com/en/insights-news/professional-swimmers-may-be-eligible-for-money-damages-from-a-class-action-lawsuit-going-to-trial-in-january-2026.

[10]   James Sutherland, *ISL, Shields & Other Pros set to go to trial with World Aquatics in January 2026*, SWIMSWAM (July 2, 2025), https://swimswam.com/isl-shields-other-pros-set-to-go-to-trial-with-world-aquatics-in-january-2026.

raised or that could have been raised in this case. All of the Court's orders in the case will apply to you and legally bind you. You will also be bound by any judgment in the lawsuit." ECF No. 411-2, at 14. The Email and Postcard Notices contained nearly identical explanatory language. ECF No. 411-2, at 18, 21. Accordingly, a reasonable class member understood that they were required to opt out, or forfeit certain rights. Thus, it is both appropriate and reasonable for there to be no additional opt-out opportunity here. *See HIV Litig.*, 2023 WL 11897610, at *2 (finding "a second opt out is not necessary in this case" because class members "understood the importance of the decision of whether or not to opt out at the time they were notified of class certification"); *see also Low*, 881 F.3d at 1117–20 (holding that "[t]he most reasonable reading of the notice suggests that class members had a single opt-out opportunity that expired if not exercised by the deadline" and recognizing language similar to the notices here). The deadline for class members to exclude themselves from this lawsuit expired on July 12, 2025.[11] During the opt-out period, Verita received two emails from class members requesting to be excluded from this lawsuit. Cooley Decl. ¶ 2.

The Court should exercise its discretion to approve the Settlement without a second opportunity to opt-out.

### C. Certification of the Settlement Classes Is Warranted

At the preliminary approval stage, the Court must determine whether it is likely to certify the settlement class for purposes of judgment on the proposal. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). The proposed settlement class must satisfy the Rule 23(a) requirements that "(1) the class is so numerous that joinder of all parties is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Additionally, the proposed classes must meet the Rule 23(b) requirements. Here, Plaintiffs seek certification of the proposed Settlement Classes pursuant to Rule 23(b)(2) and 23(b)(3).

The Court already certified nearly identical classes during the course of this litigation. *See* ECF

---

[11] Class Counsel acknowledges that some class members received direct notice via social media in the two weeks following May 28, 2025. Even accounting for this social media campaign, any more generous deadline has passed, and no additional opt-outs were gathered after the opt-out deadline.

No. 299 (certifying injunctive relief class under Fed. R. Civ. P. 23(b)(2)), ECF No. 413 (certifying 2018 damages class and 2019 damages class under Fed. R. Civ. P. 23(b)(3)). As discussed below, the proposed Settlement Classes also satisfy the requirements of Rule 23.

### 1. The Proposed Settlement Classes satisfy the requirements of Rule 23(a).

#### a. Numerosity.

The proposed class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The numerosity requirement is clearly met because the proposed Settlement Classes consists of more than 200 swimmers, a number this Court has already deemed satisfactory. *See* ECF No. 299 at 7.

#### b. Commonality.

"[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each [claim] in one stroke.'" *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 682 n. 32 (9th Cir. 2022). The commonality requirement is satisfied because several questions of law and fact are common to members of the Settlement Classes and can be resolved via common proof. The same common questions of law and fact cited by the Court in certifying the litigation classes are applicable to the Settlement Classes, including "whether [World Aquatics's] communications and other conduct with member federations constitute a horizontal restraint of trade in violation of the Sherman Act; whether [World Aquatics] improperly monopolized or attempted to monopolize the markets for purchase of swimmer services and sale of swimming competitions; whether there has been injury to competition; and whether an injunction and/or damages are appropriate remedies." ECF No. 299 at 7. These common questions of law and fact satisfy the "limited burden" of commonality. *Id.* at 8 (citing *Mazza*, 666 F.3d at 589).

#### c. Typicality.

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members

have been injured by the same course of conduct." *Evon v. Law Offs. of Sidney Mickell*, 688 F.3d 1015, 1030 (9th Cir. 2012) (cleaned up). Here, the Class Representatives' claims are typical under Rule 23(a)(3) "because the proposed class shares the same or similar injury from the same course of conduct: allegedly anticompetitive practices by [World Aquatics] that deprived the class of opportunities to earn prize money and appearance fees." ECF No. 299 at 8.

