UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. SHIELDS, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>FEDERATION INTERNATIONALE DE NATATION,<br><br>　　　　Defendant. | Case No. 3:18-cv-07393-JSC<br><br>**ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 423 |

Thomas A. Shields and Katinka Hosszú are professional swimmers who bring federal antitrust claims and a state law tort claim against World Aquatics (formerly known as the Fédération Internationale de Natation ("FINA")), related to World Aquatics' control over international swimming competitions. After the Ninth Circuit Court of Appeals reversed this Court's grant of summary judgment in Defendant's favor, the parties stipulated to certification of a Rule 23(b)(3) damages class and thereafter reached a classwide settlement. (Dkt. Nos. 413, 420.[1]) Plaintiffs' unopposed motion for preliminary approval of this class action settlement is now pending before the Court. (Dkt. No. 423.) Having considered the briefing and relevant legal authority, including the supplemental submission, and having had the benefit of oral argument on October 16, 2025, the Court GRANTS the motion for preliminary approval.

**BACKGROUND**

The Court assumes the parties' familiarity with the lengthy procedural history of this

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

action and incorporates Plaintiffs' discussion of it by reference. (Dkt. No. 423 at 13.)

**THE SETTLEMENT AGREEMENT**

### A.     The Settlement Class

The Agreement identifies three different Settlement Classes.

1. The Injunctive Relief Settlement Class:

    All swimmers who signed contracts to participate in the International Swimming League from January 1, 2018 through the date of the Settlement Agreement (August 29, 2025).

2. The 2018 Damages Settlement Class:

    All swimmers who signed contracts to participate in the International Swimming League's December 2018 event set to take place in Turin, Italy.

3. The 2019 Damages Settlement Class:

    All swimmers who signed contracts to participate in the International Swimming League's 2019 season.

(Dkt. No. 423-2, Settlement Agreement, ¶¶ 1(k), (u).)

### B.     Payment Terms

Under the Settlement Agreement, Defendant will pay a total of $4,627,084.00 in settlement damages, consisting of $1,127,084.00 for the 2018 Damages Settlement Class and $3,500,000.00 for the 2019 Damages Settlement Class (together, the "Damages Classes Settlement Funds"). (Dkt. No. 423-2 at ¶ 1(j).)  The damages for each of the subclasses shall be distributed in pro rata shares based on the damage allocation methodology in Dr. Rascher's class certification reports. The reports take into account what each individual swimmer would have earned in prize money and appearance fees absent Defendant's anticompetitive conduct. (Dkt. No. 423 at 19-20; Dkt. No. 246-7 at ¶¶ 139-145.)

The pro rata shares will be calculated after deducting court-approved attorneys' fees, costs, the proposed service awards for the named Plaintiffs, and taxes. (Dkt. No. 423-2 at ¶¶ 7, 28.)

### C.     Injunctive Relief

In addition to the monetary relief, the Settlement Agreement provides for the following injunctive relief:

2

1) no restrictions on a "Swimmer's participation in any Sanctioned Event";

2) World Aquatics "will not maintain or enforce any rule, policy, or practice that restricts the organization of " independent swimming events;

3) World Aquatics "will not maintain or enforce any rule, policy, or practice that restricts or penalizes any Swimmer's, [World Aquatics] National Federation's or [World Aquatics] Continental Organization's participation in any" independent events; and

4) participation in any independent swimming event will not give rise to any penalties imposed by World Aquatics on the Swimmer, World Aquatics National Federation, or World Aquatics Continental Organization.

(Dkt. No. 423-2, Appx. A at ¶¶ 3-5.) Further, any swimmer's results at independent swimming events shall be recognized by World Aquatics and will be part of World Aquatics' official results, guaranteeing the same treatment for results achieved at such events so long as they comply with certain World Aquatics competition regulations that World Aquatics applies to its own events. (*Id.* at ¶ 6(b).)

### D. Scope of Release

Under the Settlement Agreement, the Damages Classes release all claims that were or could have been raised in this action

> prior to filing for preliminary approval of the Settlement Agreement on account of, arising out of, resulting from, or in any way relating to the facts, circumstances, and events alleged in the Action, including using certain of [World Aquatics] Rules to organize a group boycott against ISL and preventing top-tier swimmers from participating in professional swimming competitions and earning appearances fees and prize money from those competitions.

(Dkt. No. 423-3 at ¶ 1(gg).) Class members also release

> all declaratory and injunctive relief claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, liabilities of any nature whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, that the Releasors, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, that were raised or could have been raised in the Action prior to Final Approval or during the Injunctive Relief Settlement on account of, arising out of, resulting from, or in any way

3

> relating to the facts, circumstances, and events alleged in the Action, including the using certain of its Rules to organize a group boycott against ISL and preventing top-tier swimmers from participating in professional swimming competitions and earning appearances fees and prize money from those competitions, including, but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 et seq.

