Jeffrey L. Kessler (*pro hac vice*)
Johanna Rae Hudgens (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
jkessler@winston.com
jhudgens@winston.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street, 21st Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
jparsigian@winston.com

*Class Counsel and Counsel for Plaintiffs Thomas A. Shields and Katinka Hosszú*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| THOMAS A. SHIELDS AND KATINKA HOSSZÚ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FÉDÉRATION INTERNATIONALE DE NATATION,<br><br>Defendant. | Case No. 3:18-cv-07393-JSC (N.D. Cal.)<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND SERVICE AWARDS FOR CLASS REPRESENTATIVES** |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. LEGAL STANDARD ..... 3

III. ARGUMENT ..... 4

A. The Total Estimated Value of the Settlement is Over $50 million ..... 4

1. The Value of the Injunctive Relief Settlement ..... 4

2. The Value of the Damages Settlement ..... 8

B. Plaintiffs' Requests for Attorneys' Fees Are Reasonable ..... 9

1. The Stipulated $3,000,000 Injunctive Relief Fee Award is Reasonable ..... 11

2. Plaintiffs' Request for 25% of the Damages Fund is Reasonable ..... 11

C. Plaintiffs' Request for Reimbursement of Litigation Costs is Reasonable ..... 18

D. Plaintiffs' Request of $20,000 in Service Awards for the Class Representatives is Reasonable ..... 20

IV. CONCLUSION ..... 20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Apple Computer, Inc. Derivative Litig.*,
2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ....................4, 11

*Baten v. Michigan Logistics, Inc.*,
2023 WL 2440244 (C.D. Cal. Mar. 8, 2023) ....................3

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....................4

*In re Capacitors Antitrust Litig.*,
2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ....................3

*In re Coll. Athlete NIL Litig.*,
803 F. Supp. 3d 959 (N.D. Cal. 2025) ....................8

*Fischel v. Equitable Life Assur. Soc'y*,
307 F.3d 997 (9th Cir. 2002) ....................3

*In re Lithium Ion Batteries Antitrust Litig.*,
2020 WL 7264559 (N.D. Cal. Dec. 10, 2020) ....................8, 9, 10, 18

*Lowery v. Rhapsody Int'l, Inc.*,
75 F.4th 985 (9th Cir. 2023) ....................3

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) ....................3, 9

*Reed v. Balfour Beatty Rail, Inc.*,
2023 WL 4680922 (C.D. Cal. June 22, 2023) ....................3

*Relente v. Viator, Inc.*,
2015 WL 3613713 (N.D. Cal. June 9, 2015) ....................9, 10

*In Re Ring LLC Priv. Litig.*,
2024 WL 2845978 (C.D. Cal. May 28, 2024) ....................3, 11, 18

*Schmitt v. Kaiser Found. Health Plan of Washington*,
2024 WL 1676754 (W.D. Wash. Apr. 18, 2024) ....................3

*Schneider v. Chipotle Mexican Grill, Inc.*,
336 F.R.D. 588 (N.D. Cal. 2020) ....................3

*Shields v. World Aquatics*,
Case: 23-15092, ECF Nos. 19–21-7, 2024 WL 4211477 (9th Cir. Sept. 17, 2024) ............... 14

**Statutes**

15 U.S.C. § 4304(a)(1) ............... 10

Clayton Antitrust Act, 15 U.S.C. § 26 ............... 3

Sherman Act ............... 13

**Other Authorities**

Fed. R. Civ. P. 23(a)(4) ............... 15

Fed. R. Civ. P. 23(b)(2) ............... 13

Fed. R. Civ. P. 23(b)(3) ............... 13, 15

Rory Carroll, *Exclusive: ISL Targets 2026 Relaunch After COVID, War Disruptions*, Reuters (Dec. 22, 2025) ............... 8

World Aquatics Competition Regulation Part 1, Article 2.3.1 ............... 5

## GLOSSARY OF DEFINED TERMS

| TERM | DEFINITION |
|---|---|
| ECF No. | Unless otherwise indicated, docket references are to the docket in No. 3:18-cv-07393-JSC (N.D. Cal.) |
| Kessler Decl. | Supplemental Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Motion for Final Settlement Approval, concurrently filed herewith |
| Plaintiffs | Unless otherwise indicated, all references to Plaintiffs are to the *Shields* Plaintiffs Classes previously certified by the Court |
| Settlement Class Members | Collectively, all members of the 2018 Damages Settlement Class, 2019 Damages Settlement Class, and Injunctive Relief Settlement Class |
| Motion | Plaintiffs' Notice of Motion and Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Service Awards for Class Representatives |
| Settlement Agreement or Settlement | Stipulation and Settlement Agreement, Ex. 1 to Declaration of Jeffrey L. Kessler in Support of Plaintiffs' Motion for Preliminary Settlement Approval (ECF No. 423-2) |
| Class Counsel | Winston & Strawn LLP |

# I. INTRODUCTION

In response to the Court's Order instructing the submission of supplemental briefing to address various concerns it raised at the Final Approval Hearing regarding Plaintiffs' requests for attorneys' fees and costs, (*see* ECF No. 437), Plaintiffs hereby submit this supplemental memorandum. As described herein, Class Counsel's request for fees should be found to be more than reasonable when accounting for the significant monetary recovery and sweeping injunctive relief secured by this Settlement and the fact that Class Counsel will still only receive a negative multiplier for its efforts, with a substantial majority of the fees being paid directly by the Defendant, without a reduction from the settlement fund. Even when accounting for Plaintiffs' total request for attorneys' fees, damages class members are still receiving a substantial monetary recovery—representing 150% of claimed damages for the 2018 Damages Class and 95.3% of claimed damages for the 2019 Damages Class. These percentages are far above typical recoveries in antitrust class actions and evidence of the reasonableness of the fee and costs requests. Additionally, the requested estimated combined monetary value of the settlements further supports the value of Class Counsel's work and the reasonableness of its requested fees and costs.

