LATHAM & WATKINS LLP
  Christopher S. Yates (SBN 161273)
  Aaron T. Chiu (SBN 287788)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Email:  Chris.Yates@lw.com
        Aaron.Chiu@lw.com

*Attorneys for Defendant*
*World Aquatics*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THOMAS A. SHIELDS AND KATINKA HOSSZU, on behalf of themselves and all others similarly situated,<br><br>               Plaintiffs,<br><br>   vs.<br><br>WORLD AQUATICS,<br><br>               Defendant. | CASE NO. 3:18-cv-07393-JSC<br><br>**DEFENDANT WORLD AQUATICS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

      A.    The Settlement Agreement And Plaintiffs' Initial Fee Application ..................... 2

      B.    The ISL v. World Aquatics Trial ....................................................................... 3

      C.    The Final Settlement Approval Hearing ............................................................. 4

      D.    Plaintiffs' Supplemental Briefing ...................................................................... 5

            1.    Class Counsel's Newly Estimated "Value" Of The
                  Injunction ............................................................................................ 6

            2.    Additional Information Regarding Fees ................................................. 7

            3.    Additional Information Regarding Costs ................................................ 8

III.  ARGUMENT ....................................................................................................... 8

      A.    Class Counsel's Valuation of the Injunctive Relief Is Overstated ..................... 9

            1.    There Is No Basis To Assume That ISL Would Have Held
                  10 More Events In 2019 And Paid Additional Prize Money ................... 11

            2.    There Is No Basis For Class Counsel's Arbitrary Decision
                  To Halve The Yearly Total Increase ..................................................... 11

            3.    Class Counsel's Newly Claimed Injunction Value
                  Improperly Cherry-Picks 2019 Damages ............................................. 12

      B.    Class Counsel Still Fail To Distinguish Injunctive Work from
            Damages Work And To Provide Sufficient Detail ............................................. 12

            1.    Class Counsel's Supplemental Fee Submission Still
                  Contains Inappropriate Summaries Devoid Of Actual
                  Detail To Allow For An Evaluation Of The Reasonableness
                  Of Attorney Time Expended ................................................................. 13

            2.    Class Counsel's Fee Submissions Are Inaccurate And
                  Incomplete .......................................................................................... 14

            3.    Class Counsel's Supplemental Cost Submissions Are Still
                  Insufficient ......................................................................................... 15

      C.    Class Counsel's Policy Arguments Are Unavailing ........................................... 16

      D.    The Court Should Deny Class Counsel's Full Request for Fees
            And Costs ....................................................................................................... 17

IV.   CONCLUSION .................................................................................................... 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1986) ........................................................................................13

*Energy Mgmt. Collab., LLC v. Darwin Tech LLC*,
   2024 WL 2335629 (C.D. Cal. Apr. 25, 2024) ..................................................................13

*Hamilton v. Juul Labs, Inc.*,
   No. 20-cv-03710-EMC, 2021 WL 5331451 (N.D. Cal. Nov. 16, 2021) ..............................11

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983)........................................................................................................13

*In re California Gasoline Spot Market Antitrust Litigation*,
   3:20-cv-03131-JSC, 2025 (N.D. Cal.) ..............................................................................15

*In re Capacitors Antitrust Litig.*,
   No. 3:17 md 02801 JD, 2018 WL 4790575 (N.D. Cal. Sept. 21, 2018)...............................15

*Kim v. Allison*,
   8 F.4th 1170 (9th Cir. 2021) .........................................................................................1, 9

*Norton v. Strategic Staffing Solutions L.C.*,
   3:23-cv-06648-JSC, 2025 (N.D. Cal.) ..............................................................................15

*Relente v. Viator.*,
   2015 WL 3613713 (N.D. Cal. June 9, 2015).................................................................16, 17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .........................................................................................9, 12

**STATUTES**

15 U.S.C.
   § 15.................................................................................................................................16
   § 26.................................................................................................................................16
   § 4304(a)(1) ....................................................................................................................16

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

ii

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

## I.    INTRODUCTION

Plaintiffs' supplemental brief does nothing to address the core concerns raised by the Court and advances new justifications for an unchanged fee request that lacks any basis in the record or the established principles governing attorneys' fees in class actions.

*First*, rather than reasonably modifying their requested fees, Class Counsel instead attempt to support their original, outsized request by wildly inflating the value of the injunction based on speculative projections that were severely undermined by real world events following World Aquatics' own rules clarification in January 2019 and the trial record in *International Swimming League v. World Aquatics*.  Class Counsel now try to claim the injunction should be valued at a staggering $46 million, despite unrefuted and irrefutable evidence that:

(1)    Dr. Rascher's relevant opinion and testimony regarding but-for ISL events and compensation was discredited at the ISL trial;

(2)    ISL held swimming events and paid prize money in 2019, 2020, and 2021 after World Aquatics' January 2019 rules clarification (and subsequent amendment to General Rule 4 in July 2019)—years *before* the injunction was agreed to in 2025—thus undermining any connection between the injunction and more ISL events and compensation for swimmers;

(3)    ISL still owes Class Members *$7 million* in prize money from the 2021 season—14% of Class Counsel's newly claimed $46 million injunction value; and

(4)    ISL has not held a single swimming competition since the 2021 season.

