UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS A. SHIELDS, et al., | Case No. 3:18-cv-07393-JSC |
| Plaintiffs, | |
| v. | **ORDER RE: MOTION FOR FINAL APPROVAL AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |
| WORLD AQUATICS, | |
| Defendant. | Re: Dkt. Nos. 428, 436 |

Thomas A. Shields and Katinka Hosszú are professional swimmers who bring federal antitrust claims and a state law tort claim against World Aquatics (formerly known as the Fédération Internationale de Natation ("FINA")), related to World Aquatics' control over international swimming competitions. After the Ninth Circuit Court of Appeals reversed this Court's grant of summary judgment in Defendant's favor, the parties stipulated to certification of a Rule 23(b)(3) damages class and thereafter reached a classwide settlement. (Dkt. Nos. 413, 420.[1]) The Court granted Plaintiffs' motion for preliminary approval of the class action settlement and ordered notice in accordance with Federal Rule of Civil Procedure 23(c)(2)(B). (Dkt. No. 427.) Plaintiffs' motion for final approval and motion for attorneys' fees, costs, and service awards for the class representative are now pending before the Court. (Dkt. Nos. 428, 436.) Having reviewed the briefing, including the supplemental submissions, and having had the benefit of oral argument on February 26, 2026, the Court GRANTS final approval of the settlement, and GRANTS IN PART and DENIES IN PART the motion for attorneys' fees, costs, and service awards.

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

## BACKGROUND

The Court assumes the parties' familiarity with the lengthy procedural history of this action and incorporates Plaintiffs' discussion of it by reference. (Dkt. No. 423 at 13.)

## THE SETTLEMENT AGREEMENT

### A. The Settlement Class

The Agreement identifies three different Settlement Classes.

1. The Injunctive Relief Settlement Class:

> All swimmers who signed contracts to participate in the International Swimming League from January 1, 2018 through the date of the Settlement Agreement (August 29, 2025).

2. The 2018 Damages Settlement Class:

> All swimmers who signed contracts to participate in the International Swimming League's December 2018 event set to take place in Turin, Italy.

3. The 2019 Damages Settlement Class:

> All swimmers who signed contracts to participate in the International Swimming League's 2019 season.

(Dkt. No. 423-2, Settlement Agreement, ¶¶ 1(k), (u).)

### B. Payment Terms

Under the Settlement Agreement, Defendant will pay a total of $7,627,084.00. This amount consists of $3,000,000 in attorneys' fees for what the parties characterize as fees for the injunctive relief, and $4,627,084.00 in damages, allocated as $1,127,084.00 for the 2018 Damages Settlement Class and $3,500,000.00 for the 2019 Damages Settlement Class (together, the "Damages Classes Settlement Funds"). (Dkt. No. 423-2 at ¶ 1(j).) The damages for each of the subclasses shall be distributed in pro rata shares based on the damage allocation methodology in Dr. Rascher's class certification reports. The reports take into account what each individual swimmer would have earned in prize money and appearance fees absent Defendant's anticompetitive conduct. (Dkt. No. 423 at 19-20; Dkt. No. 246-7 at ¶¶ 139-145.)

The pro rata shares will be calculated after deducting court-approved attorneys' fees, costs, the proposed service awards for the named Plaintiffs, and taxes. (Dkt. No. 423-2 at ¶¶ 7, 28.)

United States District Court
Northern District of California

### C.    Injunctive Relief

In addition to the monetary relief, the Settlement Agreement provides for the following injunctive relief:

1) no restrictions on a "Swimmer's participation in any Sanctioned Event";

2) World Aquatics "will not maintain or enforce any rule, policy, or practice that restricts the organization of" independent swimming events;

3) World Aquatics "will not maintain or enforce any rule, policy, or practice that restricts or penalizes any Swimmer's, [World Aquatics] National Federation's or [World Aquatics] Continental Organization's participation in any" independent events; and

4) participation in any independent swimming event will not give rise to any penalties imposed by World Aquatics on the Swimmer, World Aquatics National Federation, or World Aquatics Continental Organization.