### d.  Adequacy of Representation.

Under Rule 23(a)(4), Plaintiffs must demonstrate that "the representative parties will fairly and adequately protect the interests of the class." Fed R. Civ. P. 23(a)(4). This requirement is met because the Court previously found the nearly identical proposed classes adequate. ECF No. 299 at 21 (representation of the injunctive relief class was adequate); ECF No. 413. Moreover, the Ninth Circuit found that these classes can be certified and reversed this Court's determination that representation of the damages classes was inadequate because there were conflicts between class members (including Class Representatives). ECF No. 393 at 9. The adequacy requirement is also met because the named Plaintiffs and their counsel have prosecuted, and will continue to prosecute, the action vigorously on behalf of the Settlement Classes. *See* ECF No. 299 at 21 (recognizing "Winston counsel are experienced in sports-related antitrust class actions and competent to vigorously prosecute this case"). In addition, Class Counsel made certain to negotiate the terms of the injunctive relief settlement before having any negotiations of the damages settlement and before any final negotiations about attorneys' fees. Kessler Decl. ¶ 9. This best practice eliminated any risk of a conflict in the negotiations of the settlements for the different classes. *See NIL Litig.*, 2025 WL 1675820, at *17 (finding similarly structured settlement agreement was conducted at arm's length).

### 2.  The Proposed Injunctive Relief Settlement Class satisfies the requirements of Rule 23(b)(2).

Plaintiffs move to certify the proposed Injunctive Relief Settlement Class under Rule 23(b)(2). Fed. R. Civ. P. 23(b)(2). This Court previously certified a nearly identical litigation class under Rule 23(b)(2), observing that "Plaintiffs seek uniform injunctive relief from anticompetitive conduct by [World Aquatics], including an injunction preventing [World Aquatics] from sanctioning swimmers or

member federations for participating in non-[World Aquatics] competitions.  Plaintiffs have established that a single injunction or declaratory judgment would provide relief to each member of the class . . . Accordingly, an injunctive relief class is certifiable under Rule 23(b)(2)."  ECF No. 299 at 25–26 (internal quotations omitted).  The same logic supports certification here.

### 3. The Proposed Damages Settlement Classes Satisfy Rule 23(b)(3).

Plaintiffs also move to certify the two proposed Damages Settlement Classes under Rule 23(b)(3), which allows for certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  These classes are the same damages classes certified previously in this litigation. For the same reasons set forth in Plaintiffs' prior motions and for the same reasons the Court found previously, Rule 23(b)(3) is satisfied because questions common to Settlement Class Members predominate over individual questions, and the class action device provides the best method for the fair and efficient resolution of Settlement Class Members' claims, as the Court previously recognized.  *See* ECF Nos. 191, 247, 405, 413.

### D. The Court Should Appoint Winston as Settlement Class Counsel

An order that certifies a class action "must appoint class counsel under Rule 23(g)."  Fed. R. Civ. Proc. 23(c)(1)(B).  All Rule 23(g) factors weigh in favor of appointing Winston as Settlement Class Counsel.  This Court previously appointed this firm as Class Counsel for the certified injunctive relief class, noting its expertise and ability to zealously advocate on behalf of class members.  *See* ECF No. 299 at 21 (finding "Winston counsel are experienced in sports-related antitrust class actions and competent to vigorously prosecute this case").  The same considerations that guided that order apply here.  If appointed, counsel will continue to vigorously pursue this action and devote all necessary resources toward obtaining the best possible result for the Settlement Class.

### E. Proposed Schedule for Notice and Final Approval

| Event | Deadline |
|---|---|
| Entry of Order Granting Preliminary Approval and Directing Notice | Subject to Court's Discretion |
| Notice Campaign Begins ("Notice Date") | September 15, 2025 or two weeks after Preliminary Approval Order (whichever is later) |
| Allocation Estimate Available | 14 Days after Notice Date |
| Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards | 7 Days after Notice Date |
| Objection Deadline | 60 Days after Notice Date |
| Motion for Final Approval and Response to Objections | 67 Days after Notice Date |
| Final Approval Hearing | 97 Days after Notice Date (at the convenience of the Court) |

## VI. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that their Motion for Preliminary Settlement Approval be granted.

Dated: September 5, 2025

Respectfully submitted,

WINSTON & STRAWN LLP

By   */s/ Jeffrey L. Kessler*
    Jeffrey L. Kessler *(pro hac vice)*
    Johanna Rae Hudgens *(pro hac vice)*
    WINSTON & STRAWN LLP
    200 Park Avenue
    New York, NY 10166-4193
    Telephone: (212) 294-6700
    Facsimile: (212) 294-4700
    jkessler@winston.com
    jhudgens@winston.com

    Jeanifer E. Parsigian (SBN 289001)
    WINSTON & STRAWN LLP
    101 California Street, 34th Floor
    San Francisco, CA 94111
    Telephone: (415) 591-1000
    Facsimile: (415) 591-1400
    jparsigian@winston.com

    *Class Counsel and Counsel for Plaintiffs Thomas A. Shields and Katinka Hosszú*