### E. Notice

Plaintiffs selected Verita as the Settlement Administrator. The Court previously approved Verita to provide notice following the parties' stipulation to certification of the Rule 23(b)(3) damages class. (Dkt. Nos. 413, 416.) The proposed notice plan provides individual direct notice to all identified members of the Damages Settlement Classes via email or postcard notice, along with a social media outreach program and dedicated website where Settlement Class Members can learn more about their rights and options pursuant to the terms of the Settlement. (Dkt. No. 423-4 at ¶¶ 14-28.)

### F. Opt-Outs and Objections

Class members were provided the opportunity to opt-out of the class in May 2025 when Verita provided notice to the Rule 23(b)(3) damages class. (Dkt. No. 416; Dkt. No. 423-2 at ¶ 36; Dkt. No. 423-4 at ¶¶ 9-12.) Two damages class members opted out as part of this notice. (Dkt. No. 423-4 at ¶ 12.) Settlement class members have 60 days from the date of notice to object to the settlement. (Dkt. No. 423-2 at ¶ 35.)

## DISCUSSION

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

## I. CLASS CERTIFICATION

A court may preliminarily certify a settlement class if all of the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met. See Fed. R. Civ. P. 23. Here, the Court already certified an injunctive relief class under Rule 23(b)(2) and damages class under Rule 23(b)(3). (Dkt. Nos. 299, 413.) Thus, "the only information ordinarily necessary is whether the proposed settlement calls for any change in the class certified, or of the claims, defenses, or issues regarding which certification was granted." Fed. R. Civ. P. 23 Advisory Committee's Note to 2018 Amendment.

The Settlement Agreement slightly modifies the injunctive relief class definition to reflect the current procedural posture. The certified class included "[a]ll swimmers who signed contracts to participate in the International Swimming League from January 1, 2018 through *trial*" and the Injunctive Relief Settlement Class includes "[a]ll swimmers who signed contracts to participate in the International Swimming League from January 1, 2018 through the date of the Settlement Agreement (August 29, 2025)." (*Compare* Dkt. No. 299 at 5 (emphasis added) *with* Dkt. No. 423-2 at ¶ 1(u).) This modification is immaterial. Accordingly, the Court grants preliminary approval of the Settlement Classes.

## II. PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). So, before a district court approves a class action settlement, it must conclude the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

In determining whether a class action settlement agreement meets this standard, the court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the

> stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The Ninth Circuit has identified three such signs:

> 1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> 2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> 3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted).

### A. Whether the Settlement is Fair, Adequate, and Reasonable

#### 1. Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the

settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id*.

The settlement here was reached on a fully developed record after six years of litigation. According to the Declaration of Class Counsel Jeffrey Kessler, the parties engaged in extensive discovery including reviewing over two hundred thousand pages of documents, participating in over two dozen depositions, and retaining experts to create damages models. (Dkt. No. 423-1 at ¶ 3.) Plaintiffs also obtained class certification of an injunctive relief class and successfully appealed the denial of certification of a damages class and grant of summary judgment. (*Id.*) The settlement was reached after multiple settlement conferences and mediations with the nationally prominent sports disputes mediator Jeffrey Mishkin. (*Id.* at ¶¶ 5-6.) The settlement thus appears the product of serious, informed, non-collusive negotiations. This factor weighs in favor of approval.

### 2. Lack of Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class member. The Ninth Circuit has instructed district courts to be "particularly vigilant" for signs counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947.

The Settlement Agreement directs the Damages Class Settlement Fund be divided between the two damages subclasses. (Dkt. No. 423-2 at ¶¶ 1(k), (m).) Within the subclasses the funds will be distributed in pro rata shares based on the amounts each individual swimmer would have earned in prize money and appearance fees for competing in the events cancelled in 2018 and 2019 because of Defendant's allegedly anticompetitive behavior as calculated by Plaintiffs' damages expert Dr. Rascher. (Dkt. No. 423 at 19-20.) During settlement negotiations,

> to avoid any actual or perceived conflicts of interest in negotiating settlement terms for each of the three proposed classes, the settlement for each class was negotiated separately and the parties agreed to settlement terms for one class before moving to the next, beginning with the injunctive relief class, followed by the 2018 damages class, and then the 2019 damages class.

7

(Dkt. No. 423-1, Kessler Decl. at ¶ 9.)