***First***, the monetary recovery in this Class is bolstered by significant injunctive relief that goes far beyond what was directly challenged in the litigation and which could have been obtained at trial. The permanent injunctive relief both prohibits Defendant from sanctioning swimmers and member federations for organizing or participating in independent events, and requires Defendant to officially recognize results achieved at independent swimming competitions and to register those events in the World Aquatics calendar—subject to reasonable exceptions. While it is difficult to provide an exact value of the injunctive relief to the class, Plaintiffs estimate that the Injunctive Relief Settlement will provide $46,521,860 of value to swimmers over the next ten years. This estimate is based an assessment of: (1) the increased compensation that swimmers received from additional competitive events held in reaction to attempted or actual entry into the market; and (1) the additional compensation swimmers would receive as a result of competitive entry either from World Aquatics or a new entrant. This estimate is based on Dr. Rascher's analysis of the increased payments made to swimmers in 2019 due to ISL's entry that year and what would have been paid to swimmers but for Defendant's conduct. *See* ECF No.

191-61, Decl. of Daniel A. Rascher in Supp. of Pls.' Mot. for Class Certification ("Rascher Reply Rep.") ¶ 35; ECF No. 246-7, Reply Rep. of Daniel A. Rascher ("Rascher Reply Rep."), App. A. Plaintiffs believe it is reasonable to assume that swimmers will receive at least similar increased compensation over the next ten years when the injunction is in effect in comparison to what they would receive in a market without the protections of the Injunctive Relief. Taken together, Plaintiffs' total attorneys' fees request of $4,156,771 is 8.13% of the total estimated settlement value of $51,148,944 (combining both the value of the damages common fund and the estimated value of the injunctive relief)—well below the 25% benchmark in the Ninth Circuit.

***Second***, Plaintiffs' request to be awarded the $3,000,000 Injunctive Relief Fee was agreed to only after the essential terms for all class claims were resolved, removing any possibility or risk of collusion or any possibility that the agreement on this Injunctive Relief fees reduced the amount of damages to be paid to class members.

***Third***, Plaintiffs' request for 25% of the damages fund is supported by both the more than 100% recovery of estimated damages for class members and the substantial amount of work Class Counsel undertook between 2021 and 2025, resulting in a lodestar amount of $6,758,419.50 for its work in the case. Plaintiffs have provided additional details on the fees incurred in this case to support its lodestar calculation, including a breakdown of the lodestar amount and work completed for each calendar year. Plaintiffs' $4,156,771 total attorneys' fees request—which includes the stipulated $3 million Injunctive Relief Fee that will not come out of the damages fund—is substantially less than its total lodestar in the case. The resulting negative multiplier strongly supports the reasonableness of the fee request.

***Fourth***, and finally, Class Counsel has submitted additional information, contained in the Declaration of Jeffrey L. Kessler, to support the reasonable costs incurred by Class Counsel which it seeks to obtain from the damages fund. These costs were necessary for the prosecution of the damages claims, do not include all expenses incurred, and, with the exception of those costs that were incurred for Plaintiffs' damages expert, have been discounted by half to allocate the joint costs incurred on behalf of both the damages and injunctive relief classes.

Based on the value of the settlement for all classes, including Class Counsel's estimate of the

combined economic value of the injunctive and damages settlement, the negative lodestar, and the reasonable costs incurred, Class Counsel respectfully requests the Court grant final approval of the settlement and grant Class Counsel's requests for fees, costs, and service awards for the Class Representatives.

## II. LEGAL STANDARD

An award of attorneys' fees and costs is mandatory under the Clayton Antitrust Act. 15 U.S.C. § 26. Courts may use either the "percentage-of-the-fund" or "lodestar" method to calculate reasonable attorneys' fees in cases for monetary damages. *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *see also Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023) ("The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class."). Where, as here, the settlement includes a common fund, the percentage-of-the-fund methodology is "preferred." *In re Capacitors Antitrust Litig.*, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018) (citing cases). The ultimate question is whether "the [fee] award, like the settlement itself, is reasonable." *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 949 (9th Cir. 2015).

The Ninth Circuit has established a 25 percent benchmark for common fund cases, as the "starting point." *Online DVD*, 779 F.3d at 955. However, in many cases, including antitrust cases and those involving small monetary common funds, courts have awarded more than 30% of the class fund. *Schmitt v. Kaiser Found. Health Plan of Washington*, 2024 WL 1676754, at *5 (W.D. Wash. Apr. 18, 2024) (awarding 33.3% of a $3,000,000 common settlement fund); *Baten v. Michigan Logistics, Inc.*, 2023 WL 2440244, at *7–8 (C.D. Cal. Mar. 8, 2023) (awarding 33% of a $1,750,000 common fund); *Reed v. Balfour Beatty Rail, Inc.*, 2023 WL 4680922, at *7 (C.D. Cal. June 22, 2023) (awarding 33% of a $330,000 common fund); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 602 (N.D. Cal. 2020) (awarding Class 30% of $6.5 million settlement fund). When a cross-check of a fee request based on a percentage of the fund results in a fee award that is less than counsel's lodestar, the resulting "negative multiplier" strongly supports the reasonableness of the requested fee. *See, e.g., In Re Ring LLC Priv. Litig.*, 2024 WL 2845978, at *6 (C.D. Cal. May 28, 2024).

Finally, where—as here—the parties have negotiated part of the attorneys' fees to be paid directly

by the defendant, that bargained-for fee amount warrants "significant deference." *In Re Ring LLC Priv. Litig.*, 2024 WL 2845978, at *6; *In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("A court should refrain from substituting its own value for a properly bargained—for agreement."). Nevertheless, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

## III. ARGUMENT

### A. The Total Estimated Value of the Settlement is Over $50 million

In this settlement, Plaintiffs have secured a substantial monetary recovery of $4,627,084.00 for all damages classes that cover over 100% of their claimed actual damages, including 200% of claimed actual damages for the 2018 Damages Settlement Class. ECF No. 423 at 7. Plaintiffs also secured a sweeping permanent injunction that provides protections far beyond what was directly at issue in the litigation and what Plaintiffs could have obtained from the court if they prevailed at trial. *Id.* at 7-8. While the injunctive relief is difficult to value with precision, Plaintiffs estimate that the injunctive relief will likely provide swimmers with at least $46,521,860 in economic value through additional prize money and appearance fees over the next ten years. This figure is based on Dr. Rascher's analysis of the additional fees and prize money that ISL paid or would have paid to swimmers in 2019 and the increase in compensation paid by World Aquatics in response to ISL's entry into the market. *See* Rascher Rep. ¶ 35; App. A. Taken together with the monetary recovery, Plaintiffs estimate that the total settlement value to all class members is $51,148,944.