Class Counsel's post-hoc and unsupported inflation of the injunction's value is merely an attempt to engineer a "reasonable" 8% of claimed recovery figure rather than the nearly 90% that it actually represents.  The Ninth Circuit has held that district courts "should generally avoid valuing hard-to-measure injunctive relief altogether," given "the danger that parties will overestimate the value of injunctive relief in order to inflate fees." *Kim v. Allison*, 8 F.4th 1170, 1181 (9th Cir. 2021). That is precisely what is happening here with Class Counsel's newly made up and wholly unsupported injunction value numbers.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

*Second*, Class Counsel still seeks an outsized "damages" fee recovery at the expense of distributions to the swimmer classes without any meaningful attempt to allocate between work done in support of damages versus injunctive relief. Plaintiffs separately negotiated and World Aquatics agreed to a $3,000,000 "Injunctive Relief Fee" under the settlement. Yet Class Counsel still make no effort to explain what work was performed in furtherance of class damages issues to justify an award of $1,156,771—25% of the damages fund—beyond the Injunctive Relief Fee. Without such a distinction, there is no basis to ensure Class Counsel is not receiving double credit for injunctive work at the expense of the damages classes.

*Last*, despite the Court's unequivocal instruction and the myriad precedents in this District and the Ninth Circuit, Class Counsel still fail to substantiate their fee and costs requests with any actual billing records or invoices, or otherwise justify their claimed fees and costs. Indeed, Class Counsel submitted summary documents containing material inaccuracies, such as claiming over 1,500 attorney hours worked *in 2022* on a Ninth Circuit appeal, even though there was no appeal until after this Court issued its summary judgment order *in January 2023*. Far from being the sort of substantiation of fees that courts require to make a reasonableness determination, the supplemental submission and its errors only call into further question the accuracy and legitimacy of Class Counsel's claimed lodestar and fees.

Given Class Counsel's continued failure to substantiate and support the reasonableness of the additional $1.15 million in fees requested, the Court should deny Plaintiffs' application for those additional fees, and grant a limited amount of costs, reduced in light of the insufficient documentation provided. The guaranteed $3 million in fees that will be paid to Class Counsel per the settlement agreement, plus some modicum of costs, is more than reasonable.

## II.   BACKGROUND

### A.   The Settlement Agreement And Plaintiffs' Initial Fee Application

On August 29, 2025, the parties entered the Settlement Agreement containing injunctive relief and an agreed class damages fund totaling $4,627,084. Settlement Agreement, ECF No. 423-2 ¶ 1(j). This Court preliminarily approved the Settlement Agreement and ordered Plaintiffs to submit a motion for attorneys' fees "including declarations and detailed billing

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

summaries," "information about the injunctive relief attorneys' fees separately agreed upon by the parties," and "an analysis of that amount and the amount sought here in relation to their lodestar." Order, ECF No. 427 at 12–13.

On October 28, 2025, Plaintiffs filed their motion for attorneys' fees, attaching a declaration from Class Counsel, Jeffrey Kessler, which provided a summary of the claimed lodestar and expenses. *See* ECF No. 428-2. Mr. Kessler stated that the lodestar "for litigating the claims in the above-captioned action is $6,758,419.50" and that this amount was calculated at the current hourly rates of the firm Winston and Strawn LLP. *Id*. ¶¶ 50–51. Mr. Kessler attached to his declaration a "lodestar chart . . . reflecting work done litigating the claims in the above-captioned case, including the timekeepers who worked on this matter, their total hours, their current hourly billing rates and their total lodestar based on current billing rates." *Id.* ¶ 55. This two-page document summarized each timekeeper's hours over the entire course of the case through October 27, 2025, with no description of what tasks were performed. *See* Ex. A to Kessler Decl., ECF No. 428-3. No invoices were submitted. Class Counsel also attached a one-page summary chart of Plaintiffs' purported costs broken down by category of expense, but also without any underlying invoices. *See* Ex. B to Kessler Decl., ECF No. 428-4.

World Aquatics objected to Plaintiffs' request. *See* Def. Opp. to Pls.' Mot., ECF No. 434. Specifically, World Aquatics challenged Class Counsel's use of injunctive relief to justify additional damages fees when that work had already been accounted for in the $3,000,000 agreed-upon Injunctive Relief Fee, *id.* at 3–6, and noted that Class Counsel's lodestar submission did not adequately distinguish injunctive work from damages work so that damages fees could properly be allocated to damages work, *id.* at 7–8.