(Dkt. No. 423-2, Appx. A at ¶¶ 3-5.) Further, any swimmer's results at independent swimming events shall be recognized by World Aquatics and will be part of World Aquatics' official results, guaranteeing the same treatment for results achieved at such events so long as they comply with certain World Aquatics competition regulations that World Aquatics applies to its own events. (*Id*. at ¶ 6(b).)

### D.    Scope of Release

Under the Settlement Agreement, the Damages Classes release all claims that were or could have been raised in this action

prior to filing for preliminary approval of the Settlement Agreement on account of, arising out of, resulting from, or in any way relating to the facts, circumstances, and events alleged in the Action, including using certain of [World Aquatics] Rules to organize a group boycott against ISL and preventing top-tier swimmers from participating in professional swimming competitions and earning appearances fees and prize money from those competitions.

(Dkt. No. 423-3 at ¶ 1(gg).) Class members also release

all declaratory and injunctive relief claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature, liabilities of any nature whatsoever, known or unknown, suspected or unsuspected, asserted or unasserted, in law or equity, that the Releasors, or any one of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have, or hereafter can, shall, or may have, that were raised or could have been raised in

3

the Action prior to Final Approval or during the Injunctive Relief Settlement on account of, arising out of, resulting from, or in any way relating to the facts, circumstances, and events alleged in the Action, including the using certain of its Rules to organize a group boycott against ISL and preventing top-tier swimmers from participating in professional swimming competitions and earning appearances fees and prize money from those competitions, including, but not limited to, claims arising under federal or state antitrust, unfair competition, unfair practices, price discrimination, unitary pricing, trade practice, or civil conspiracy law, including without limitation the Sherman Antitrust Act, 15 U.S.C. § 1 et seq.

### E.      Notice

Plaintiffs selected Verita as the Settlement Administrator. On October 31, 2025, Verita began providing direct email notice to class members and mailed postcard notices to class members for whom it had a valid address.  (Dkt. No. 436-2, Cooley Decl. at ¶¶ 8-11.)  Verita's direct notice campaign reached 100 percent of the identified class members in the 2018 Damages Settlement Class and 98.1 percent of the 2019 Damages Settlement Class members.  (*Id*. at ¶ 7.) Verita also provided notice through press releases and news articles published on SwimSwam. (*Id.*)

### F.      Opt-Outs and Objections

Settlement class members had 60 days from the date of notice (December 30, 2025) to object to the settlement. (Dkt. No. 423-2 at ¶ 35; Dkt. No. 436-2, Cooley Decl. at ¶ 25.) No objections were received and only two damages class members opted out of the settlement.  (Dkt. No. 436-2, Cooley Decl. at ¶¶ 24-25.)

### DISCUSSION

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)."  Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

United States District Court
Northern District of California

At the second stage, "after notice is given to putative class members, the Court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. Oct. 8, 2014) (citing *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the final fairness hearing, the Court must finally determine whether the parties should be allowed to settle the class action pursuant to their agreed upon terms. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

## I.    CLASS CERTIFICATION

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Here, the Court certified an injunctive relief class under Rule 23(b)(2) and damages class under Rule 23(b)(3) prior to settlement and on preliminary approval modified the class definition to take into account the settlement. (Dkt. Nos. 299, 413, 427 at 5.) Nothing in the current submission gives the Court reason to reconsider its prior certification orders.

## II.    ADEQUACY OF NOTICE

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice includes "[n]otice of the motion [for attorneys' fees which] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1).