Plaintiffs intend to seek service awards on behalf of Named Plaintiffs Thomas Shields and Katinka Hosszú of $10,000 each in recognition of their active participation in the litigation and the risks associated with taking a leadership role in this high-profile litigation against World Aquatics while still swimming competitively. (Dkt. No. 423 at 36.)

Given the above, the Settlement Agreement does not appear to provide preferential treatment to any particular class members or the Named Plaintiffs. The Court will defer ruling on the appropriateness of the amount of the requested service awards, if any, until final approval.

### 3. Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, the total settlement amount is $4,627,084.00. As discussed above, this amount is allocated between the 2018 Damages Settlement Subclass ($1,127,084) and the 2019 Damages Settlement Subclass ($3,500,000). The estimated damages for the 2018 subclass is $563,542 and $2,754,372 for the 2019 subclass. (Dkt. No. 246-7 at ¶¶ 139, 145.) Thus, according to Plaintiffs, the settlement is 200% of the actual damages for the 2018 subclass and 127% of total estimated damages for the 2019 subclass, and the total damages amount is 139.5% of the total estimated damages. (Dkt. No. 423 at 26-27.)

The Settlement Agreement also provides for extensive injunctive relief as discussed above which the Court can consider as part of the settlement valuation. (Dkt. No. 423-2, Appx. A*.) See In re Netflix Priv. Litig.*, No. 5:11-cv-00379-EJD, 2013 WL 1120801, at *7 (N.D. Cal. Mar. 18, 2013) (settlement value "includes the size of the cash distribution, the cy pres method of distribution, and the injunctive relief").

In evaluating the reasonableness of the recovery here, the Court also considers the risks of continued litigation. If the litigation continued, Plaintiffs faced likely renewed *Daubert* challenges to Plaintiffs' damages experts as well as a jury trial, potential post-trial briefing, and appeal.

8

"Antitrust cases are particularly risky, challenging, and widely acknowledge[d] to be among the most complex actions to prosecute." *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-02420 YGR (DMR), 2020 WL 7264559, at *15 (N.D. Cal. Dec. 10, 2020), aff'd, No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022). Under these circumstances, the Court agrees the risks and costs of continued litigation balanced against the relief here warrant preliminary approval and comment from class members.

### 4. Obvious Deficiencies

Finally, the Court considers whether there exist any obvious deficiencies in the settlement agreement. *Harris*, 2011 WL 1627973, at *8. This factor weighs in Plaintiffs' favor as no obvious deficiencies exist on the face of the settlement agreement.

* * *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and GRANTS preliminary approval.

## III. CLASS NOTICE PLAN

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up).

As discussed above, Plaintiffs propose three types of notice: (1) email notice to all class members for whom an email address is available; (2) if email notice is unsuccessful after three

1   attempts, Verita will mail a postcard notice; and (3) if email and mail are unsuccessful, Verita will
2   attempt to contact class members through their social media accounts. (Dkt. No. 423-4, Cooley
3   Decl. at ¶¶ 19-23.)  Verita believes this notice plan will be effective as it is identical to the May
4   2025 notice campaign whereby Verita was able to reach all 265 members of the Damages
5   Settlement Class.  (*Id*. at ¶ 10.)  The email and postcard notices will direct class members to visit
6   the case website: swimmersettlement.com where a long form notice is available.  (Dkt. Nos. 423-
7   5, 423-6, 423-7.)  The website will also ask class members to input their contact information and
8   photo identification card so Verita can perform an identity verification process.  (*Id*. at ¶ 22.)
9   Approximately 14 days after class members submit this information, they will be provided an
10  estimate of the settlement award. (*Id.*)

11  The email and postcard notices generally complies with Rule 23(c). They clearly and
12  concisely provide an overview of the lawsuit and provide clear instructions for how to obtain more
13  information and obtain an estimate of class members' potential recovery on the case website.
14  (Dkt. Nos. 423-6, 423-7.)  The long-from notice available on the website includes detailed
15  information about the lawsuit and the settlement, describes the two damages subclasses, and
16  details the injunctive available under the Settlement Agreement. (Dkt. No. 423-5.)  The long-form
17  notice also adequately describes the options available to class members, including instructions for
18  how to verify their individual damages payment and how to file an objection. It also indicates how
19  class members can review class counsel's motion for attorneys' fees and costs prior to the final
20  approval hearing. *See In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d 988, 995 (9th Cir.
21  2010) (holding class members must "have an opportunity to oppose class counsel's fee motion").
22  The original proposed notice, however, was not explicit as to the allocation of costs between the
23  amount Defendant has separately agreed to pay for the Injunctive Relief Settlement Amount and
24  the amount counsel will be seeking from the Damages Settlement Amount.  Following the
25  hearing, Plaintiffs submitted revised notices which address the Court's concerns.  (Dkt. No. 426.)
26  The notice also informs class members they may appear at the final fairness hearing in person or
27  through an attorney.
28  The fact the notice plan does not call for a second opt-out period does not weigh against