#### 1. The Value of the Injunctive Relief Settlement

While the Court is surely well-informed of the terms of the Injunctive Relief Settlement through its review of Plaintiffs' previous submissions, (*see* ECF No. 423 at 7–8; ECF No. 428 at 13–15), Plaintiffs provide a brief discussion of the value of key provisions and additional information providing an estimated monetary value of the Injunctive Relief Settlement over a 10-year timeframe.

***Substantive, Nonmonetary Relief***. Under the Injunctive Relief Settlement, a "Swimmer's

participation in any Sanctioned Event shall not be subject to any restriction." Settlement Agreement, App. A ¶ 3. Further, participation in any independent swimming event will not give rise to any penalties imposed by World Aquatics on the Swimmer, World Aquatics National Federation, or World Aquatics Continental Organization. *Id.* ¶ 5. Likewise, World Aquatics "will not maintain or enforce any rule, policy, or practice that restricts or penalizes any Swimmer's, [World Aquatics] National Federation's or [World Aquatics] Continental Organization's participation in any" independent events. *Id.*

Additionally, the Injunctive Relief Settlement provides that results achieved by a Swimmer at any independent swimming events shall be recognized by World Aquatics and will be part of World Aquatics' official results, guaranteeing the same treatment for results achieved at such events so long as they comply with certain World Aquatics competition regulations. *Id.* ¶ 6(b). Finally, the Injunctive Relief Settlement *requires* World Aquatics to approve and register independent swimming competitions in the official World Aquatics Calendar, that World Aquatics applies to its own events. *Id.* ¶ 2. World Aquatics's counsel agreed that the injunctive relief is more extensive than what Plaintiffs could have secured at trial. *See* Feb. 26, 2026 Hr'g Tr. at 6:11–19.

The substantial value of this injunctive relief is not reduced by the fact that World Aquatics first stated it would not enforce GR 4.5 and amended its rules in 2019 to eliminate the mandatory penalties imposed on swimmers for participating in unsanctioned events. First, as noted, that change came only in response to the pressure provided by this litigation, and it did not stop World Aquatics from, later in 2019, using other methods to suppress competition in the market. *See, e.g.*, ECF No. 325 at 26; ECF No. 329-70 (World Aquatics action on October 1, 2019). In addition, World Aquatics did not repeal its rule which enabled it to punish national federations and continental federations for supporting competitions not approved by World Aquatics. *See, e.g.*, ECF No. 329-75, FINA General Rules as of August 5, 2021 (GR 4.3: "The holding of demonstrations and/or exhibitions, clinics, training, competitions, etc., with non-affiliated or suspended bodies is not permissible."). The terms of the injunctive relief go far beyond the rule change made by World Aquatics in 2019 by permanently preventing any actions by World Aquatics to withhold a World Aquatics approval or to impose sanctions on either national federations, continental federations, or athletes who participate in competing swimming events. *See* Settlement

Agreement, App. A, ¶ 2(b) (changing policy in World Aquatics Competition Regulation Part 1, Article 2.3.1 from not approving events that fall within 30 days of certain FINA events to *requiring approval* of those events so long as they avoid the conflicting dates); *id.*, App. A, ¶ 5 (expanding terms of By-Law 4.2.9 to prohibit World Aquatics from enforcing any policy that restricts or penalizes not only swimmers, but also *national federations and continental organizations*, who participate in unsanctioned events). And, of course, absent this settlement, World Aquatics would have had unilateral authority to amend its rules at any time to reinstate similar or more restrictive penalties on swimmers and national member federations.

Defendant's myopic fixation on the exact rules that were challenged is obscuring what was really at issue in this litigation. *See* ECF No. 434 at 5–6. The fundamental harm Plaintiffs sought to remedy was World Aquatics' ability to weaponize its dominant power over competitive swimming to impose anticompetitive restrictions on swimmers and member federations to block competitive entry—not just the specific rules through which this power was wielded. The injunctive relief afforded corrects this power imbalance by permanently barring World Aquatics from engaging in similar anticompetitive conduct. That is a monumental shift from the status quo—where swimmers and federations were subject to the whims of a powerful entity with unlimited authority and power over swimmers and federations. As this Court is aware, World Aquatics only repealed the rule imposing mandatory penalties on swimmers after Plaintiffs brought this litigation and it realized its legal exposure.

What this means in practice is that swimmers will now be able to freely compete in independent events while still making progress towards establishing Olympic eligibility. The injunction not only permanently forbids the sanctioning of swimmers that was directly at issue in this litigation, but also fundamentally transforms how World Aquatics is to treat requests from competitive organizations seeking to put on non-World Aquatics sponsored events, and how it treats results from independent events—all of which serves to encourage and legitimize swimmer participation in any competitive swimming event, and lowers the barrier for competitive entry. That is a sea change compared to the status quo without the injunction, and it is not relief Plaintiffs could have secured at trial. Nor do these benefits to swimmers require that new competitive entry take place. The substantial threat of entry will

put pressure on World Aquatics to maintain or elevate its compensation to swimmers at a competitive level.

***Monetary Value of the Injunctive Relief***. As discussed in Plaintiffs' Motion, the precise value of the injunctive relief cannot be determined. Mot. at 12-13. However, in light of the Court's comments at the hearing asking Class Counsel to provided an estimated value of the injunctive relief, (*see* Feb. 26, 2026 Hr'g Tr. 11:16–17, 2026), Plaintiffs provide a reasonable estimate based on both (1) the prize money and appearance fees that Dr. Rascher estimates would have been paid in additional events that would have been held in 2019 but for World Aquatics' anticompetitive conduct; and (2) the actual amount of additional money paid to swimmers by both 2019 ISL and World Aquatics in response to increased competition that will be all the more feasible following the approval of this settlement. *See* Rascher Class Cert Rep. ¶ 35; Rascher Reply Rep. App. A.

In 2019, ISL paid swimmers $3.6 million in prize money and appearance fees. Rascher Class Cert Rep. ¶ 35. Further, Dr. Rascher estimates that ISL would have paid swimmers an additional $2,754,372 dollars in prize money and appearance fees but for World Aquatics' conduct. Rascher Reply Rep. Ex. 5. And for World Aquatics, Dr. Rascher opines that after ISL's entry in 2019, World Aquatics increased payments in its World Championship and World Cup events by $250,000, and created a brand new "Champions" series, a direct response to ISL's competition, resulting in additional swimmer compensation of $2.7 million.[1] Rascher Class Cer Rep. ¶ 35. These amounts together represent $9,304,372 in additional money per year that Plaintiffs estimate likely could be earned in the future with the Injunctive Relief Settlement as opposed to what would be earned if World Aquatics was permitted to reinstate or even strengthen its anticompetitive restraints on competition. If only 50% of that estimate comes to fruition, the annual value of the injunctive relief is $4,652,186. Taking this figure to estimate the injunctive relief on a going forward for a period of ten years, i.e. from 2026 to 2035, the value of the injunctive relief is estimated to be at least $46,521,860. By using the 50% adjustment, Plaintiffs are

[1] Although it appears World Aquatics only offered the Champions Series in 2019 and 2020, that merely confirms that World Aquatics is pushed to provide additional opportunities and swimmer compensation when the market demands to respond to increased competition from a new competitive entrant. That competitive pressure and resulting response from World Aquatics will only increase moving forward as a direct result of the Injunctive Relief Settlement.

being conservative in their estimate of the economic benefits to the class.

The amounts paid to swimmers in this new competitive market can only increase in the future now that the Injunctive Relief Settlement provides permanent protections for the introduction of competing professional swimming events. ISL announced in December 2025, following the Settlement and regardless of the outcome of its own litigation, that it intends to restart its competitive events leading into the Olympics in 2028 in Los Angeles. *See* Rory Carroll, *Exclusive: ISL Targets 2026 Relaunch After COVID, War Disruptions,* REUTERS (Dec. 22, 2025), https://www.reuters.com/sports/swimming-isl-targets-2026-relaunch-after-covid-war-disruptions-2025-12-22. The certainty provided by the Settlement provides the basis for competitors like ISL—and the investors and broadcasters with which those competitors would partner—to enter the market, which in turn will cause World Aquatics to respond by making their own events more attractive to swimmers who will have the freedom to choose what events they will participate in without fear of retribution. But, as noted above, even if competitive entry does not actually occur, the mere threat of such entry should cause World Aquatics to compensate the swimmers at its own events at higher competitive levels in comparison to what the compensation would be absent the Injunctive Relief Settlement.

**2. The Value of the Damages Settlement**

Under the Damages Settlement, Defendant will pay a total of $4,627,084.00 in damages, consisting of $1,127,084.00 to a fund for the 2018 Damages Settlement Class and $3,500,000.00 to a fund for the 2019 Damages Settlement Class. Settlement Agreement ¶¶ 1(h), (j). Before accounting for Plaintiffs' request for attorneys' fees, reimbursement of costs, and service awards, the 2018 Damages Settlement Fund is 200% of Plaintiffs' claimed damages and the 2019 Damages Settlement Fund is 127.9% of the claimed damages. As discussed in Plaintiffs' Motion, (ECF No. 428 at 18), securing over 100% of claimed damages in an antitrust case is exceptionally rare, and settlements recovering far lower percentages of claimed damages have been described as "excellent." *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *20 (N.D. Cal. Dec. 10, 2020); *see also In re Coll. Athlete NIL Litig.*, 803 F. Supp. 3d 959, 987 (N.D. Cal. 2025) (finding settlement representing "67.4% of the estimated damages" to be an "outstanding result[], particularly given that lesser recoveries in other antitrust actions

have been hailed as excellent").

### B. Plaintiffs' Requests for Attorneys' Fees Are Reasonable

Plaintiffs are requesting an award of 25% of the Damages Settlement Fund ($1,156,771) and a stipulated fee of $3,000,000 to be paid directly by World Aquatics to Class Counsel and which will not be taken from the Damages Settlement Fund. ECF No. 428 at 1. The $4,627,084 Damages Settlement combined with the estimated $46,521,860 estimated value of the Injunctive Relief Settlement results in a total Settlement value of $51,148,944. Accordingly, Plaintiffs' aggregate fee request of $4,156,771 amounts to only 8.13% of the estimated combined value of the Damages and Injunctive Relief Settlements.

After accounting for Plaintiffs' requests of 25% of the damages settlement fund for attorneys' fees ($1,156,771), swimmers will recover $3,470,313.[2] Broken down by class year, the 2019 Damages Settlement Fund will be $2,624,944.75 after accounting for Plaintiffs' fee request, or 95.3% of claimed damages. And the 2018 Damages Settlement Fund will be $845,368.25, or 150% of claimed damages. Even after accounting for Plaintiffs' full requests for fees, costs, and class representative service awards, Plaintiffs have secured an outstanding monetary recovery for the damages class members. *See supra*. Taken together, Plaintiffs are requesting $4,156,771 in attorneys' fees for its work on behalf of both the Injunctive Relief Class and the Damages Classes. This aggregate fee request is only 8.13% of the estimated total value of the Settlement. *See* Part III.B, *supra*. That is well below the Ninth Circuit 25% benchmark. *Online DVD*, 779 F.3d at 955.

Even if the Court does not accept Plaintiffs' valuation of the injunctive relief, the difficulty of assigning it a precise value, while recognizing that its value is substantial, underscores the danger that evaluating Plaintiffs' aggregate fee request as a percentage of the Damages Settlement Fund—without adding any value for the injunctive relief—would wrongfully depress Class Counsel's fee award in a manner that would undermine the public policy of encouraging counsel to take on the risks of class action representation, especially in antitrust cases. A case in this district, *Relente v. Viator, Inc.*, is particularly instructive. 2015 WL 3613713 (N.D. Cal. June 9, 2015). In *Relente*, the plaintiffs secured a

---

[2] The $3,000,000 stipulated Injunctive Relief Fee and Expense Award is paid separately by World Aquatics and does not come out of the Damages Settlement Fund. ECF No. 428 at 13–15.

settlement in a class action challenging advertising practices that resulted in a $515,000 settlement fund and injunctive relief which mandated changes to the defendant's advertising practices. *Id.* at *1. Class counsel in the case moved for $500,000 in attorneys' fees that would not be taken from the damages settlement fund—an amount that nearly eclipsed the settlement fund. *Id.* The Court granted Plaintiffs' request for attorneys' fees in full based on the lodestar method. *Id.* at *4. The Court noted that the lodestar method was "particularly suited" to the settlement "because part of the relief the class obtained is an injunction, whose value will not be reflected in the monetary award that is going to the class." *Id.* at *2. The Court rejected the defendant's argument that the court should cross-check the award against a percentage of the recovery method utilizing a "constructive common fund" because the proffered calculation "assumes that the injunction . . . is valueless." *Id.* at *3. The Court declined to conduct such a cross-check because the "difficulty of valuing the injunction overall makes it all but impossible" to do so. *Id.* at *3.

The *Relente* court's analysis of a mixed settlement providing for injunctive and monetary relief is sound. And unlike class counsel's request in that case, Plaintiffs are not requesting anything approaching its lodestar for its total work in the case. The total $4,156,771 in fees is over $2 million less than Class Counsel's lodestar, underscoring the reasonable nature of the fee request. Kessler Decl. ¶ 1.

A reduction in Class Counsel's reasonable fee request would also undermine the policy in favor of antitrust settlements in class actions. Under the antitrust laws, Class Counsel could have recovered all of its reasonable fees if it prevailed in trial, even if no damages were recovered. 15 U.S.C. § 4304(a)(1). It would undermine the policy in favor of a beneficial antitrust settlement in a class action if a precedent is set whereby a settlement achieving more than 100% of actual damages, and a fee request with a negative multiplier, is not approved because of the difficulty of estimating the value of the injunctive relief part of the settlement.

Accordingly, it is respectfully submitted that the Court should find that Class Counsel's total fee request of $4,156,771 is eminently reasonable in relation to an estimated total settlement value over $50 million. *See supra* at 9. The Court is not required to accept Plaintiffs' estimated settlement valuation to find that this fee request is reasonable. *See Relente*, 2015 WL 3613713, at *3.

**1. The Stipulated $3,000,000 Injunctive Relief Fee Award is Reasonable**

While Plaintiffs' aggregate fee request of $4,156,771 is reasonable in relation to the total value of the settlement, the reasonableness is even more pronounced when considering the details of the $3 million Injunctive Relief Fee and 25% of the damages fund fee request individually.

For the successful mediation in June 2025, Class Counsel was intentional in segregating the negotiations to resolve the injunctive relief claims, the damages claims, and attorneys' fees for obtaining the injunctive relief. *See* ECF No. 423 at 5–6. The Parties first conducted settlement negotiations regarding the injunctive relief claims. *Id.* at 5. Only after agreeing to the principal terms of the injunctive relief settlement did the Parties turn to negotiations of damages. *Id.* Plaintiffs then made separate monetary demands for the claims that were the subject of the 2018 Damages Class and the claims that were the subject of the 2019 Damages Class. *See id.* It was only after a tentative agreement was reached first on the injunctive settlement terms, and then each of the damages settlement terms, that Plaintiffs then turned to negotiating counsel fees for the Injunctive Class settlement that would be paid directly by Defendant. *See id.*at 6.

This structure for the mediation discussions eliminated any risk of collusion and any risk that the Injunctive Relief fee request negotiations would cause a reduction in the amount of damages that Defendant would be willing to pay to resolve the damages claims. The fact that the $3 million Injunctive Relief fee request was agreed to *after* the injunctive relief and monetary claims were resolved provides strong evidence that it is reasonable and untainted by collusion. *See In re Apple Computer, Inc. Derivative Litig.*, 2008 WL 4820784, at *3 (N.D. Cal. Nov. 5, 2008) ("The parties first agreed on a gross settlement of $14 million and the implementation of the new corporate governance rules, and only then did they allocate the attorneys' fees. A court should refrain from substituting its own value for a properly bargained—for agreement."); *In Re Ring LLC*, 2024 WL 2845978, at *6 ("the parties' separately negotiated arrangement regarding attorneys' fees warrants significant deference").

**2. Plaintiffs' Request for 25% of the Damages Fund is Reasonable**

Plaintiffs' fee request for 25% of the damages fund is similarly reasonable, especially in light of the superlative results achieved for the damages classes and the substantial amount of work Class

Counsel was required to perform on behalf of the damages classes to achieve this result. The work by Class Counsel resulted in a lodestar amount of $6,758,419.50. *See* Kessler Decl. ¶ 1. That lodestar, calculated as of October 27, 2025, does not include the numerous hours that counsel has spent working to provide notice to class members, responding to class member questions, or preparing for and attending the final approval hearing, or for work that has continued after the hearing on February 26, 2026.

To assist the Court's evaluation of the reasonableness of Class Counsel's work in this litigation, Plaintiffs have submitted with the concurrently filed Supplemental Declaration of Jeffrey L. Kessler an exhibit that provides separate lodestar charts for each calendar year, along with a detailed narrative description of the work performed by Class Counsel for each calendar year. *See* Kessler Decl. Ex. A. Class Counsel's involvement in this litigation spanned from December 2021 through the present, but its lodestar is calculated only through October 27, 2025. *See id.* ¶ 1. Consistent with the Court's instruction that it did not want Class Counsel to provide invoices, Class Counsel has instead included the work performed by each and all of the attorneys, and supported by the staff, that resulted in the hours spent by each attorney and staff member for each year, as contained in the chart. *See* Kessler Decl. ¶ 5.

***Work Completed in 2021.*** Winston & Strawn was engaged by Plaintiffs in this case in December 2021, and first appeared in this case as counsel for Plaintiffs and the proposed class on December 30, 2021. Kessler Decl. ¶ 6. After being engaged, Winston immediately analyzed the prior filings and the issues pertaining to class certification, and prepared and filed a motion to appoint Winston as class counsel for the proposed classes. *Id.* When Class Counsel joined this case, the parties had just concluded class certification briefing and awaited a hearing on class certification scheduled for January 13, 2022. *Id.* ¶ 7. Accordingly, Class Counsel also began preparations for the hearing beginning immediately after its engagement. *Id.* In 2021, Class Counsel worked 116.6 total hours, resulting in a lodestar of $161,028 at 2025 billing rates. Kessler Decl. Ex. A. All of this work was essential for the representation.

***Work Completed in 2022.*** Defendant opposed Winston's motion to be appointed Class Counsel, (see ECF No. 289), which required Winston to draft and file a reply on January 20, 2022. *See* Kessler Decl. 9; ECF No. 290. Winston prepared and filed an unopposed motion to continue the class certification hearing for three weeks, to February 3, 2022, which the Court granted. Kessler Decl. ¶ 10;

ECF No. 288. Class Counsel dedicated many hours to thoroughly reviewing the extensive discovery record, becoming familiar with the prior filings, facts, and legal issues established in this case, and diligently working to defend the class certification motion at the hearing.[3] Because prior counsel for the swimmers had decided to resign, it was essential for Winston to perform all of this work for the class on an expedited basis. *Id.* ¶ 11.

While Plaintiffs' Motion for Class Certification was pending, Class Counsel worked with Plaintiffs' expert, Dr. Daniel Rascher, who developed his opinions regarding the merits damages stage of the case. Kessler Decl. ¶ 12. Dr. Rascher submitted an initial expert report on damages on June 28, 2021, and was preparing to respond to issues raised in Defendant's expert rebuttal report on damages. *Id.*

The class certification hearing occurred on February 3, 2022, with lead Class Counsel presenting the argument. Kessler Decl. ¶ 13. Following the hearing, this Court issued an Order certifying Plaintiffs' proposed injunctive relief class under Rule 23(b)(2) and denying Plaintiffs' request to certify its proposed damages subclasses under Rule 23(b)(3). Kessler Decl. ¶ 14; *See* ECF No. 299. The Court's denial of Plaintiffs' damages classes required Class Counsel to revise their case strategy and Plaintiffs' expert to revise his damages report to comply with the Court's Order on class certification. Plaintiffs' expert submitted his damages reply report on April 7, 2022. Kessler Decl. ¶ 15.

After the Court rulings on class certification, Defendant moved to strike and exclude the testimony of Plaintiffs' damages expert, Dr. Daniel Rascher, (ECF No. 316), to which Class Counsel—together with Counsel for ISL—filed a brief in opposition on August 5, 2022. Kessler Decl. ¶ 16; ECF No. 338. Class Counsel then put forth tremendous effort towards advocating for partial summary judgment as to Defendant's liability under Section 1 of the Sherman Act and Plaintiffs' entitlement to injunctive relief, while simultaneously opposing World Aquatics' motion for summary judgment on all claims asserted by the Plaintiffs. Kessler Decl. ¶ 17; ECF Nos. 321, 325. On June 27, 2022, Class Counsel managed and led the briefing for a joint motion for partial summary judgment with Counsel for

---

[3] Although the Court questioned whether this review time should be included in the lodestar, Class Counsel believes they should be included as it was necessary for the efficient and successful prosecution of Plaintiffs' claims and the class would be left without effective representation if new counsel did not expedite its review of the record to promptly step into the shoes of prior counsel for the swimmers.

ISL, (ECF No. 325), along with a reply in support of its motion on September 8, 2022. Kessler Decl. ¶ 18; ECF No. 353. Defendant also filed its own motion for summary judgment on June 27, 2022, to which Class Counsel—together with counsel for ISL—jointly filed a response in opposition on August 5, 2022. Kessler Decl. ¶ 19; ECF No. 341

The efforts again required Class Counsel's examination of the discovery record, many hours of legal research, and several rounds of drafting the opening, opposition and reply briefs. Class Counsel also contended with the strategic impact of drafting its summary judgment opposition without a merits expert on liability, after the Court denied Plaintiffs' request for a scheduling order that included merits expert reports. *See* Kessler Decl. ¶ 20; ECF Nos. 298 (February 8, 2022 Stipulation to Amend Case Schedule), 310 (March 3, 2022 Oral Order regarding merits expert reports). Class Counsel accordingly relied on their legal research and significant expertise to develop arguments on liability in the absence of merits expert testimony. The multiple rounds of summary judgment briefing lasted almost four months, resulting in over 170 pages of briefing between the parties, and an oral argument on October 22, 2022, which required travel to San Francisco, California. Kessler Decl. ¶ 20; ECF No. 362. While the summary judgment motions were pending, and due to a trial date scheduled for February 2023, Class Counsel also had to begin preparing for trial, which included the use of a jury consultant and preparing for a possible jury exercise. In 2022, Class Counsel worked 2,626.4 hours, resulting in a lodestar amount of $3,222,732.50 at 2025 billing rates. Kessler Decl. Ex. A. All of this work was essential for its representation of the class.

***Work Completed in 2023.*** This Court granted Defendant's motion for summary judgment on January 6, 2023, and denied Plaintiffs' motion for partial summary judgment, entering judgment against Plaintiffs on the same day. Kessler Decl. ¶ 24; See ECF Nos. 363, 364. Class Counsel appealed the Court's (1) grant of summary judgment on Plaintiffs' antitrust claims; and (2) denial of Plaintiffs' motion to certify damages classes. *See* Notice of Appeal, ECF No. 366.

In 2023, Class Counsel spent over fifteen hundred hours working on Plaintiffs' appeal to the Ninth Circuit. Kessler Decl. ¶ 26. To prepare the appeal briefs, Winston attorneys undertook extensive legal research, thoroughly analyzing the relevant legal issues and precedents. *Id.* These efforts resulted

in the drafting and submission of two comprehensive appellate briefs, which together totaled 135 pages. *Id.* Accompanying these briefs was an Excerpt of Records spanning 1,479 pages, providing the appellate court with a complete and well-organized record to support Plaintiffs' positions on appeal. *Id.*; *Shields v. World Aquatics*, Case: 23-15092, ECF Nos. 19–21-7, 2024 WL 4211477 (9th Cir. Sept. 17, 2024).

In addition, Class Counsel dedicated a substantial number of hours to preparing for oral argument. Kessler Decl. ¶ 27. The preparation process similarly involved research, analysis, and strategic planning to ensure that all relevant legal and factual issues were thoroughly prepared for with respect to both damages class certification and merits-related issues on appeal. *Id.* The time and effort invested by Class Counsel was essential to effectively argue on behalf of Plaintiffs and to respond to the sophisticated arguments advanced by opposing counsel. In 2023, Class Counsel worked 1,530.6 hours, resulting in a lodestar of $1,824,870 for the year at 2025 billing rates. Kessler Decl. Ex. A.

***Work Completed in 2024.*** Class Counsel continued to prepare diligently for the appeals hearing scheduled for February 16, 2024. Kessler Decl. ¶ 29. For that hearing, Class Counsel traveled to San Francisco and Lead Class Counsel delivered oral arguments before the Ninth Circuit. *Id.* On September 17, 2024, the Ninth Circuit reversed this Court's orders granting World Aquatics' summary judgment motion and denying certification of the swimmer Plaintiffs' proposed damages classes. Kessler Decl. 30; ECF No. 393. Following the Ninth Circuit's denial of Defendant's petition for rehearing en banc on November 25, 2024 (see ECF No, 396) and the issuance of the Ninth Circuit's mandate on December 3, 2024 (see ECF No. 397), Class Counsel immediately began work on researching, drafting, and filing a new motion for class certification. Kessler Decl. ¶ 31; *See* ECF No. 405. Class Counsel also began taking steps to prepare for trial, including compiling information on the class members to identify potential witnesses at trial. In 2024, Class Counsel worked 276 total hours, resulting in a lodestar of $320,989.50 for the year at 2025 billing rates. Kessler Decl. Ex. A.

***Work Completed in 2025.*** At the start of 2025, Class Counsel continued to draft and finalize its renewed motion for class certification. Kessler Decl. ¶ 34. In this motion, Class Counsel focused on this Court's previous ruling that Plaintiffs (1) could not adequately represent the classes, under Rule 23(a)(4); and (2) did not meet the requirements of predominance and superiority under Rule 23(b)(3). *Id.* ¶ 35.

Defendant expressed its intention to oppose Plaintiffs' motion for class certification, and its intention to file a renewed motion to exclude the testimony of Plaintiffs' expert, Dr. Rascher. *Id.*; ECF No. 407.

At a court conference on February 12, 2025, the Court subsequently ordered the Parties to meet and confer in person to address the new motion for class certification. Kessler Decl. ¶ 36; ECF No. 408. On March 18, 2025, lead Class Counsel traveled to San Francisco, California, where Class Counsel successfully obtained Defendant's agreement to stipulate to certifying the damages classes, which Class Counsel thereafter drafted and filed. *See* Kessler Decl. ¶ 37; ECF No. 410. On April 25, 2025, the Court granted Plaintiffs' and Defendant's joint stipulated motion and certified a damages class including two subclasses, encompassing a total of 265 swimmers. Kessler Decl. ¶ 37; ECF No. 413. Class Counsel also worked closely with globally recognized settlement administration service Verita Global LLC ("Verita") to develop a comprehensive class notice plan. Kessler Decl. ¶ 38. Class Counsel spent a significant amount of time working with Verita to draft the long-form, email, and postcard notices that would earn this Court's approval. *Id.*

On April 30, 2025, this Court granted Plaintiffs' motion to approve the manner and form of Plaintiffs' notice plan on the condition that Plaintiffs include an option for class members to opt out by email. *See* Kessler Decl. Kessler Decl. ¶ 39; ECF. No. 416. Class Counsel subsequently communicated with Verita throughout the class notice period, ensuring that all relevant deadlines and requirements were met. In addition to the direct notice portion of the class notice, Class Counsel worked with Verita to draft a press release to notify potential class members of the litigation that was posted to the Winston & Strawn website and further discussed by a popular website dedicated to competitive swimming, "SwimSwam." Kessler Decl. ¶ 40.

Class Counsel next turned its efforts toward preparing for mediation. Kessler Decl. Kessler Decl. ¶ 41. In advance of the mediation, Class Counsel drafted a detailed mediation settlement outlining Plaintiffs' positions and their initial settlement offer. *Id.* On June 9, 2025, Class Counsel attended an all-day, sharply focused in-person mediation session with counsel for Defendant and moderated by mediator Jeffrey Mishkin. *Id.* The settlement negotiations were carefully structured based on different relief and claims to avoid even the appearance of a conflict between the classes or between any class and Class

Counsel. First, the parties discussed a global settlement on injunctive relief.[4] Plaintiffs and World Aquatics agreed to the injunctive relief terms, contained in Appendix A to the Settlement Agreement, after which Plaintiffs and World Aquatics discussed monetary relief for the damages classes. That, too, was separated to ensure that relief for one damages class was not altered in exchange for relief to another. *Id.* The Parties negotiated a monetary settlement for the 2018 Damages Settlement Class and, once those terms were finalized, negotiated a monetary settlement for the 2019 Damages Settlement Class. Only once all relief for the classes were agreed to did the Parties turn to the issue of fees for Class Counsel for work done on behalf of the Injunctive Relief Settlement Class. *Id.* After further negotiations, the Parties agreed to the fee. ***Id.*** Plaintiffs' counsel thereafter spent weeks negotiating the full terms of the Settlement Agreement with opposing counsel. *Id.* ¶ 44. The full agreement was memorialized in the Settlement Agreement, signed on August 29, 2025. *Id.*

After securing the Settlement, Class Counsel devoted significant labor to drafting the motion for preliminary settlement approval and settlement notice plan. Kessler Decl. ¶ 45; ECF No. 423. On October 16, 2025, Class Counsel attended the hearing on its motion for preliminary settlement approval. Following the hearing, Class Counsel prepared and submitted revised notices to address concerns this Court raised at the hearing. *Id.* ¶ 46; ECF No. 426. The Court granted Plaintiffs' motion for preliminary approval on October 17, 2025. *Id.* ¶ 47; ECF No. 427. Following preliminary approval, Class Counsel collaborated closely with the settlement administrator to apply the notice methods previously used during the litigation class notice phase to broaden the scope of the notice to reach the 250 additional members of the Injunctive Relief Settlement Class who are not part of the Damages Settlement Classes. Kessler Decl. ¶ 47. Class Counsel also worked with the settlement administrator to prepare allocation estimates for eligible damages class members prior to the objection deadline of December 30, 2025. Kessler Decl. *Id*. Finally, Class Counsel worked to draft and submit its motion for attorneys' fees, reimbursement of litigation expenses, and service awards for class representatives. In 2025, Class Counsel worked 1,158.10 hours, resulting in a lodestar of $1,273,933.50 for the year at 2025 billing rates. Kessler Decl. Ex. A.

As demonstrated above, Class Counsel worked tirelessly on this litigation to secure a truly

[4] ISL participated in this discussion to resolve its own claims for injunctive relief, but the parties separately negotiated damages.

outstanding monetary recovery for the class representing 200% of the damages claimed for the 2018 Damages Settlement Class, and 127.9% of damages claimed for the 2019 Damages Settlement Class. *See supra* at 8. The fact that Class Counsel is only seeking the benchmark 25% from the damages fund with a negative lodestar multiplier further demonstrates the reasonableness of the fee. Indeed, for securing successful settlements such as this, plaintiffs' counsel often request the court to apply a multiplier to its lodestar amount or to award a higher percentage of the damages fund in fees. Class Counsel makes no such request here. Even after accounting for the total requested fees, the damages classes' recovery is significant. If the Court awards Class Counsel their total requested fees, the remaining Damages Settlement Fund (before costs and class representative awards) is $3,470,313, with the 2018 Damages Settlement Fund of $845,368.25 and the 2019 Damages Settlement Fund of $2,624,944.75. *See supra*. These recoveries represent 150% of claimed damages for the 2018 Damages Settlement Class and 95.3% of claimed damages for the 2019 Damages Settlement Class—an outstanding result that is far above what is typical in antitrust class action settlements. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *20.

Plaintiffs' total fee request of $4,156,771 is substantially less than Class Counsel's lodestar and, in light of the significant work underlying that lodestar figure and the essential nature of the work, it should easily be found to be reasonable. *See In Re Ring LLC Priv. Litig.*, 2024 WL 2845978, at *6. The fees incurred by Class Counsel were reasonable and necessary to mount a vigorous pursuit of the class members' claims against a well-resourced Defendant and high-powered law firm that ultimately led to the successful monetary recovery for the damages classes. This outstanding result would not have been possible without Class Counsel's unwavering dedication to the class members and relentless pursuit of their claims on a contingent basis.

### C. Plaintiffs' Request for Reimbursement of Litigation Costs is Reasonable

To respond to the Court's instruction for greater details supporting Class Counsel's request for reimbursement of $170,957.70 in reasonable litigation costs, Plaintiffs have submitted an updated, more detailed chart with the concurrently filed Kessler Declaration and have provided further explanation for these costs in the Declaration itself. *See* Kessler Decl. ¶ 50; Ex. B.

Winston has expended a total of $243,526.71 in unreimbursed litigation expenses in litigating the damages and injunctive relief claims in this litigation, which Class Counsel advanced interest free. They are the type of expenses typically billed by attorneys to paying clients in the marketplace, and include such costs as fees paid or incurred for online document repositories, document preparation for depositions and hearings, and travel in connection with this litigation. Kessler Decl. ¶ 52. As set forth in Ex. B, Plaintiffs are seeking an award from the damages settlement fund of all expert costs incurred by Class Counsel for the damages classes and 50% of the remaining costs jointly incurred for the injunctive and damages classes together (with 50% being a reasonable allocation of these costs between the injunctive relief and damages classes).[5]

Class Counsel is requesting reimbursement of the full $82,569.99 paid to OSKR, LLC for the expert services of Dr. Daniel Rascher related to damages class certification and damages, representing over one third of the total expenses incurred by Winston in connection with this case. Kessler Decl. . Class Counsel also requests $15,818.68 for the full amount paid to the settlement administrator for implementing the damages class notice plan following certification of the classes. *Id.* Of the total costs incurred for work on behalf of both the damages and injunctive relief classes, Class Counsel is requesting $8,075 to recover half the amount it paid to Phillips ADR Enterprises for Class Counsel's share of the services of mediator Jeffrey Mishkin, which led to this successful Settlement. *Id.* Class Counsel further requests $6,628.15 in non-refundable jury consultant fees to recover half the amount paid to the litigation consulting firm JuryScope to prepare for the impending trial date in 2023—before the Court granted Defendant's motion for summary judgment. *Id.*

Class Counsel requests $6,628.14 from the damages funds to account for half of the jointly incurred costs for airfare. Kessler Decl. ¶ 55. Although both I and Johanna Rae Hudgens are based in New York, other Class Counsel were local and did not incur any airfare costs. *Id.* This had the effect of reducing the travel costs for the class. *Id.* I took four trips, and Ms. Hudgens took five trips as part of this litigation, with an average cost of $1,531.29 per trip. *Id.* Hotel availability and rates varied during the periods that Class Counsel traveled, but Class Counsel has requested reimbursement for 50% of hotel

[5] Class Counsel has requested only half of the costs jointly incurred on behalf of the injunctive relief and damages be awarded out of the damages class settlement fund.

costs ($2,471.60) for a total of nine room nights, at an average total (100%) cost of $549.24. Class Counsel is also requesting $911.72 from the common fund for one half the costs incurred for business-related meals and for one half the costs incurred for overtime meals for attorneys working on this litigation. *Id.* Additional detail supporting Class Counsel's costs can be found in the concurrently filed Kessler Declaration and Exhibit B to that Declaration. These costs do not include the costs incurred for Class Counsel's appearance at the Final Approval Hearing on February 26, 2026.

Class Counsel has not sought any fact discovery costs related this case, as Class Counsel was engaged after the close of fact discovery, and thus the common fund will not be used to pay for those costs. Because the fees and cost being sought only cover the fees and costs of Class Counsel, and not the fees and costs incurred by the prior counsel for Plaintiffs, the class fund is avoiding many costs that would have been sought had prior counsel for Plaintiffs remained in the case.

### D. Plaintiffs' Request of $20,000 in Service Awards for the Class Representatives is Reasonable

No objection has been raised to Plaintiffs' request to award the two Class Representatives $10,000 each from the settlement fund for their extensive support in this litigation. Plaintiffs respectfully refer the Court to its prior Motion for the reasons why this request is reasonable in light of the substantial amount of work performed by the two Class Representatives. *See* ECF No. 428 at 24–25.

In total, Damages Class Members are still receiving a substantial monetary recovery of $3,279,333.20 after accounting for Plaintiffs' entire request for attorneys' fees, costs, and service awards—providing class members with 142% of claimed damages for the 2018 Damages Class and 90% of claimed damages for the 2019 Damages Class. *See supra* at 8–9. Accordingly, Plaintiffs request for reimbursement of its reasonable litigation expenses in the amount of $170,957.70 is reasonable.

## IV. CONCLUSION

For the reasons stated above, Class Counsel respectfully requests the Court grant final approval of the settlement and grant Class Counsel's full requests for fees, costs, and service awards for the Class Representatives.

Dated: March 6, 2026

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Jeffrey L. Kessler*

Jeffrey L. Kessler (*pro hac vice*)
Johanna Rae Hudgens (*pro hac vice*)
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166-4193
Telephone: (212) 294-6700
Facsimile: (212) 294-4700
jkessler@winston.com
jhudgens@winston.com

Jeanifer E. Parsigian (SBN 289001)
WINSTON & STRAWN LLP
101 California Street, 34th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400
jparsigian@winston.com

*Class Counsel and Counsel for Plaintiffs Thomas A. Shields and Katinka Hosszú*