**B.    The *ISL v. World Aquatics* Trial**

Following the completion of briefing on Plaintiffs' motion for fees and before the final approval hearing, this Court presided over the trial in the parallel litigation between the International Swimming League ("ISL") and World Aquatics. Plaintiffs' and ISL's expert, Dr. Daniel Rascher, testified at trial. *ISL v. World Aquatics* Trial Tr. 631:25–669:15. The purported purpose of Dr. Rascher's testimony was to opine that World Aquatics' conduct resulted

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

in a reduction in output of top-tier swimming competitions by causing ISL to hold fewer events. Dr. Rascher's testimony, however, was substantially limited by the Court at trial when it became apparent that the crux of his opinions would usurp the jury's fact-finding role as to causation. *See id.* 640:10. Dr. Rascher did not offer an opinion regarding whether World Aquatics' General Rule 4 ("GR 4") and its application caused or resulted in fewer ISL events in 2019. *See id.* 642:7–21. Dr. Rascher's only admissible testimony at trial was that the number of events ISL actually held in 2019 was fewer than what certain ISL documents listed—namely, that 7 ISL events in 2019 is in fact less than 17. *See id.* 646:12–13; 659:13–16 ("Q: You're not offering an economic opinion regarding the number of events that would have taken place in 2019, are you? A: Not on the number of events."). And the jury was not asked to find and made no determination as to how many events ISL would have held but for World Aquatics' conduct. *See Int'l Swimming League Ltd. v. World Aquatics*, No. 18-cv-7394-JSC (N.D. Cal.), Jury Verdict, ECF No. 576**.**

The jury was also presented with evidence that ISL's failure to hold additional events could be attributed to its mismanagement, and that, despite holding events in 2019, 2020, and 2021, ISL still owed swimmers significant sums of unpaid prize money. Ben Allen, ISL's commissioner, confirmed that ISL had not held any swimming competitions in 2022, 2023, 2024, or 2025. *ISL v. World Aquatics* Trial Tr. 872:17–19. Mr. Allen testified that ISL had failed to pay many swimmers for the events they competed in and admitted that, as of the date of his testimony, ISL still owed "around $7 million" of prize money to swimmers from ISL's 2021 season. *Id.* 870:25–872:13; 882:1–19. Mr. Allen could not provide a date when ISL would stage its next season. *See, e.g.*, Trial Tr. 878:8–10.

The jury returned a verdict finding in favor of ISL on liability but only awarding ISL $1 in nominal damages, despite ISL's request for over $40 million in pre-trebled damages. *See Int'l Swimming League Ltd. v. World Aquatics*, No. 18-cv-7394-JSC (N.D. Cal.), Jury Verdict, ECF No. 576**.**

### C.    The Final Settlement Approval Hearing

At the February 26, 2026, hearing on Plaintiffs' motion for final approval, the Court addressed Plaintiffs' motion for fees and costs. *See* Min. Entry, ECF No. 437. The Court

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

expressed skepticism over Plaintiffs' attempt to consider the requested $1.1 million fee without also considering the $3 million Injunctive Relief Fee and evaluating the total award under an unprecedented hybrid percentage-of-the-fund/lodestar method.  The Court noted that it must "consider [the fees] all together" in evaluating the reasonableness of the fee request.  Tr. of Feb. 26, 2026 Hrg. at 12:6–11.

The Court asked Class Counsel "[w]hat is the difference between the injunctive relief that is in the settlement agreement and the state of affairs in January 2019?", Tr. of Feb. 26, 2026 Hrg. at 4:14–16, and "what is the value of the injunctive relief?", *id.* at 11:16–17.  Class Counsel was unable to articulate the difference from the status quo or provide a value of the injunctive relief at the hearing.  *See id.* at 6:4–10, 11:19–22; 14:5–15:20.  When Class Counsel suggested that "every two years there would be at least $3 million of value," the Court noted that "we haven't seen that, have we, even though that's been available.".  *Id.* at 14:20–15:11.

Turning to the claimed lodestar, the Court noted that it "hadn't the foggiest idea how [Class Counsel] incurred that $6 million," in fees and Class Counsel promised that they would "give [the Court] further detail" in subsequent briefing.  Tr. of Feb. 26, 2026 Hrg. 20:17–20.  The Court also asked for detailed records to substantiate the costs sought by Class Counsel.  *Id.* at 16:1–8 ("My preliminary order said give me details . . . The travel. What's that for? Did you fly – what class did you fly? What hotels?").  The Court ordered supplemental briefing from both parties.  Min. Entry, ECF No. 437.

**D.      Plaintiffs' Supplemental Briefing**

On March 6, 2026, Class Counsel filed a supplemental brief in support of their motion for attorneys' fees.  *See* Pls.' Suppl. Br. in Supp. for Mot. for Attys' Fees, Expenses, & Service Awards ECF No. 442.  In that motion, Class Counsel provided: (1) an assertion that the injunctive relief would value in excess of $46 million over the next ten years, *id.* at 4–8;  (2) an attorney declaration, Kessler Decl., ECF No. 442-1, and accompanying charts of attorney and non-attorney hours, separated by year and by name, with narrative descriptions of general tasks undertaken by the group for a total of $6,758,419.50, Ex. A, ECF No. 442-2 ("Exhibit A") at 1; and (3) a description of purportedly "necessary" costs for prosecution of the damages claim, subject to an arbitrary

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

reduction of 50% to "allocate the joint costs" between injunctive and damages classes for a total of $170,957.70, *see* Pls.' Suppl. Br., ECF No. 442 at 2, 18–20; Ex. B, ECF No. 442-3 ("Exhibit B"). Class Counsel claimed that, once accounting for the new valuation of the injunctive relief, "Plaintiffs' total attorneys' fees request of $4,156,771 is 8.13% of the total estimated settlement value of $51,148,944 . . . well below the 25% benchmark in the Ninth Circuit." Pls.' Suppl. Br., ECF No. 442 at 2. As with the previous submission, Class Counsel provided no invoices or receipts to support the information in either Exhibits A or B.

### 1.    Class Counsel's Newly Estimated "Value" Of The Injunction

Class Counsel "estimate[d] that the injunctive relief will likely provide swimmers with at least $46,521,860 in economic value through additional prize money and appearance fees over the next ten years." Pls.' Suppl. Br., ECF No. 442 at 4.[1] This, Class Counsel claims, "is based on Dr. Rascher's analysis of the additional fees and prize money that ISL paid or would have paid to swimmers in 2019 and the increase in compensation paid by World Aquatics in response to ISL's entry into the market." *Id.* (citing Rascher Class Cert. Rep. ¶ 35; App. A.). Specifically, Dr. Rascher estimated that ISL would have paid swimmers an additional $2,754,372 dollars in prize money and appearance fees for the additional 10 events that he posits would have been held but for World Aquatics' conduct. Rascher Reply Damages Rep. Ex. 5 ($274,437 per event). Class Counsel cited to Dr. Rascher's observation that ISL paid swimmers $3.6 million in prize money and appearance fees in 2019, and World Aquatics increased total swimmer compensation after ISL's entry into the market by approximately $3 million. Pls.' Suppl. Br., ECF No. 442 at 7 (citing Rascher Class Cert. Rep. ¶ 35).[2] According to Plaintiffs, these amounts together represent $9,304,372 in additional money per year that Plaintiffs estimate likely could be earned in the future

---

[1] Class Counsel describe the key provisions of the injunctive relief as (1) the promise of no restrictions or penalties related to a swimmer or federation's participation in independent events by World Aquatics; (2) the conditional recognition of results of independent events by World Aquatics; (3) monetary value of prize money that would have been paid for additional events in 2019 and of increased prize money that was actually paid in 2019. Pls.' Suppl. Br., ECF No. 442 at 4–8.

[2] Class Counsel does not provide information about whether World Aquatics also paid additional money in 2020 or 2021, and if so, the amount of those increases, when ISL was also hosting events.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

with the Injunctive Relief Settlement. *Id.* Class Counsel then divided the $9.3 million by two, and multiplied that figure by the ten years, to reach an injunctive relief value of $46,521,860. *Id.*

### 2.   Additional Information Regarding Fees

Class Counsel provided "summary lodestar charts for each calendar year that Winston worked on the above-captioned matter." Kessler Decl., ECF No. 442-1 at 2; *see also* Ex. A, ECF No. 442-2. Class Counsel described this as "includ[ing] the work performed by each and all of the attorneys, and supported by the staff, that resulted in the hours spent by each attorney and staff member for each year, as contained in the chart." Pls.' Suppl. Br., ECF No. 442 at 12; Kessler Decl., ECF No. 442-1 ¶ 5. Class Counsel also caveated the lodestar charts, noting that after the charts came a description of "the work performed by the team (attorneys and staff) for that year" but "[t]o avoid redundancy of tasks for attorney[s], these are only listed once and, unless otherwise noted, were performed by all individuals listed in the chart." Ex. A, ECF No. 442-2 at 1 n.1.

As described, each summary chart of hours was followed by a bullet point list of tasks performed, as summarized below:

- **2021**: Class Counsel claimed $161,028 in fees for 116.6 hours of attorney work for analyzing prior filings and issues regarding class certification, preparing Winston's application for Class Counsel, and preparing for the class certification hearing. Ex. A, ECF No. 442-2 at 1.

- **2022**: Class Counsel claimed $3,222,732 of fees from 2,331 attorney hours and 294 staff hours from 2022 were incurred for briefing the Ninth Circuit appeal of the summary judgment order entered in January 2023, preparing for oral argument that occurred in 2024, reviewing the discovery record, working with Dr. Rascher, and briefing oppositions on expert exclusions and cross-motions on summary judgment. Ex. A, ECF No. 442-2 at 2–3.

- **2023**: Class Counsel claimed $1,824,870 in fees for 1,454 hours of attorney work and 76.20 hours of staff work for legal research and briefing of Ninth Circuit appeal and preparing for oral argument. Ex. A, ECF No. 442-2 at 5.

- **2024**: Class Counsel claimed $320,989 in fees for 271 hours of attorney work and 5

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

hours of staff work for continued preparation for and participation in Ninth Circuit argument, revising the renewed motion for class certification that had previously been drafted, and early trial preparation. Ex. A, ECF No. 442-2 at 6.

- **2025**: Class Counsel claimed $1,273,993 in fees for 1,098 hours of attorney work and 59 hours of staff work for preparation and filing of renewed motion for class certification to which World Aquatics stipulated, settlement discussions, mediation preparation, mediation attendance, working with settlement administrator, and preparing the application for attorneys' fees. Ex. A, ECF No. 442-2 at 7–8.

### 3. Additional Information Regarding Costs

In response to the Court's request for additional information regarding fees, Class Counsel provided "additional details for costs incurred by Class Counsel during the litigation" in Exhibit B. Kessler Decl., ECF No. 442-1 ¶ 57; Ex. B, ECF No. 442-3. Exhibit B is a two-page document that lists various categories of costs, including jury consultant fees, airfare, hotels, taxis, and administrative costs like copies, wi-fi while traveling, and discovery services. Ex. B, ECF No. 442-3 at 1–2. The document does not subdivide these costs among tasks, attorneys, or stages of the case (*e.g.*, class certification or summary judgment). *See id.* The entry for flights and hotels, for example, states the total number of trips taken and hotel nights between Mr. Kessler and Ms. Hudgens for "[h]earings/oral argument" and "required in-person meet and confer," and provides an average cost for each flight or hotel night. *Id.* at 1. These costs are aggregated and divided by two to allocate between the injunctive class and the damages class. Kessler Decl., ECF No. 442-1 ¶ 52. The costs also include the fees for Plaintiffs' damages expert, Dr. Rascher. *Id.* ¶ 53. Class Counsel has provided no invoices or receipts with its submission.

## III. ARGUMENT

Class Counsel's response to the Court's request for supplemental information fails to deliver. They submit a completely arbitrary and unsupported value for the injunctive relief that is undermined by unrefuted evidence at trial that after World Aquatics' January 2019 press release, ISL was free to—and did—hold events in 2019, 2020, and 2021, with no evidence that competition or output of ISL events was diminished. And ISL *still* owes swimmers prize money from the 2021

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

season and has failed to hold a season since. Given the facts, the claim that the total attorneys' fees total only 8% of the recovery value is entirely speculative and wildly inflated. Rather, the requested fees still approach 90% of the recovery value.

Moreover, Class Counsel's fees submission still fails to present any detail about how they accrued $6 million in fees, much less about how those fees were allocated between work attributable to damages and work attributable to injunctive relief. The submission contains insufficient details regarding who performed the work *and* contains inaccuracies that call into question the outright reliability of their claimed lodestar.

Class Counsel's cost submission—which does not include even a single invoice—fares no better. The Court asked for specific information yet Class Counsel again failed to provide even the most basic information. Like the fees submission, the cost submission lacks sufficient detail for the Court to evaluate the appropriateness of the costs.

Finally, the policy concerns Class Counsel raise are unfounded. Nothing about Class Counsel's failure to provide the bare minimum of information could be construed to undermine the policy reasons for awarding attorneys' fees in antitrust cases. This is particularly so where Class Counsel was previously paid $350,000 in attorneys' fees (ECF No. 428-2 ¶ 50) and subsequently negotiated a flat $3 million fee, untethered to either the value of the injunction or work performed, as part of a settlement agreement.

### A.    Class Counsel's Valuation of the Injunctive Relief Is Overstated

"[A] district court must exercise caution when using the value of injunctive relief to determine proportional attorneys' fees and should generally avoid valuing hard-to-measure injunctive relief altogether, because of the danger that parties will overestimate the value of injunctive relief in order to inflate fees." *Kim,* 8 F.4th at 1181 (internal quotation omitted). Valuing injunctive relief for this purpose should only occur "in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained." *Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003).

Here, Class Counsel has provided the Court with a valuation of injunctive relief that beggars belief and is far from an accurate assessment of monetary value to individual class

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

members. It is instead a transparent attempt to justify the total request fee award of over $4 million by shrinking the percentage of recovery from almost 90% to 8%. *See* Pls.' Suppl. Br., ECF No. 442 at 2 ("Plaintiffs' total attorneys' fees request. . . is 8.13% of the total estimated settlement value . . . well below the 25% benchmark in the Ninth Circuit.").

The valuation is fatally flawed. In the first place, as of January 15, 2019, there was nothing standing in the way of ISL hosting as many events as it wished with full swimmer participation. As of that date, World Aquatics made clear that it would not punish swimmers for participating in events held by third-party organizations like ISL. There is no basis for any claim that the injunctive relief agreed to as part of the settlement *in 2025* was what caused increased competition and prize money for swimmers *in 2019*—making the value of the injunctive relief insignificant. It is nonsensical, then, that Class Counsel claim such extravagant value for their injunctive relief from 2026–2035 when the most substantive portion of that relief was achieved well prior to the 2025 settlement—*i.e.* the rule clarification that World Aquatics broadcast to the swimming world in January 2019 and the subsequent repeal of the rule in July 2019.[3]

But even if the injunctive relief were to be deemed to have some value beyond maintaining the status quo as of January 2019, Plaintiffs' newfound valuation is based on flawed, speculative assumptions and undermined by the actual evidence from the ISL trial. Plaintiffs base their estimate on an expert's opinion that was thoroughly debunked at trial, supplemented with actual payments from 2019 from both ISL and World Aquatics. Plaintiffs then divided this number in half for no apparent reason. Class Counsel now estimate that Plaintiffs would have earned an additional $9,304,372 per year for ten years in which ISL has no concrete plans to hold events. Pls.' Suppl. Br., ECF No. 442 at 7. Undisputed trial evidence showed that ISL had no plans to host more events than it did, nor did ISL have plans to hold events in 2022 and beyond—and that ISL still owes swimmers $7 million. *See ISL v. World Aquatics* Trial Tr.; 872:17–19; 878:8–10; 882:4–19. Plaintiffs' estimate is wildly overblown and does not even come close to the type of

---

[3] Class Counsel has not provided a basis for valuation of any injunctive relief beyond the non-enforcement of General Rule 4.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

objective, "accurately ascertained" valuation that Ninth Circuit law requires. *Hamilton v. Juul Labs, Inc.*, No. 20-cv-03710-EMC, 2021 WL 5331451, at *9 (N.D. Cal. Nov. 16, 2021).

1. <u>There Is No Basis To Assume That ISL Would Have Held 10 More Events In 2019 And Paid Additional Prize Money</u>

Class Counsel's calculation of the $9.3 million number is based in part on Dr. Rascher's "opinion" that, but-for World Aquatics' conduct, ISL would have held ten additional events in 2019, each with about $270,000 in prize money. Dr. Rascher arrived at this "opinion" by "project[ing] [the] but-for number of events from [ISL's] contemporaneous business plans." Rascher Damages Reply ¶ 3. But as this Court knows from trial, Dr. Rascher did nothing to validate or confirm those projections, taking them at face value. He also assumed for purposes of his opinion that ISL's failure to achieve that number of events in 2019 was entirely due to World Aquatics' alleged conduct. And in doing so, Dr. Rascher outright ignored undisputed evidence that ISL's projections were rejected uniformly by every sports marketing agency that ISL consulted in 2018. *See, e.g.*, *ISL v. World Aquatics* Trial Tr. 653:19–655:16.

Ultimately, Dr. Rascher did not actually give the opinion Plaintiffs claim and rely on. As a result, there is no basis for the Plaintiffs' assumption that there would have been ten additional events at which swimmers would have earned $2.7 million more in 2019, much less that the $2.7 million increase would have continued for the following ten years. In fact, the trial testimony revealed that, as of January 2026, ISL still owed "around $7 million" of prize money to swimmers from the 2021 season. *Id.* 882:4–19. ISL's failure to pay swimmers for the events that it could and did host as a result of World Aquatics' rule clarification in January 2019 begs the assumption that, *even if* ISL held additional events, it would not have paid swimmers any more than it already did. Plaintiffs have not provided any reason to believe otherwise.

2. <u>There Is No Basis For Class Counsel's Arbitrary Decision To Halve The Yearly Total Increase</u>

Once Class Counsel reached its $9.3 million yearly damages figure, Class Counsel then divided that number by two without any quantitative basis. Pls.' Suppl. Br., ECF No. 442 at 7. The only basis Class Counsel provides is that this division is "being conservative." *Id.* at 8. This

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

is the exact concern the Ninth Circuit had when it noted that "because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund." *Staton*., 327 F.3d at 974.  Class Counsel here knew that the $9.3 million yearly figure was too high and so attempted to reduce the total under the guise of conservatism.  But an arbitrary number, even halved, is still arbitrary.

          3.      Class Counsel's Newly Claimed Injunction Value Improperly Cherry-Picks 2019 Damages

Class Counsel's valuation also conveniently skips over the 2020 through 2025 seasons. Pls.' Suppl. Br., ECF No. 442 at 7.  ISL held competitions in 2020 and 2021 and did not have a competition season at all from 2022–2025.  Trial Tr. 872:17–19.  It is nonsensical for Class Counsel to begin the completely speculative valuation of the injunctive relief using only 2019 numbers, and then start the ten years running in 2026 when ISL has not even announced firm plans for a season.[4]  *See* Trial Tr. 872:11–16.  The value of injunctive relief based on the opening of a market should be realistic; the fact that the new market entrant failed after three seasons with open access to the market is important context for that valuation.  *See Staton*, 327 F.3d at 974 (requiring value to be "accurately ascertained").  What Plaintiffs have attempted to do here is far from accurate, and it seems their purpose is to make their fees seem more reasonable in comparison. *See id*.  Again, this is the sort of manipulation that courts reject.  *Id.*

**B.**    **Class Counsel Still Fail To Distinguish Injunctive Work from Damages Work And To Provide Sufficient Detail**

Class Counsel do not dispute that the additional $1.1 million in fees they seek will come out of the Class Members' damages class recovery.  Pls.' Suppl. Br., ECF No. 442 at 12.  Yet they still have not answered the Court's question: "[H]ow [Class Counsel] incurred that $6 million" they claim as a lodestar.  Tr. of Hrg. on Feb. 26, 2026 at 20:17–18.  And they have certainly not answered the question of what percentage of the lodestar amount should fairly be counted as "damages" work.  Instead of providing a reasonable description of the time Class Counsel and

---

[4] Class Counsel rely on a December 2025 announcement from ISL that it is going to relaunch in 2026.  Pls.' Suppl. Br., ECF No. 442 at 8.  As of the date of this filing, there is no update on ISL's website or social media about a 2026 season.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

their staff spent over the past 5 years for which they now claim $6 million, Class Counsel provide a year-by-year breakdown that is hardly better than the previous submission, as detailed below.  In short, Class Counsel have still provided no defensible basis for awarding 25% of the damages recovery as attorneys' fees.

It is well established that a fee applicant "bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986) (internal citation omitted); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed."); *Energy Mgmt. Collab., LLC v. Darwin Tech LLC*, 2024 WL 2335629, at *10 (C.D. Cal. Apr. 25, 2024) (holding that where movant's "declaration merely summarizes total fees billed without attaching timesheets or describing the nature of the time billed . . . [Movant] has failed to meet its burden of establishing that the requested fees are reasonable and necessary.").

       1.    <u>Class Counsel's Supplemental Fee Submission Still Contains</u>
<u>Inappropriate Summaries Devoid Of Actual Detail To Allow For An</u>
<u>Evaluation Of The Reasonableness Of Attorney Time Expended</u>

Class Counsel's submission simply summarizes fees, precluding the Court from evaluating the time spent on each task.  Class Counsel have a footnote clarifying that "to avoid redundancy of tasks for attorney, these are only listed once and, unless otherwise noted, *were performed by all individuals listed in the chart*."  Ex. A, ECF No. 442-2 at 1 n.1 (emphasis added).  Five of the ten associates billed less than 35 hours to this matter in 2022. *Id*. at 2.  It is unreasonable to believe that each of those five attorneys worked on the twelve generic attorney tasks (ranging from reviewing the discovery record to drafting a motion for summary judgment) listed below the 2022 summary chart. *Id.* at 4.

The submission raises other questions.  Class Counsel filed numerous briefs in 2022 and notes that many of those were drafted "together with counsel for ISL."  Ex. A, ECF No. 442-2 at 3; Pls.' Suppl. Br., ECF No. 442.  How much of the work was done by Class Counsel and how much by ISL's counsel?  Or take 2025, where over 1,000 attorney hours were logged, including

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

roughly 400 partner hours. Ex. A, ECF No. 442-2 at 8. Where was this time spent when all Class Counsel did was renew a motion for class certification that was in effect identical to the previously filed motion before moving into settlement negotiations? *See id*. at 7. Without any allocation of time by task, it is impossible for the Court to tell.

Worse than block billing, this slab billing prevents the Court from identifying overstaffing, administrative time by attorneys, or duplication of work. It also does not allow the Court to properly allocate time spent between damages work and injunctive work.

### 2. Class Counsel's Fee Submissions Are Inaccurate And Incomplete

The information provided further appears to be inaccurate, suggests inefficient staffing, and raises questions about the legitimacy of Class Counsel's claimed lodestar. For example, Class Counsel claim that the over $3 million of fees from 2022 were incurred for Ninth Circuit briefing and oral argument preparation, reviewing the discovery record, working with Dr. Rascher, and briefing oppositions on expert exclusions and cross-motions on summary judgment. Ex. A, ECF No. 442-2 at 3. But there is no way that Class Counsel could have billed 1500 hours briefing the Ninth Circuit appeal in 2022 because ***there was no appeal in 2022***. This Court did not issue its order on summary judgment until January 2023, only after which Plaintiffs filed an appeal to the Ninth Circuit. Kessler Decl., ECF No. 442-1 ¶ 24. Class Counsel also includes a nearly identical description of the Ninth Circuit briefing work for fees supposedly incurred in 2023. Ex. A, ECF No. 442-2 at 5.

That same document shows that in 2022, thirteen attorneys (three partners and ten associates) cumulatively billed over 2,300 hours, with three partners logging over half (over 1200) of those hours, apparently to work on a then non-existent Ninth Circuit appeal. *Id.* 2021 and 2023 have similar ratios of associate-to-partner billing, and in all years it is impossible to tell how much partner time was spent on any particular task. These records obfuscate, rather than clarify, what work was done on behalf of the damages class, and provide the Court with no way to evaluate the reasonableness of the requested fees.

Moreover, Class Counsel ignored the Court's specific suggestion that they look at fee applications in this District. *See* Tr. of Hrg. on Feb. 26, 2026 at 24:17–23. A quick review of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

recent successful fee applications to this Court show that counsel in those cases appended either detailed billing records or at least provided total hours per person per category of task (*i.e.*, investigation, discovery, mediation). *See, e.g., Norton v. Strategic Staffing Solutions L.C.*, 3:23-cv-06648-JSC, 2025 (N.D. Cal.), ECF Nos. 45-3, 45-8; *In re California Gasoline Spot Market Antitrust Litigation*, 3:20-cv-03131-JSC, 2025 (N.D. Cal.), ECF No. 621-2.  Class Counsel's submission of year-by-year hours per person, without even an attempt to assign which tasks were performed by each person, does not meet this basic standard.

3.      Class Counsel's Supplemental Cost Submissions Are Still Insufficient

Class Counsel's submission on costs fares no better.  The revised cost submissions (Ex. B, ECF No. 442-3) do not satisfy the Court's simple requests regarding flights and hotels.  Certainly, the submission states that Class Counsel took nine flights with an average flight cost of $1,500 per flight. Ex. B, ECF No. 442-3 at 1.  But it does not specify the class.  Likewise, the submission claims that Class Counsel incurred costs for nine hotel nights, at an average of $549 per night, but did not provide the name of the hotel or actual per-night charges.  *Id.*  Again, Class Counsel provided no invoices or receipts to validate that these costs were actually incurred.[5]  Nor have they provided answers to the specific questions the Court asked.

As before, given the size of the fee sought and the inherent risk of overlap between injunction-related and damages-related efforts (and potential double-dipping), Class Counsel's continued refusal to provide detail undermines the reliability of the lodestar itself and undermines the purpose of the lodestar and cross-check exercise—to ensure that attorneys are compensated for work they did in furtherance of the outcome.  Put another way, the compensation must remain reasonable in relation to the benefit actually conferred on the class—in this case, the damages class. *See In re Capacitors Antitrust Litig.*, No. 3:17 md 02801 JD, 2018 WL 4790575, at *1-*2 (N.D. Cal. Sept. 21, 2018).  These considerations are similarly at stake when evaluating Class Counsel's costs, which likewise come out of the damages recovery.

---

[5] Compare Class Counsel's "Exhibit B" summary chart submissions in support of costs at Ex. B, ECF No. 428-4 and Ex. B, ECF No. 442-3 with World Aquatics' submission in support of costs at ECF Nos. 431-6, 431-12, 431-15, 431-18 (compiled invoices for each requested expense).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

### C.      Class Counsel's Policy Arguments Are Unavailing

Class Counsel claim that evaluating the attorneys' fees as a percentage of the damages recovery without also including the value of the injunctive relief (separate from the Injunctive Relief Fee) would "undermine" the public policy of encouraging class representation, citing to *Relente v. Viator.*  Pls.' Suppl. Br., ECF No. 442 at 9–10.  But no such undermining would occur here.  First, Class Counsel initially collected $350,000 in attorneys' fees "[p]rior to continuing the case in the absence of outside funding" ECF No. 428-2 ¶ 50, presumably from ISL.  Then, Class Counsel successfully negotiated a separate Injunctive Relief Fee of $3,000,000 that nearly matches Plaintiffs' recovery.  If the Court does not approve that separate fee, and instead "consider[s] it all together," Tr. of Hrg. on Feb. 26, 2026 at 12:8–9, then the injunctive relief *will* be considered "together" with the damages relief when evaluating the fee award.  In any event, the *Relente* case undercuts Class Counsel's position:  In *Relente*, the plaintiffs' law firms both submitted detailed time records, so that the Court could analyze the record for duplicative and unnecessary work.  2015 WL 3613713, at *2–3 (N.D. Cal. June 9, 2015).  The Court has no such ability here due to Class Counsel's lack of detailed time records.

Class Counsel similarly claim that reducing their fee request would undermine the policy in favor of antitrust settlements in class actions.  They claim that they would have recovered "all of [their] reasonable fees" if the Class had prevailed at trial.  Pls.' Suppl. Br., ECF No. 442 at 10.[6]  But the key word there is "reasonable":  if this case had gone to trial, and the class obtained a favorable verdict, this Court would be undertaking the same reasonableness analysis.  In addition, such policy concerns are undercut by Class Counsel's complete failure to substantiate their lodestar.  A post-trial motion for fees would likewise require the same type of documentation that is nowhere in the record here.  Such an argument on policy grounds would fare far better where there is a legitimate basis from which the Court can determine fees.

Denying Plaintiffs' fee request on behalf of Class Counsel would not undermine either of these important policy considerations.  Rather, denying the request would reaffirm the importance

[6] Class Counsel cites to 15 U.S.C. § 4304(a)(1), which applies to cases involving standards development activity and is not applicable here.  The relevant sections are 15 U.S.C. § 15 (damages) and 15 U.S.C. § 26 (injunctive relief).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC

of accurate accounting of time and resources spent on the litigation, because "the difficulty in accurately valuing the injunction is itself a reason to use the lodestar method"—which requires the provision of detailed time records. *Relente*, 2015 WL 3613713, at *2.

### D.    The Court Should Deny Class Counsel's Full Request for Fees And Costs

Given this record, it would be reasonable for the Court to deny Plaintiffs' motion for fees asking for $1,156,771 in addition to the stipulated $3 million guaranteed by the settlement agreement. Similarly, it would be reasonable for the Court to award only those costs for which Plaintiffs have provided adequate accounting.

In all, beyond the $350,000 in fees Class Counsel initially collected, Class Counsel would receive over $3 million out of a total of $7.6 million, and the swimmers would receive nearly the full amount that World Aquatics agreed to pay them. That is a comparatively generous fee to recovery ratio of 40%. And it would avoid the problems identified by the Ninth Circuit where injunctive relief valuations are inflated to make attorneys' fees look more reasonable, as well as avoid rewarding Class Counsel for its failure to provide accurate time records and proof of costs incurred.

## IV.    CONCLUSION

For the foregoing reasons, the Court should reject Class Counsel's request for full attorneys' fees and costs.

Dated: March 20, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By:      /s/ *Aaron T. Chiu*
         Aaron T. Chiu

         *Attorneys for Defendant World Aquatics*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

WORLD AQUATICS' RESP.
TO PLS.' SUPP. BR. ISO MOT. FOR FEES
CASE NO. 18-CV-07393-JSC