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B); *see also Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be

5

heard.") (cleaned up). Although Rule 23 requires reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds the notice plan previously approved by the Court, as implemented by the Settlement Administrator, complied with Rule 23(c)(2)(B). First, the Settlement Administrator provided two types of notice: email notice and mail notice. (Dkt. No. 436-2, Cooley Decl. at ¶¶ 8-13.) Second, the notice clearly and concisely provided an overview of the lawsuit, class members options under the settlement, the process for requesting exclusion or objecting to all or part of the settlement, provided contact information for Class Counsel and the Settlement Administrator, and directed class members to a website, email, and toll-free number for additional information.  (Dkt. No. 436-2; Exs. A & B.)  The settlement website provided a long-form notice and allowed Settlement Class Members who verified their identity to view their estimated damages estimates. (Dkt. No. 436-2, Cooley Decl. at ¶ 21.) Finally, between October 31, 2025, the mail notice date, and December 30, 2025, the Settlement Administrator received only two requests for exclusion, and no objections. (*Id*. at ¶¶ 24-25.)

Given the above, the Court concludes the parties have sufficiently provided the best practicable notice to class members.

### III.   FINAL APPROVAL

To grant final approval, the Court must find the terms of the parties' settlement are fair, adequate, and reasonable under Rule 23(e). *In re California Pizza Kitchen Data Breach Litig*., 129 F.4th 667, 674 (9th Cir. 2025). In making this determination, courts generally must consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d at 575. "This list is not exclusive and different factors may predominate in

United States District Court
Northern District of California

different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Under the revised Rule 23(e), the Court must also consider whether the settlement resulted from collusion among the parties. *See Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (holding that courts must apply the collusion factors set forth in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011), to post-class action settlements as well as those settled before certification.)

### A.     The Fairness Factors

#### 1.     The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Court first considers "the strength of [Plaintiffs'] case on the merits balanced against the amount offered in the settlement." *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks and citation omitted). The Court need not reach an ultimate conclusion about the merits of the dispute to resolve this factor "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements*." Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To that end, there is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id*. (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id*.

Over the nearly eight years this case has been pending, there has been extensive motion practice as well as an appeal.  Further, while the trial of the related direct competitor antitrust action brought against Defendant recently resulted in a verdict in the plaintiff's favor, the jury awarded $1 in damages.  *See International Swimming League, LTD v. World Aquatics*, 18-cv-07394-JSC, Dkt. No. 576 (N.D. Cal. Jan. 23, 2026).  Given the risks posed by continuing to litigate Plaintiffs' claims, the certainty of class member recovery under the settlement weighs in

United States District Court
Northern District of California

favor of granting final approval.

### 2. Settlement Amount

When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.,* 221 F.R.D. at 527. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (collecting cases).

The Court previously concluded the amount of the damages settlement, $4,627,084, was within the range of approval. (Dkt. No. 427 at 8.) This amount is allocated between the 2018 Damages Settlement Subclass ($1,127,084) and the 2019 Damages Settlement Subclass ($3,500,000). The estimated damages for the 2018 subclass is $563,542 and $2,754,372 for the 2019 subclass. (Dkt. No. 246-7 at ¶¶ 139, 145.) Thus, the portion of the settlement the parties allocated to damages is 200% of the actual damages for the 2018 subclass and 127% of total estimated damages for the 2019 subclass, and the total damages amount is 139.5% of the total estimated damages. (Dkt. No. 423 at 26-27.) The settlement also includes significant injunctive relief as discussed above, as well as an agreed upon $3,000,000 in attorney fees and costs for the injunctive relief.

In sum, the settlement relief—damages and injunctive relief—weighs strongly in favor of final approval.

### 3. Extent of Discovery Completed and Stage of Proceedings

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Rather, a court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014). This case has a lengthy litigation history, including an appeal, and the parties attended multiple mediations and settlement conferences before this settlement was reached with the assistance Jeffrey Mishkin "who has extensive experience in complex sports-related disputes, including those involving antitrust and

international sports-related legal issues." (Dkt. No. 423 at 15.)

The Court thus concludes this factor likewise weighs in favor of final approval.

### 4.    Experience and Views of Counsel

The experience and views of counsel also weigh in favor of approving the settlement. Class Counsel has extensive experience in antitrust litigation and strongly support approval of the settlement given the risks and challenges involved. (Dkt. No. 423 at 25.)

### 5.    Presence of a Government Participant

No government entity is a party to this action.  This factor is therefore neutral.

### 6.    Reaction of Class Members

As previously discussed, the notice is estimated to have reached nearly 100 percent of class members and the reaction has been overwhelmingly positive.  No objections have been received and only two class members have opted out.  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1043 (N.D. Cal. 2008) (citation omitted); *see also Churchill Vill.*, 361 F.3d at 577 (holding approval of a settlement that received 45 objections (0.05%) and 500 opt-outs (0.56%) out of 90,000 class members was proper).

\*\*\*

In sum, the fairness factors weigh in favor of granting Plaintiffs' motion for final approval of the class action settlement.

### B.    The *Bluetooth* Factors

Finally, the Court must determine whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). In determining whether the settlement is the result of collusion, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Id*. The Ninth Circuit has identified three such signs:

(1) when  counsel  receive  a  disproportionate  distribution  of  the

settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

(2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id*. at 947 (internal quotation marks and citations omitted).

For the first *Bluetooth* factor, the Court compares the class payout to class counsel's fees claim. *See In re California Pizza Kitchen Data Breach Litig*., 129 F.4th 667, 675 (9th Cir. 2025) ("class counsel receiving a disproportionately large fee award compared to what the class members received signals potential collusion.")  Counsel seeks the $3 million Defendant agreed to pay as attorneys' fees for the injunctive relief, plus 25 percent of the $4.627 million damages common fund.  So, the total amount of fees counsel seeks is $4,156,771. However, as counsels' lodestar is $6,566,883, the requested total fee award still results in a negative multiplier.  (Dkt. No. 428-3 at 2.)  And, it still results in the class receiving nearly 100% of their damages; that is, class member recovery under the settlement is 95.3 percent and 150 percent of their actual damages after deducting counsel's common fund fee request.  (Dkt. No. 246-7 at ¶¶ 139, 145; Dkt. No. 442 at 14.)

The second warning sign—a "clear sailing" provision—is also present here to a degree. *See Bluetooth*, 654 F.3d at 940, n.6 ("a 'clear sailing agreement,' wherein the defendant agrees not to oppose a petition for a fee award up to a specified maximum value.").  While Defendant did not agree they would not oppose Plaintiffs' request for fees and in fact have opposed Plaintiffs' motion for fees, Defendant did agree to pay $3 million as attorneys' fees and costs for the injunctive relief portion of the settlement. (Dkt. No. 434.)

The third warning sign—whether the parties have arranged for fees not awarded to the class to revert to the defendant rather than be added to the settlement fund, *see Bluetooth*, 654 F.3d at 948—is also not present here. The Settlement Agreement is non-reversionary—all of the funds will be distributed to the class members.  (Dkt. No. 423-2 at ¶ D(10).)

United States District Court
Northern District of California

Despite the presence of two warning signs, the Court concludes the Settlement Agreement did not result from, nor was it influenced by, collusion, given the negative multiplier and the outstanding result for the class.

* * *

In sum, the *Churchill* fairness factors support approval, and the *Bluetooth* factors do not indicate collusion. The Court is therefore satisfied the Settlement Agreement was not the result of collusion between the parties and instead is the product of arms-length negotiations between experienced and professional counsel. For each of these reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is appropriate.

## IV.    MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

### A.    Attorneys' Fees

Rule 23 permits a court to award "reasonable attorneys' fees ... that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination of whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)). The Ninth Circuit has approved two methods of determining attorney's fees in cases where the amount of the attorney's fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted).  The district court retains discretion in common fund cases to choose either method.  *Id*.  Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

Thus, the Court must consider the reasonableness of Plaintiffs' total requested fee award of 4,156,771.

11

### 1.      Percentage-of-Recovery Method

The Ninth Circuit uses a 25 percent of the fund "benchmark" for awarding fees. *Bluetooth*, 654 F.3d at 942. "An adjustment, either up or down, must be accompanied by a reasonable explanation of why the benchmark is unreasonable under the circumstances." *Reyes v. Experian Information Services, Inc.*, 856 Fed. App'x. 108, 110 (9th Cir. 2021) (cleaned up). Here, Class Counsel seeks an award of attorneys' fees that is 25 percent of the damages common fund or $1,156,771.  As noted above, this in addition to the $3,000,000 that Defendant agreed to pay for settlement of the injunctive relief class.  Defendant opposes Plaintiffs' request for any fees in addition to the $3 million it agreed to pay, insisting an award of 25 percent of the damages common fund in addition to the $3 million approaches 90 percent of the total settlement value.

Plaintiffs contend the request for fees from the common fund must be considered separately from the injunctive relief.  In support of this proposition, Plaintiffs rely on two district court cases which analyzed fees for the damages portion of a settlement separately from the fees for the injunctive relief settlement; but both cases just granted the requests without discussion of whether that was proper and thus are not persuasive.  *See In re Coll. Athlete NIL Litig*., No. 20-CV-03919 CW, 2025 WL 3171376 (N.D. Cal. July 11, 2025); *White v. Experian Info. Sols., Inc.* (*White I*), No. SACV 05-1070 DOC, 2011 WL 2971836, at *2 (C.D. Cal. July 15, 2011); *White v. Experian Info. Sols., Inc.* (*White II*), No. SACV 05-1070 DOC, 2011 WL 2971957, at *4 (C.D. Cal. July 15, 2011). [2]  Plaintiffs also insisted it was too difficult to value the injunctive relief,  but urges it has "significant value."  (Dkt. No. 435 at 3.)  The Ninth Circuit has repeatedly cautioned district courts against accepting class counsels' valuations of their claims stating the district court must "scrutinize the reasonableness."  *See, e.g., In re California Pizza Kitchen Data Breach Litig*.,

---

[2] In their supplemental submission, Plaintiffs also relied on *Relente v. Viator, Inc.*, No. 12-CV-05868-JD, 2015 WL 3613713, at *1 (N.D. Cal. June 9, 2015), suggesting it supports not performing a percentage-of-the-fund crosscheck where the value of the injunctive relief was too hard to calculate.  (Dkt. No. 442 at 15.)  But in *Relente*, there was no basis for performing a cross-check because the statute which entitled the plaintiffs to fees provided "if fees are awarded pursuant to this statute, they must be calculated using the lodestar method."  *Id*. at *1 (citing *Press v. Lucky Stores, Inc.*, 34 Cal.3d 311, 321–22 (1983)).

12

129 F.4th 667, 680 (9th Cir. 2025) (holding the trial court should "calculate the actual value of the settlement to the class and perform a crosscheck of the lodestar against the 25% percentage-of-recovery benchmark to ensure that fees are reasonable.").

When pressed on this issue at the final approval hearing, Plaintiffs requested leave to submit supplemental briefing to support their request for attorneys' fees and to provide a valuation of the injunctive relief.  The Court agreed and both sides submitted supplemental briefs.  (Dkt. Nos. 442, 444.)  Plaintiffs' brief now values the injunctive relief claims at $46,521,860 based on "additional prize money and appearance fees over the next ten years."  (Dkt. Nos. 442 at 9.)

Plaintiffs' belated valuation of injunctive relief is dramatically overinflated.  The injunctive relief obtained in settlement—removal of any barriers to independent swimming competitions— has essentially been in place since January 2019.  And, Defendant's competitor's swimming league held competitions in 2019, 2020 and 2021, but none since then.  Further, at the January 2026 jury trial in the related case, the evidence showed how challenging it is to create a professional swimming league because, among other reasons, outside the Olympics, the audience demand has not yet materialized.  Consistent with this evidence, while the jury found an antitrust violation, it also found Defendant's competitor suffered no damages.  But there is some value to the injunctive relief as there is now a clear and unambiguous path to independent swimming competitions without a risk of World Aquatics' interference.  And World Aquatics must have believed it has value as it agreed to pay $3 million in attorneys' fees specifically for the injunctive relief remedy.  So, the actual value of the injunctive relief is likely a few million dollars.

The Court nonetheless finds that an award of fees that amounts to 40 to 50% of the total settlement value is warranted for several reasons.

First, the related-case jury verdict, and the evidence at that trial, highlight how exceptional the damages recovery is here given the significant risk of no or little damages recovery.  Even if the Court approves counsel's fee request of $4,156,771, the 2019 Damages Settlement Fund will be 95.3% of the claimed damages, and the 2018 Damages Settlement Fund will be 150% of the claimed damages.  (Dkt. No. 442 at 14.)  The class will essentially be made whole, an extraordinary result.

United States District Court
Northern District of California

Second and relatedly, the class overwhelmingly approves of the settlement—with notice to 100 percent of the class not a single class member objected to the settlement or to the fees Plaintiffs' counsel requests.

Finally, as discussed below, a total fee award that amounts to even more than 50% of the settlement's total value is justified by the lodestar cross-check below. The requested total fee of $4,156,771 is 61.51 percent of the lodestar.

### 2.      Lodestar Method

The lodestar method "requires multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), amended on denial of reh'g, 808 F.2d 1373 (9th Cir. 1987).

Class Counsel calculates their lodestar at $6,758,419.50.  (Dkt. No. 442-1, Supp. Kessler Decl. at ¶ 1.)  With their initial fees request, Plaintiffs submitted a chart which listed 30 billers, their title, 2025 hourly rate, total hours, and lodestar.  (Dkt. No. 428-3.)  At the final approval hearing, the Court asked for additional details regarding the fees.  (Dkt. No. 440 at 20: 15-20 ("Do you want additional detail on the fees or just the costs?  The Court: I haven't the foggiest idea how you incurred that $6 million…Mr Kessler: Okay.  I'll – we'll give you further detail on that as well, Your Honor.").  Plaintiffs' supplemental submission includes a chart which lists "the hours performed by each attorney and staff member for the year, followed by the work performed by the team (attorneys and staff) for that year" and is supported by a supplemental declaration from Class Counsel summarizing the work performed each year.  (Dkt. No. 442-1, Supp. Kessler Decl. at ¶¶ 6-48; Dkt. No. 442-2 (chart).)

Defendant continues to object that these records fail to provide sufficient detail.  (Dkt. No. 444 at 16-17.)  While the Court agrees the high-level nature of these summaries—when compared with the sheer number of hours billed—is troubling, even if the Court reduces the requested amount by one-third, Plaintiffs' requested fees are still be less than that downward-adjusted

14

lodestar: $6,758,419.50 minus one-third ($2,230,278.44) equals $4,528,141.06.  Further, the counsel that previously represented Plaintiffs through the completion of discovery have not sought their fees; so, the actual lodestar for attorney effort to achieve such an exceptional recovery for the class is certainly much, much higher.

***

In sum, both the percentage-of-recovery and the lodestar analyses support the requested fee award of $4,156,771.

### B.    Costs

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (cleaned up).  Plaintiffs' counsel attests they have expended a total of $243,526.71 in litigation expenses.  (Dkt. No. 442-1, Supp. Kessler Decl. at ¶ 51.)  Of this, Plaintiffs request $170,979.80 in litigation costs.  This encompasses "100% of the unreimbursed fees paid to its expert witness for its work to support the damages claims ($82,569.99) and 100% of unreimbursed fees paid to the settlement administrator for implementing the Damages Class notice plan ($15,818.68)."  (Dkt. No. 428 at 33; *see also* Dkt. No. 442-1, Supp. Kessler Decl. at ¶¶ 52-53.)  Counsel attests they incurred an additional $145,138.04 of which they seek half or $72,569.03 for the damages class related costs (the other half being allocated to the injunctive relief and thus included in the stipulated $3 million).  (Dkt. No. 442-3.)  This amount includes the following categories of costs:

- Non-refundable jury consultant fees: $13,256.28
- Airfare: $13,781.58
- Hotels: $4,943.20
- Long-Distance Transportation: $3,883.32
- WiFi while traveling: $33.95
- Copying: $6,476.70
- Computerized Legal Research: $58,131.27
- Electronic Discovery Services: $21,846.10
- Document Services: $885.09
- Business and Overtime Meals: $1,823.43
- Messenger Services: $408.68
- Service of Process and Messengers: $205.69

15

- Mediator Services: $16,150.00
- Shipping and Mailing: $59.98
- Local Transportation: $1,173.03
- Court Costs and Filing Fees: $1,808.39
- Misc: $271.36

(*Id*.)

The Court's preliminary approval order asked for "detailed information supporting the[] request for costs," but Plaintiffs motion for attorneys' fees and costs simply provided a chart reflecting these amounts without a declaration detailing them or even identifying the names of the expert(s). (*Compare* Dkt. No. 427 at 13 *with* Dkt. No. 428-4.) At the final approval hearing, the Court requested additional information in support of the costs request. (Dkt. No. 440 at 16:1-10 ("I have one sheet with no details. The travel. What's it for? Did you fly –what class did you fly? What hotels? Like what are the costs?....How did you get all those costs?"); *Id*. at 18:4-7 ("I need more details. I need more details. You don't get to just fly whatever class you want, eat at whatever restaurants you want, and stay at whatever hotels you want."). In response, Plaintiffs have provided a slightly more detailed chart, but still insufficient detail in the supporting declaration. (Dkt. No. 442-1, Supp. Kessler Decl. at ¶ ¶ ; Dkt. No. 442-3.) For example, it is still impossible to determine what class counsel flew, what hotels they stayed at, or even if counsel is seeking costs related to the appeal, which is concerning as the Ninth Circuit already awarded them at least some of their costs. *See Shields v. World Aquatics*, No. 23-15092, Dkt. No. 68 (9th Cir. Dec. 3, 2024) (Order taxing costs). A side-by-side comparison of a portion of the charts is below:

**Damages and Injunctive Relief Classes Expenses**

| CATEGORY | AMOUNT |
|---|---|
| Non-refundable Jury Consultant Fees | $13,256.28 |
| Travel (Airfare, Hotels, Long-Distance Travel) | $22,608.10 |
| Telecommunication Services | $33.95 |
| Copying Costs | $6,476.70 |
| Computerized Legal Research | $58,176.77 |
| Electronic Discovery Services | $21,891.60 |
| Document Services | $885.09 |
| Meals | $1,823.43 |
| Service of Process and Messenger/Courier | $614.37 |
| Professional Services (Mediator) | $16,150.00 |
| Shipping and Mailing | $59.98 |
| Local Transportation | $1,126.25 |
| Court Costs | $1,808.39 |
| Miscellaneous | $271.36 |

(Dkt. No. 428-4)

**Damages and Injunctive Relief Classes Expenses**

| CATEGORY | AMOUNT |
|---|---|
| Non-refundable Jury Consultant Fees | $13,256.28 |
| Airfare for Jeffrey Kessler, Johanna Rae Hudgens | $13,781.58 |
| - Includes four trips for Mr. Kessler and five trips for Ms. Hudgens, for an average of $1,531.29<br>- Hearings/oral argument and required in-person meet and confer post-appeal<br>- Delta and United Pass Plus Airfare<br>- Non-refundable where possible | |
| Hotels for Travel | $4,943.20 |
| - 9 nights (Average: $549.24 per night) | |
| Long Distance Transportation | $3,883.32 |
| - Cars to/from airport | |
| Telecommunication Services | $33.95 |
| - Wi-fi while traveling | |
| Copying Costs | $6,476.70 |
| - Black and white, and where needed, color printing<br>- Exhibits and demonstratives for use in prep, hearings, jury exercises, and oral argument | |
| Computerized Legal Research | $58,131.27* |
| - LexisNexis, Westlaw searches and cases (class certification and appointment of class counsel, summary judgment and *Daubert*, appeals, post-appeal class certification) | |
| Electronic Discovery Services | $21,846.10* |

(Dkt. No. 442-3.)

16

United States District Court
Northern District of California

As the Court noted at the final approval hearing, it has "an independent obligation to protect the class.  It's the class's money, right?  It's the class's money [from] which you're entitled to reimbursement for your incurred costs." (Dkt. No. 440 at 18:9-11.)   Notwithstanding the admonition, Class Counsel decided to essentially stand on the submission Court already held was inadequate.  It did not provide the additional detailed information that the Court requested, and many of the costs—including the $16,000 worth of airfare—appear extraordinary.  The Court will therefore reduce the amount of costs awarded for the damages portion of the settlement by half for a total of $36,284.51.  Notably, this still means Class Counsel is recovering 75 percent of their costs as they have already recovered 50 percent of these costs through the $3 million injunctive relief award.  When this amount is added to the damages expert fees ($82,569.99) and damages class notice fees ($15,818.68), this results in a total costs award of $134,673.18.

### C.    Class Representative Incentive Awards

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). However, the decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Although incentive awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." Id. at 960 (internal quotation marks and citation omitted). Thus, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

17

In determining whether an incentive award is reasonable, courts generally consider:

> (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Covillo v. Specialtys Café*, No. C–11–00594-DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)). A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Further, district courts must evaluate each incentive award individually. *See Staton*, 327 F.3d at 977.

Plaintiffs seek $10,000 for each Class Representative Shields and Hosszú. Class Counsel attests:

> Class Representatives played a significant role in helping prepare the complaint, in developing Class Counsel's litigation and trial strategy, reviewing filings, and communicating with Class Counsel during settlement negotiations and throughout the settlement approval process. Class Representatives contacted Class Counsel with questions and ideas. Class Representatives also engaged in document and written discovery and were each deposed, with Ms. Hosszú sitting for a two-day deposition

(Dkt. No. 428-2, Kessler Decl. at ¶ 46.) Mr. Shields submitted a declaration elaborating on his involvement and detailing the risks he took on by participating in this action. (Dkt. No. 428-7, Shields Decl. at ¶¶ 5-8 ("By participating as a named plaintiff in this litigation against World Aquatics, I put my ability to participate in these events in jeopardy…Given World Aquatics' gatekeeping role for swimming in the Olympic Games, I placed my ability to participate in the [2020 Tokyo Olympic Games] at risk through my leading role in this litigation."). As to Ms. Hosszú, Class Counsel attests she took similar risks as she competed in professional swimming as recently as June 2024. (Dkt. No. 428-2, Kessler Decl. at ¶ 47.) Under these circumstances, the Court concludes a service award of $10,000 for each Class Representative is reasonable and does not "undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*,

715 F.3d 1157, 1163 (9th Cir. 2013).

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' motion for final approval of the parties' class action settlement. In addition, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for attorneys' fees and costs; specifically, the Court awards the following: $4,156,771 in attorney's fees; $134,673.18 in litigation costs; and $20,000 ($10,000 each) in incentive awards for the Class Representatives.

In accordance with the Northern District's Procedural Guidance for Class Action Settlements, "[w]ithin 21 days after the distribution of the settlement funds and payment of attorneys' fees," Class Counsel shall file "a Post-Distribution Accounting" that provides the following, to the extent applicable:

> The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. Class Counsel shall "summarize this information in an easy-to-read chart that allows for quick comparisons with other cases," and "post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website." *See id*. To the extent the parties agree to a different schedule including a staged process for a motion to approve distribution as discussed at the final approval hearing, they shall file a stipulation with these dates.

The parties shall file a proposed judgment on or before April 6, 2026.

//

//

//

//

19

This Order disposes of Docket Nos. 428, 436.

**IT IS SO ORDERED.**

Dated: April 1, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California