1    approval. Notice was provided to all the Damages Class Members less than six months ago and
2    class members were give the opportunity to opt-out of the case—and two class members did opt-
3    out. (Dkt. No. 423-4 at ¶¶ 10-12.) Under these circumstances, a second notice period is not
4    required. *See* Fed. R. Civ. P. 23, 2003 advisory committee note) ("The decision whether to
5    approve a settlement that does not allow a new opportunity to elect exclusion is confided to the
6    court's discretion" among the many factors the court considers "are changes in the information
7    available to class members since expiration of the first opportunity to request exclusion, and the
8    nature of the individual class members' claims."); *see also Low v. Trump Univ., LLC*, 881 F.3d
9    1111, 1121 (9th Cir. 2018) (holding due process does not require a second opportunity to opt-out
10   at the settlement stage).

## IV.    ATTORNEYS' FEES AND COSTS

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including

the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho v. Bridgeport Fin., Inc*., 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

The Settlement Agreement provides "[i]n satisfaction of all attorneys' fees, costs, and expenses incurred in prosecuting the claims of the Injunctive Relief Settlement Class, Defendant shall pay Class Counsel the stipulated Injunctive Relief Fee and Expense Award" of $3,000,000. (Dkt. No. 423-2 at ¶¶ 1(t), 27.) Under the Settlement Agreement, Plaintiffs may also seek an additional "Damages Fee and Expense Award" to recover attorneys' fees and costs in connection with the settlement of the damages claims. (*Id*. at ¶ 1(i).) Defendant reserves the right to object to any such fee application. (*Id*. at ¶ 28.) While the Settlement Agreement does not specify the amount of fees Plaintiffs will seek, the motion for preliminary approval and notice indicate Plaintiffs intend to seek 25 percent of the Damages Class Settlement Fund. (Dkt. No. 423 at 30; Dkt. No. 423-5 at 9.)

Plaintiffs shall submit a motion for attorneys' fees, including declarations and detailed billing summaries, so the Court may determine an appropriate lodestar figure, and to allow Settlement Class Members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d at 995 (holding that class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice). Plaintiffs shall also

1  include information about the injunctive relief attorneys' fees separately agreed upon by the
2  parties and provide an analysis of that amount and the amount sought here in relation to their
3  lodestar. And counsel shall submit detailed information supporting their request for costs and
4  explain, what, if any, costs have already been recovered under the Injunctive Relief Settlement.

## CONCLUSION

For the reasons stated above, the Court GRANTS preliminary approval of the class action settlement as follows:

1. This action is provisionally certified as a class action, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23. The Court preliminarily certifies the following three classes:

- An **Injunctive Relief Settlement Class** composed of: All swimmers who signed contracts to participate in the International Swimming League from January 1, 2018 through the date of the Settlement Agreement (August 29, 2025).
- A **2018 Damages Settlement Class** composed of: All swimmers who signed contracts to participate in the International Swimming League's December 2018 event set to take place in Turin, Italy.
- A **2019 Damages Settlement Class** composed of: All swimmers who signed contracts to participate in the International Swimming League's 2019 season.

2. Thomas A. Shields and Katinka Hosszú are conditionally appointed as the Class Representatives for all the Settlement Classes.

3. The Court conditionally appoints Winston & Strawn LLP as Class Counsel for the Settlement Classes.

4. The Court appoints Verita Global, LLC ("Verita") as the Settlement Administrator.

5. Within 14 days of the date of this Order, the Settlement Administrator shall provide notice to the class in accordance with the notice plan.

6. Plaintiffs shall file copies of the notices within 10 days of dissemination of notice.

7. Class Counsel shall file their motion for attorneys' fees, costs, and service awards for the Class Representatives, and all supporting documentation and papers, by 7 days after the notice

date.

8. Plaintiffs shall file their Motion for Final Approval by February 5, 2026. The motion shall include the information suggested by the Northern District of California Procedural Guidance for Class Action Settlements.

9. The parties shall appear before this Court for a final approval hearing on February 26, 2026 at 10:00 a.m. in Courtroom 8, 450 Golden Gate Ave., San Francisco, California.

.**IT IS SO ORDERED.**

Dated: October 17, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge